IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | THE UNITED STATES OF AMERICA, | ) |
| | | ) |
| | *Plaintiff*, | ) |
| | | ) |
| v. | | ) Case No. 6:24-CV-00493-CVE |
| | | ) |
| (1) | CAROL ISKI, District Attorney for | ) |
| | The Twenty-Fifth Prosecutorial District | ) |
| | of Oklahoma, in her official capacity, | ) |
| | | ) |
| | *Defendant*. | ) |

**DEFENDANT'S RESPONSE TO MOTION OF THE CHEROKEE NATION AND CHOCTAW NATION OF OKLAHOMA TO INTERVENE AS PLAINTIFFS AND BRIEF IN SUPPORT**

I.    INTRODUCTION

"A federal lawsuit to stop a prosecution in a state court is a serious matter." *Younger v. Harris*, 401 U.S. 37, 42 (1971). This case raises significant issues of comity, equity, federalism, and state sovereignty. Allowing it to expand even before the Court can address the State's fundamental jurisdictional arguments only unnecessarily raises the stakes. The Court should deny the Motion to Intervene filed by Cherokee Nation and Choctaw Nation of Oklahoma's ("Movants") (Dkt. #25) (the "Motion"). Movants do not advance any interests in this matter beyond the inappropriate collateral attack on the State's judicial system initiated by the United States ("Plaintiff") in its Complaint (Dkt. #2). Moreover, Movants lack both independent and piggyback standing. Additionally, they fail to meet the standard for intervention as a matter of right because: (1) they have no interest that could be impaired by a judgment in this case, and (2) as Plaintiff has explicitly pled, Movants' interests are adequately, if not precisely, represented by Plaintiff. For similar reasons—namely, that Movants' proposed Complaint (Dkt. #25-2) seeks the same relief for precisely the same reasons as Plaintiff—permissive intervention should also be denied. At a minimum, should the Court decide not to immediately deny the Motion to Intervene, it should hold the matter in abeyance pending resolution of Defendant's forthcoming Motion to Dismiss (due February 28, 2025).

II.    BACKGROUND

Both Plaintiff's Complaint and Movants' Motion were filed weeks after a recent decision by the Oklahoma Court of Criminal Appeals ("OCCA") that directly addressed and resolved their arguments. Granting any relief would require this Court to effectively reverse that decision and interfere with ongoing State district court and OCCA proceedings. The following context sets the stage for both this brief and the lawsuit as a whole.

1

*O'Brien v. City of Tulsa*

On December 5, 2024, the Oklahoma Court of Criminal Appeals ("OCCA") issued a detailed Opinion addressing the central issue in this lawsuit—whether the State has subject matter jurisdiction over non-member Indians who commit non-major crimes in Indian country within Oklahoma. *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684. The OCCA's Opinion provided jurisdictional clarity following the United States Supreme Court opinions in *McGirt v. Oklahoma*, 591 U.S. 894 (2020) and *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), which, in part, confronted the State's jurisdiction to prosecute major crimes committed by Indians in Indian county and the State's jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country, respectively. The *O'Brien* case involved the prosecution of traffic violations committed by a member of one tribe within the City of Tulsa in an area that was within the boundaries of another tribe. In *O'Brien*, the OCCA took the United States Supreme Court at its word, concluding that "[u]nless preempted by federal law, 'as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.'" *Id*. ¶ 14 (quoting *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 652-53 (2022) (citing *Organized Village of Kake v. Egan*, 369 U.S. 60, 72 (1962))). Applying the framework established in *Castro-Huerta* to crimes committed by Indians in Indian country, the OCCA stated:

> Under the Supreme Court's precedent, "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government."

*Id*.¶ 17 (quoting *Castro-Huerta*, 597 U.S. at 638).

The OCCA explicitly rejected each of Plaintiff and Movants' contentions. The Court held that: 1) the Supreme Court's framework in *Castro-Huerta* applies to a state's criminal jurisdiction over Indians, *Id*. ¶¶ 13-17; 2) neither Public Law 280 nor the 1906 Oklahoma Enabling Act

2

preempts state jurisdiction over general crimes committed by Indians, *Id*. ¶ 20; 3) application of *McClanahan* does not override *Bracker* balancing or any other component of the *Castro-Huerta* framework, *Id*. ¶¶ 27-35; and 4) as here, the framework urged by O'Brien "disregard[ed] the plain holding of *Castro-Huerta* and instead rel[ies] largely on Justice Gorsuch's dissent and a string of citations to U.S. Supreme Court precedent that ultimately undermine its own argument." *Id*. ¶ 5 (Musseman, J., concurring). Accordingly, the OCCA found that the State has jurisdiction to prosecute these non-major crimes committed in Indian country. On February 5, 2025, the OCCA issued an order denying O'Brien's petition for rehearing.

*This Case*

As the ink dried on the *O'Brien* opinion and just before the prior federal administration's departure, Plaintiff launched this attack on an elected Oklahoma district attorney and the State's judicial system. Plaintiff and Movants would prefer this Court: 1) enjoin Oklahoma district court judges from proceeding with pending criminal cases; 2) abruptly—and unprecedentedly—enjoin the OCCA from further considering ongoing criminal appeals; 3) reverse the OCCA's decision in *O'Brien*; 4) disregard or reverse the United States' Supreme Court's decision in *Castro-Huerta*; and 5) strip a district attorney of authority to fulfill her oath. In addition to the analysis herein, Defendant's forthcoming motion to dismiss will establish why these requests are not viable.

Days after the recent change in leadership at the Department of Justice, Movants sought to join Plaintiff's attempt to disrupt Oklahoma's criminal justice system—and public safety. Plaintiff and Movants request the same relief for the same reasons. Plaintiff, in part, does so as Movants' "trustee [who] has an interest in protecting tribes' inherent sovereign power to exercise criminal jurisdiction over Indians for conduct occurring on their reservations exclusive of the states." Compl. at ¶ 19.

3

*The State prosecutions that Plaintiff and Movants would have enjoined*

Plaintiff's Complaint and Movants' proposed Complaint challenge four State prosecutions. Compl. ¶ 35; Prop. Compl. ¶¶ 51-58). In each of these cases, the district court rejected jurisdictional arguments similar to those raised by Plaintiff and Movants. Two of those decisions are currently pending before the OCCA, while the other two prosecutions have been resolved through guilty pleas, with no appeal pending. Relevant details are provided below.

In *State v. Long*, CF-2023-86 (Dist. Ct. McIntosh Cnty.), the defendant was charged with the felony of bringing contraband into the McIntosh County jail in violation of 57 O.S. § 21(A) and the misdemeanor of trespassing after being forbidden in violation of 21 O.S. § 1835. The district court denied a jurisdictional challenge. Long filed a post-conviction appeal, partially challenging the State's jurisdiction. Briefing is complete, and the case is now submitted for decision by the OCCA. Plaintiff and Movants seek this Court's intervention in the appeal.

In *State v. Medlock*, CF-2024-50 (Dist. Ct. McIntosh Cnty.), the defendant was charged with the felony of possession of contraband by an inmate in the McIntosh County Jail in violation of 57 O.S. § 21(B). The district court denied Medlock's jurisdictional challenge, but Medlock's appeal was untimely. The matter concluded with a guilty plea on July 30, 2024. Despite this, Plaintiff and Movants continue to pursue a jurisdictional challenge that Medlock has abandoned.

In *State of Oklahoma v. Wiedel*, CF-24-105 (Dist. Ct. McIntosh Cnty.), the defendant was charged with a felony of bringing contraband into the McIntosh County Jail in violation of 57 O.S. § 21(A) and a misdemeanor of obstructing a McIntosh County Deputy Sherriff at the McIntosh County Jail in violation of 21 O.S. § 540. Following the district court's denial of Wiedel's jurisdictional challenge in a well-reasoned order, Wiedel sought a writ of mandamus from the

4

6:24-cv-00493-CVE   Document 47   Filed in ED/OK on 02/21/25   Page 6 of 17

OCCA. *Wiedel v. McLaughlin*, Case No. MA-2024-780. That appeal is pending before the OCCA. Plaintiff and Movants ask this Court to intervene in this ongoing appeal as well.

Like Plaintiff and Movants, Wiedel argues that, because Congress did not expressly confer jurisdiction over crimes committed by Indians in Indian country, the McIntosh County District Court lacks jurisdiction. Wiedel also resists application of *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), and *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980). The arguments raised by Plaintiff and Movants are indistinguishable from Wiedel's arguments. The OCCA is obligated to address those arguments. And rather than filing amicus briefs as they have in other cases, Plaintiff and Movants prefer to pursue this federal lawsuit, which is barred by abstention, at the least.

The fourth case cited in Plaintiff's Complaint and Movants' Motion is *State v. Carson*, CF-2024-149 (Dist. Ct. McIntosh Cnty.). Carson was charged with the felony of assault and battery on a police officer in the McIntosh County Jail in violation of 21 O.S. § 649(B) and challenged the State's jurisdiction. The district court issued a thorough order denying Carson's jurisdictional challenge, analyzing whether federal law expressly preempted the State's jurisdiction. *See* Court Order on Jurisdictional Issues entered October 22, 2024. The court found no federal preemption and then also concluded that the "State['s] exercise of jurisdiction over the Defendant [does not] unlawfully infringe on principals of tribal self-government." *Id.* at 5-9. Carson did not appeal and pled guilty to the crime charged. Yet Plaintiff and Movants seek to act on Carson's behalf.

### III.   LEGAL STANDARD

As a threshold matter, "Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009) (cleaned up). If a movant in intervention

5

clears that threshold, Fed. R. Civ. P. 24(a) requires that the proposed intervenor of right establish "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cnty. V. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (citation omitted). Failing intervention by right, a movant may be permitted to intervene pursuant to Fed. R. Civ. P. 24(b)(2) when their "claim or defense and the main action have a question or law or fact in common."

## IV.    ANALYSIS

Defendant will address the following in turn: (1) Movants' lack of standing, whether piggyback or otherwise; (2) Movants inability to satisfy elements necessary for intervention as of right; and (3) why permissive intervention should be denied for similar reasons.

*A. Movants lack standing, piggyback or otherwise, to intervene.*

Movants primarily claim piggyback standing and rely secondarily on independent standing. Regarding the former, the Tenth Circuit has explained, "Where a proposed intervenor has been permitted to intervene on the basis of an existing party's standing to assert the claim at issue, the Court has described the situation as 'piggyback' standing." *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1079 (10th Cir. 2009) (cleaned up). Regardless of the rationale for "piggyback" standing, a proposed intervenor "must establish that the federal court has a Case or Controversy before it, either because [the proposed intervenor] has independent Article III standing or because another party with constitutional standing on the same side as [intervenor] remains in the case." *Id*.

To establish Article III standing, a plaintiff must prove

(1) [that] it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision. *Id*.

Neither Plaintiff nor Movants have alleged an injury in fact. And even if they had, relief would not provide redress. For the same reasons redressability fails, traceability does as well. Accordingly, intervention must be denied for lack of standing.

    *i.*    *Movants have not suffered an injury in fact.*

Neither Plaintiff nor Movants have suffered an injury that is concrete, particularized, or actual or imminent. To be concrete, an injury must be real harm to a legally protected interest, not abstract. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury is particularized only if it affects a party in a personal and individual way. *Id*.

To the extent Plaintiff and Movants claim injuries in fact, their allegations are abstract. Toward the end of its Complaint, Plaintiff makes generalized statements that may be intended to describe harm. Plaintiff asserts that Defendant's prosecutions have "created jurisdictional chaos" and are "intolerable and dangerous if permitted to stand[.]" Compl. ¶ 40. Plaintiff follows that with an unspecified, vague assertion that "Defendant's actions will continue to seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide." *Id*.

*First*, the prosecutions are against individual criminal defendants, not the United States or any Tribe. Only the individuals can claim specific injury. Like Jimcy McGirt and Victor Manuel Castro-Huerta, the individual defendants have sought vindication through proper channels—district court filings and appeals to the OCCA. The United State Supreme Court is available to them all the same. As in *McGirt* and *Castro-Huerta*, Plaintiff and Movants may participate as amicus curiae. Such is the lot for those whose injury, if any, is abstract.

There is a reason that the seminal cases regarding Oklahoma's criminal jurisdiction have not involved the United States or a Tribe as parties but are instead styled *Oklahoma v. Castro-Huerta* and *Oklahoma v. McGirt*, for example. The State prosecutes individuals. And its courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Movants' anticipated citation to *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015), does not support the argument that federal litigation between a tribe and a state is the appropriate forum and party alignment to address the issues before this Court. In contrast to this case, where Plaintiff and Movants hope to relitigate *Castro-Huerta* and overturn State district and appellate court rulings, the Court in *Ute* dealt with a state's attempt to relitigate 10th Circuit precedent in state forums. *Ute* actually cuts against Movants' position.

*Second*, the State prosecutions at issue—the likes of which have existed for over a century—do not impact Plaintiff's or Movants' authority to prosecute. The United States Supreme Court has recently reaffirmed that an individual may be prosecuted by separate sovereigns for the same conduct. *Denezpi v. United States*, 596 U.S. 591 (2022). *See also United States v. Lanza*, 260 U.S. 377, 382 (1922) ("Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."). Plaintiff's and Movants' authority to prosecute, where applicable, remains unaffected by Defendant's prosecutions.

Plaintiff and Movants have not suffered injury, much less injury that is real and particularized.

    ii.    *A favorable ruling would not redress any purported injury.*

To establish redressability, one "must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Nova Health Sys. V. Gandy*, 416 F.3d

8

1149, 1158 (10th Cir. 2005). Said differently, redressability is absent when the Court's decision would have no effect on a complainant's alleged injury. This is the case here.

Had Plaintiff and Movants argued that Defendant's prosecution of crimes somehow injured them, redress would not be available through this lawsuit. The most extreme—albeit inappropriate—relief would be to enjoin Carol Iski from prosecuting certain crimes against a limited class of individuals. Even then, redress could still not be achieved, and the State prosecutions and appeals could continue for at least three reasons.

*First*, the Governor has a constitutional duty to "cause the laws of the State to be faithfully executed[.]" Okla. Const. art. 6, § 8. Corresponding statutory authority allows the Governor "to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, . . . may prosecute offenses against the law of the state[.]" 74 O.S. § 6.

*Second*, the Oklahoma Attorney General ("OAG") can initiate or appear in criminal prosecutions on behalf of the state. 74 O.S. § 18(A)(3). The OAG may also "appear for the state and prosecute and defend all" criminal proceedings in the Court of Criminal Appeals in which the state is interested as a party. 74 O.S. §18b(A)(1). Given the Governor's and OAG's authority, which would remain unaffected by the outcome of this litigation, an injunction would not hinder the State's ability or responsibility to prosecute the crimes and criminal defendants in question.

*Third*, the requested injunction could not affect the trial courts' or OCCA's ability to proceed with adjudications. Oklahoma "District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]" Okla. Const. art. 7, § 7(a). And the Oklahoma Court of Criminal Appeals "shall have exclusive appellate jurisdiction . . . in all criminal cases appealed from the

district . . . courts[.]" 20 O.S. § 40. As OCCA itself put it, OCCA "is supreme in all criminal appeals from state courts of this State[.]" *Inverarity v. Zumwalt*, 1953 OK CR 148, ¶ 18, 262 P.2d 725, 730. The OCCA is duty bound to ensure Oklahoma has "a uniform system of criminal jurisprudence[.]" *State v. Davis*, 1913 OK CR 80, ¶ 8, 130 P. 962, 964.

Movants rest their claim of redressability on *Bronson v. Swensen*, 500 F.3d 1099, 1111-12 (10th Cir. 2007). *See* Movants' Prop. Compl. ¶ 15; Memo. in Support of Mot. p. 9. However, *Bronson* actually supports Defendant's argument. In that case, the Tenth Circuit found redressability lacking, calling an injunction and declaratory judgment a "meaningless gesture" because it would not protect plaintiffs from the threat of criminal prosecution. *Id*. at 1112. Similarly, an injunction in this case would not shield criminal defendants from prosecution due to the authority of other officials and the State judiciary.

In sum, a favorable decision for Plaintiff against a single district attorney would not redress Plaintiff or Movants' purported injury, as State prosecutions and adjudications would continue. Because Plaintiff and Movants lack standing, intervention must be denied.

B. Movants fail to meet the requirements for intervention by right.

  i. *Movants lack a sufficient interest in the outcome of this litigation.*

The subject of Plaintiff's action—distinct from the relief sought—concerns four specific State criminal prosecutions. Compl. ¶ 35. The Tenth Circuit requires "that '[the] interest in the proceedings be 'direct, substantial, and legally protectable.'" *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (internal citations omitted). This interest "must be of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Osage Tribe of Indians of Oklahoma v. United States*, 85 Fed. Cl. 162, 168 (2008) (cleaned up).

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009).

Only the State and criminal defendants have a direct, substantial, and legally protectable interest in the four prosecutions at the center of this action. Movants, however, have only an indirect and *de minimis* interest—essentially a desired outcome—based on their rejected jurisdictional framework. They lack a protectable interest in the criminal defendants' offenses or defenses against the State, particularly since the charges involve conduct within the McIntosh County Jail. Direct interests are either being or have been resolved by State district court decisions, appeals to the OCCA, and even guilty pleas.

Assuming, *arguendo*, that Movants had a protectable interest, any such interest would not be impaired by denial of intervention. Movants' authority to prosecute violations of Tribal law will remains unaffected by the outcome of this case. Additionally, Movants can express their position by participating as amicus curiae in the criminal defendants' appeals challenging State jurisdiction. This separate federal lawsuit is not the appropriate mechanism to protect Movants' detached interests. The lawsuit only adversely impacts the States' and criminal defendants' interests.

Furthermore, Movants' vague interests will not be impacted by a judgment because the lawsuit is barred at least by the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 43-54 (1971) (articulating the "longstanding public policy against federal court interference with state court proceedings"). The Complaint improperly targets four State criminal cases, two of which are pending appeal before the OCCA. Movants' interests have been—and will continue to be—protected in other, appropriate forums.

Though Movants may be dissatisfied with the outcomes, Oklahoma state courts have adjudicated the issues raised by them. And OCCA is set to render further decisions in specific cases Movants reference. If Movants prefer a voice in those proceedings, they may participate as amicus curiae, as they or others did in *McGirt* and *Castro-Huerta*. However, this federal litigation is not the appropriate venue to address Movants' unspecified interests.

        *ii.*      *The United States of America adequately represents Movants' interest.*

As Plaintiff asserts in its Complaint, Movants' vague interests are fully aligned with and adequately represented by Plaintiff. The 10th Circuit has made clear that "[t]he burden [is] on the petitioner or movant in intervention to show that the representation by parties may be inadequate." *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). When a governmental entity is involved, "[t]he presumption of adequate representation applies 'even though a party seeking intervention may have different "ultimate motivations" from the governmental agency,' so long as 'its objectives are the same.'" *Id*. at 1161 (internal citation omitted). Further, representation is presumed adequate where, as here, "the objective of the applicant for intervention is identical to that of one of the parties." *Tri-State Generation and Transmission Ass'n, Inc. v. New Mexico Public Regulation Com'n*, 787 F.3d 1068, 1072 (10th Cir. 2015) (cleaned up). To overcome that presumption, an applicant in intervention "must make a concrete showing of circumstances that the [] representation is inadequate." *Id*. at 1073 (cleaned up). "These circumstances include a showing that there is collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed to represent the applicant's interest." *Id*. (cleaned up).

Federal District Judge Friot's analysis in denying the Muscogee (Creek) Nation's attempt to intervene as a party defendant alongside the United States of America is equally applicable here.

In *Oklahoma v. United States Dep't of the Interior*, 569 F.Supp.3d 1155 (W.D. Okla. 2021), Judge Friot explained, "although the Nation's sovereign interests may sweep more broadly than the federal governments interest as a general matter, in the context of this case, defendants and the Nation share a common objective in seeing . . . jurisdictional authority confirmed." *Id*. at 1162. He further explained, "[t]his conclusion is consistent with Tenth Circuit precedent holding that government defendants can adequately represent the interests of an Indian tribe, even when issues related to sovereignty are implicated." *Id*. "[T]he fact that there may have been prior disputes between the Nation and the federal government does not indicate that representation will be inadequate in this matter." *Id*. at 1163.

Plaintiff's Complaint provides the clearest evidence that the United States represents—and intended to exclusively represent—Movants' interests. In a Complaint replete with unwavering support for the Movants' interests, Plaintiff alleges, in part:

- "The United States also has a special relationship with Indian tribes and has long been 'committed to a policy of supporting tribal self-government and self-determination.' The United States thus has an interest in the exercise of tribal criminal authority in Indian country." Compl. ¶ 5. (cleaned up).

- "Giving the states concurrent jurisdiction to apply state criminal laws to Indians in Indian country would undermine tribal self-government. It would effectively supplant tribes' right to make their own criminal laws and be governed by them" (Compl. ¶ 18.

- "As evidenced by congressional support for and funding of tribal criminal authority, public safety programs, and criminal justice systems, the United States as trustee has an interest in protecting tribes' inherent sovereign power to exercise criminal jurisdiction over Indians for conduct occurring on their reservations exclusive of the states." Compl. ¶ 19.

- "Defendant's actions will continue to seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide." Compl. ¶ 40.

It is undeniable that Plaintiff and Movants share the same objective for the same reasons—Plaintiff explicitly advocating on Movants' behalf. As shown, Plaintiff, in part, even bases its standing on allegations that it represents Movants' interests. The Complaint is filled with statements about tribal sovereignty, Indian law principles, treaty rights, and tribal authority—all central to Movants' proposed Complaint. There could hardly be a clearer case of adequate representation. *See City of Stilwell, Okl. V. Ozarks Rural Elec. Co-op Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (reaffirming "that representation is adequate 'when the objective of the applicant for intervention is identical to that of one of the parties.'") (citation omitted).

Movants cannot make a concrete (or really any) showing that Plaintiff's representation is inadequate. There is no collusion between Plaintiff and Defendant. Plaintiff has no relevant interest adverse to Movants. On the contrary, Plaintiff has explicitly represented to this Court that it represents Movants' interests.

To borrow from the United States' opposition to the Muscogee (Creek) Nation's failed attempt to intervene in a separate lawsuit between the State and Plaintiff, "[B]ecause [the federal government's] objective in resolution of th[e] issues . . . align with the Nation's interests, [the federal government] will adequately represent those interests." Federal Defendants' Response in Opposition to Motion of the Muskogee (Creek) Nation for Limited Intervention, *State, et al. v. U.S. Dept. of the Interior, et al.*, No. 21-cv-719-F, at 1 (W.D.O.K. Oct. 1, 2021). Or as the United States further argued in the same case, "Because Federal [Plaintiff's] objectives in the outcome of this action align with the Nation's interests, Federal [Plaintiff] will adequately represent those interests and they will not be impaired if the action proceeds without the Nation[s] as a party." *Id.* at 12.

Taken as true, Plaintiff's own allegations thwart Movants' attempt to intervene.

C. *Permissive intervention should be denied.*

The Court may allow intervention if a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). *See City of Stilwell, Okl.*, 79 F.3d at 1043 (cleaned up) (upholding district court's denial of permissive intervention because the applicant's concerns could be adequately represented by existing parties). Permissive intervention is often denied where a party adequately represents the proposed intervenor's interests. *See Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015); *Ozarks*, 79 F.3d at 1043.

As already evidenced by Movants' filings in this lawsuit, intervention would likely result in further inundation and duplication of briefing, complicating an otherwise straightforward application of abstention and standing doctrines. The Court will reach the same outcome for the same reasons, whether or not Movants participate as intervenors. Intervention should therefore be denied.

## V. CONCLUSION

Movants lack both independent and piggyback standing. And they cannot satisfy the elements necessary for intervention as of right under Fed. R. Civ. P. 24(a)(2) or offer justification for permissive intervention. Defendant respectfully requests that the Court deny Movants' motion for intervention.

Date: February 21, 2025                                      Respectfully submitted,

                                                             */s/ Trevor S. Pemberton*
                                                             Trevor S. Pemberton, OBA #22271
                                                             PEMBERTON LAW GROUP PLLC
                                                             600 North Robinson Avenue, Suite 323
                                                             Oklahoma City, OK 73102
                                                             P: (405) 501-5054
                                                             trevor@pembertonlawgroup.com

**Certificate of Service**

I certify that on February 21, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System, which will serve and send a notice of electronic filing to all parties or their counsel of record.

*/s/ Trevor S. Pemberton*