# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MUSCOGEE (CREEK) NATION, | ) | Case No: 24-CV-0493-CVE |
| | ) | (BASE FILE) |
| Consolidated Plaintiff, | ) | |
| | ) | Consolidated with: |
| vs. | ) | Case No. 25-CV-0028-CVE |
| | ) | |
| CAROL ISKI, District Attorney for the | ) | |
| Twenty-Fifth Prosecutorial District | ) | |
| of Oklahoma in her official capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE OF CHEROKEE NATION AND CHOCTAW NATION OF OKLAHOMA TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT ............................................................................................................... 1

I.    *Younger* Has No Application To The Plaintiff's Claims In This Case. ......................... 2

    A.    *Younger* is inapplicable because the United States is not a party to,
        nor will the future relief it seeks from Defendant interfere with,
        any state proceedings. ................................................................................ 5

    B.    *Younger* is inapplicable because the state proceedings do not
        implicate an important state interest. ...................................................... 8

    C.    *Younger* is inapplicable because the state proceedings do not
        provide an adequate opportunity for Plaintiff to raise its claims. ......... 10

    D.    *Younger* is inapplicable because the state proceedings present
        extraordinary circumstances that threaten irreparable harm. ............... 11

II.   **Plaintiff Has Standing To Pursue Its Claims In This Case.** ....................................... 12

    A.    Plaintiff has suffered an injury-in-fact. ................................................ 12

    B.    Plaintiff's injuries in fact are redressable. ........................................... 14

    C.    Plaintiff has standing to bring this action as the trustee for Indian
        tribes. ..................................................................................................... 17

III.  **The *Colorado River* Abstention Doctrine Does Not Apply Here.** ............................. 19

    **CONCLUSION** ...................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Agostini v. Felton*, 521 U.S. 203 (1997) ........................................................................8

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ................................................................7

*Arizona v. California*, 460 U.S. 605 (1983) ...................................................................2

*Arizona v. San Carlos Apache Tribe of Ariz.* 463 U.S. 545 (1983) ..........................19, 20

*Arnold v. McClain*, 926 F.2d 963 (10th Cir. 1991) .......................................................1

*Benavidez v. Eu*, 34 F.3d 825 (9th Cir. 1994) ...............................................................6

*Cayuga Indian Nation of N.Y. v. Fox*, 544 F. Supp. 542 (N.D.N.Y. 1982) .....................2

*Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742 (10th Cir. 2010) ....................16

*Cheyenne-Arapaho Tribes v. Oklahoma*, 618 F.2d 665 (10th Cir. 1980) .....................19

*City of Tulsa v. O'Brien*, 2024 OK CR 31 ......................................................................8

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996) ..............................................................................6

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ........19, 20, 21

*Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012) .....................15, 16

*County of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation*,
    502 U.S. 251 (1992) ............................................................................................13

*Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245 (10th Cir. 2022) .....4

*Cramer v. United States*, 261 U.S. 219 (1923) .............................................................18

*D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223 (10th Cir. 2004) ...........................5, 6

*D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223
    (10th Cir. 2013) ..............................................................................................21, 23

*Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007) ..............................................................14

*Deo v. Parrish*, 2023 OK CR 20, 541 P.3d 833 ............................................................7

*DIRECTV, Inc. v. Imburgia*, 577 U.S. 47 (2015) .........................................................1, 8

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ...........................................................5, 7

*Dutcher v. Matheson*, 840 F.3d 1183 (10th Cir. 2016) ..................................................7

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850
    (D. Utah Aug. 24, 2022) ........................................................................................7

*Ex parte Crow Dog*, 109 U.S. 556 (1883) .............................................................1, 8, 20

*Ex parte Royall*, 117 U.S. 241 (1886) ...........................................................................3

*Fisher v. Dist. Ct.*, 424 U.S. 382 (1976) (per curiam) ..................................................13

*Fox v. Maulding*, 16 F.3d 1079 (10th Cir. 1994)..........................................21, 22, 23

*Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ...........................3, 7, 8

*Hansberry v. Lee*, 311 U.S. 32 (1940).......................................................................22

*Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984)......................................................4

*Heckman v. United States*, 224 U.S. 413 (1912)........................................................17

*Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019) .........................................7

*Hogner v. State*, 2021 OK CR 4, 500 P.3d 629 ...........................................................9

*Howlett ex rel. Howlett v. Rose*, 496 U.S. 356 (1990) .................................................8

*Imperial County v. Munoz*, 449 U.S. 54 (1980)...........................................................2

*In re Lindsay*, 59 F.3d 942 (9th Cir. 1995).................................................................25

*Int'l Asset Mgmt., Inc. v. Holt*, 487 F. Supp. 2d 1274 (N.D. Okla. 2007)...............22, 23

*J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir. 1999) ........................................3

*James v. City of Boise*, 577 U.S. 306 (2016) (per curiam)...........................................8

*Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253 (10th Cir. 2002) ............................4

*Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222 (10th Cir. 2020) ...........12

*Kane County v. United States*, 928 F.3d 877 (10th Cir. 2019)......................................6

*Kirk v. Oklahoma*, No. 21-6050, 2021 WL 5111985 (10th Cir. Nov. 3, 2021)................3

*Kugler v. Helfant*, 421 U.S. 117 (1975) ....................................................................11

*Larson v. Valente*, 456 U.S. 228 (1982) ..................................................................16

*Leiter Mins., Inc. v. United States*, 352 U.S. 220 (1957) .............................................2

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...............................................12, 13, 22

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ..............................................................16

*McGirt v. Oklahoma*, 591 U.S. 894 (2020).......................................................... *passim*

*McGirt v. State*, No. PC-2018-1057 (Okla. Crim. App. Feb. 25, 2019) ........................17

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982)...................................................................................3, 4, 6, 8, 10

*Mille Lacs Band of Chippewa Indians v. Minnesota*, 853 F. Supp. 1118
   (D. Minn. 1994) ........................................................................................................2

*Mitchum v. Foster*, 407 U.S. 225 (1972)................................................................2, 11

*Moe v. Salish & Kootenai Tribes*, 425 U.S. 463 (1976) ...............................................2

*Moore v. Sims*, 442 U.S. 415 (1979)....................................................................10, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).....................21, 22, 24

*Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017) .........................................................20

*N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216 (10th Cir. 2021) .......................................12

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845 (1985)....................................19

*Navajo Nation v. Dalley*, 896 F.3d 1196 (10th Cir. 2018)...............................................19

*Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005) ...........................................15

*Oglala Sioux Tribe v. Schwarting*, 894 F. Supp. 2d 1195 (D. Neb. 2012) .............................17

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) ...............................................5, 9, 11

*Oklahoma v. U.S. Dep't of Interior*, 640 F. Supp. 3d 1110 (W.D. Okla. 2022).........................9

*Oklahoma v. William*s, CF-2023-00311 (Okla. Dist. Ct.) .................................................6

*Payne v. WS Servs., LLC*, No. civ-15-1061, 2016 WL 3926486
    (W.D. Okla. July 18, 2016) ........................................................................7

*Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) ....................................................11

*Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681,
    2017 WL 6397492 (N.D. Okla. Dec. 14, 2017)................................................21

*Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-cv-0681,
    2017 WL 2347188 (N.D. Okla. May 30, 2017) ...............................................22

*SEC v. Marquis Prop., LLC*, No. 2:16-cv-0040-JNP, 2016 WL 6839513
    (D. Utah July 21, 2016)............................................................................2

*Seneca-Cayuga Tribe of Okla. v. Oklahoma ex rel. Thompson*,
    874 F.2d 709 (10th Cir. 1989)......................................................8, 9, 10, 24

*Sharp v. Murphy*, 591 U.S. 977 (2020) (per curiam) ...................................................20

*Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374 (10th Cir. 2024)...................14

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..........................................................13

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)........................................3, 4, 8

*State ex rel. Matloff v. Wallace*, 2021 OK CR 21, 497 P.3d 686.........................................9

*Steffel v. Thompson*, 415 U.S. 452 (1974)...............................................................7

*Stitt v. City of Tulsa*, 2025 OK CR 5, *as corrected* 2025 OK CR 6,
    *pet. for reh'g filed* (Mar. 25, 2025) .........................................................9

*TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175 (10th Cir. 2007)......................................7

*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*,
    98 F.4th 1307 (10th Cir. 2024)...............................................................3, 8

*United States v. Billey*, No. 17-cr-0108-CVE, 2021 WL 3519279
    (N.D. Okla. Aug. 10, 2021)......................................................................9

*United States v. Fitzgerald*, 201 F. 295 (8th Cir. 1912) ................................................18

*United States v. Kagama*, 118 U.S. 375 (1886) ........................................................18

*United States v. Lara*, 541 U.S. 193 (2004) ............................................................18

*United States v. McBride*, 94 F.4th 1036 (10th Cir. 2024) ........................................24

*Ute Indian Tribe of Uintah & Ouray Rsrv. v. Lawrence* (*Lawrence II*),
    22 F.4th 892 (2022) .............................................................................................19

*Ute Indian Tribe of Uintah & Ouray Rsrv. v. Utah (Ute VI)*,
    790 F.3d 1000 (10th Cir. 2015) .................................................................... *passim*

*Ute Indian Tribe v. Lawrence* (*Lawrence I*), 875 F.3d 539 (10th Cir. 2017)...........6, 19

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118 (10th Cir. 2018)...........21, 22

*Walck v. Edmondson*, 472 F.3d 1227 (10th Cir. 2007) ...............................................11

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................12

*Weitzel v. Div. of Occupational & Pro. Licensing*, 240 F.3d 871 (10th Cir. 2001) ........11

*Winn v. Cook*, 945 F.3d 1253 (10th Cir. 2019).......................................................2, 3

*Younger v. Harris*, 401 U.S. 37 (1971) ...............................................................2, 3, 11

## CONSTITUTIONS, STATUTES, TREATIES

Act of Aug. 15, 1953, ch. 505, Pub. L. No. 83-280, 67 Stat. 588 (codified as
    amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-1326, 28 U.S.C. § 1360) ........20

18 U.S.C. § 1162 ....................................................................................................19

25 U.S.C. § 1301(2) ................................................................................................18

28 U.S.C. § 1362 ......................................................................................................2

28 U.S.C. § 2241 ......................................................................................................3

28 U.S.C. § 2283 ......................................................................................................2

43 U.S.C. § 666 ......................................................................................................20

Okla. Const. Art. VII, § 7........................................................................................17

Okla. Const. art. 7, § 7(a)........................................................................................16

20 O.S. § 40 ...........................................................................................................16

Okla. Stat. tit. 19

    § 215.1....................................................................................................................1
    §§ 215.1-215.5 .......................................................................................................1
    §§ 215.7-215.13 .....................................................................................................1
    § 215.16..................................................................................................................1
    § 215.20..................................................................................................................1

**MISCELLANEOUS**

Fed. R. Civ. P. 65(d)(2)(C)...........................................................................................................15

The Cherokee Nation and Choctaw Nation of Oklahoma ("Nations") respond to Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support ("Br."), ECF No. 50, to show that the Plaintiff United States has standing to enforce the exclusivity of federal and tribal jurisdiction over crimes by Indians in Indian country in both its own sovereign capacity and as trustee for the Nations, and that Defendant cannot rely on *Younger* or *Colorado River* abstention to shield her continuing violation of federal law from the relief Plaintiff seeks.

## ARGUMENT

The principal flaw in Defendant's *Younger* and *Colorado River* abstention claims is that she fails to address the Supreme Court's holding in *McGirt v. Oklahoma*, 591 U.S. 894 (2020), that federal law "'require[s] a clear expression of the intention of Congress' before the state or federal government may try Indians for conduct on their lands," and that "Oklahoma cannot come close to satisfying this standard" because "Oklahoma doesn't claim to have complied with the requirements to assume jurisdiction voluntarily over [Indian country].  Nor has Congress ever passed a law conferring jurisdiction on Oklahoma."  *Id.* 929, 932 (quoting *Ex parte Crow Dog*, 109 U.S. 556, 572 (1883)).  As a decision of the Supreme Court, *McGirt* is binding on the State, its courts, and Defendant.[1]  *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53 (2015).  Neither *Younger* nor *Colorado River* can shield Defendant from enforcement of *McGirt* by this Court.  And Plaintiff has standing to enforce *McGirt* because Defendant's exercise of state jurisdiction over Indians in Indian country causes an injury in fact to Plaintiff that injunctive relief will remedy.

---

[1] Defendant is bound by *McGirt* because an Oklahoma district attorney is a state official.  *See Arnold v. McClain*, 926 F.2d 963, 965-66 (10th Cir. 1991); Okla. Stat. tit. 19, § 215.1 ("There is hereby created the office of district attorney in the State of Oklahoma.").  Under state law, Defendant is responsible for appearing in state court to prosecute all violations of state law within her District.  Okla. Stat. tit. 19, § 215.4.  Her powers, duties, and the area within which she exercises jurisdiction are defined by state law.  *Id.* §§ 215.1-215.5, 215.7-215.13, 215.16, 215.20.

## I.    *Younger* Has No Application To The Plaintiff's Claims In This Case.

Defendant begins her *Younger* argument by conflating *Younger v. Harris*, 401 U.S. 37 (1971), and the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, Br. at 12, notwithstanding that in *Younger* the Court "carefully eschewed any reliance on the [AIA]." *Mitchum v. Foster*, 407 U.S. 225, 230 (1972).  In any event, the AIA does not apply where, as here, the United States seeks injunctive relief.  *Leiter Mins., Inc. v. United States*, 352 U.S. 220, 224-26 (1957).[2]

Nor is *Younger* applicable here.  Defendant urges that "under the *Younger* abstention doctrine federal courts are required to abstain from exercising jurisdiction to interfere with state proceedings when the following three requirements are met," which he recites as: "(1) [T]here is an ongoing state criminal, civil, or administrative proceeding, (2) [T]he state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) [T]he state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."  Br. at 12-13 (quoting *Winn v. Cook*, 945 F.3d

---

[2] Defendant has not asserted that the AIA applies to the Nations, nor could she.  As the Nations assert the same claims as the United States, they may rely on the inapplicability of the AIA to the United States, just as a tribe may rely on the unavailability of state sovereign immunity against the United States when the tribe joins a claim the United States has brought against a state.  *Arizona v. California*, 460 U.S. 605, 614 (1983) (When a Tribe's claim is the same as that of the United States, the court's "judicial power over the controversy is not enlarged … and the States' sovereign immunity protected by the Eleventh Amendment is not compromised"); *see Mille Lacs Band of Chippewa Indians v. Minnesota*, 853 F. Supp. 1118, 1128 (D. Minn. 1994).  Second, the AIA is inapplicable to strangers to the state court proceeding sought to be enjoined, *Imperial County v. Munoz*, 449 U.S. 54, 59 (1980); *SEC v. Marquis Props., LLC*, No. 2:16-cv-0040-JNP, 2016 WL 6839513 (D. Utah July 21, 2016), and is therefore inapplicable here.  *See* Nations' Reply in Supp. of Mot. to Intervene ("Reply") at 1-2, ECF No. 55.  Third, the AIA is inapplicable where, as here, an Indian tribe brings an action under 28 U.S.C. § 1362, seeking to enjoin state court proceedings, and the action is one that the United States could have brought as the tribe's trustee.  *Cayuga Indian Nation of N.Y. v. Fox*, 544 F. Supp. 542, 551 n.5 (N.D.N.Y. 1982) (citing *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463 (1976) (cleaned up)).  We reserve any additional arguments against the AIA, in the event that Defendant asserts it against the Nations later in the proceedings.

2

1253, 1258 (10th Cir. 2019) (alterations by Defendant) (indentations removed)).[3]  This recital overlooks the Supreme Court's deliberate examination of *Younger* in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013),[4] and its correction of the significance of the *Middlesex* conditions, *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), in the *Younger* analysis.[5]  The Tenth Circuit subsequently explained the impact of *Sprint* as follows.  *See Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307 (10th Cir. 2024).

*First*, "the possibility of *Younger* abstention is triggered *only when* the state proceeding falls into one of the following categories: '(1) state criminal prosecutions, (2) civil enforcement proceedings [that take on a quasi-criminal shape], and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function.'"  *Id.* at 1317 (quoting *Graff v. Aberdeen Enters., II*, 65 F.4th 500, 522 (10th Cir. 2023); citing *Sprint*, 571 U.S. at 79).  "The [Supreme] Court has 'not applied *Younger* outside these three "exceptional" categories,' which 'define *Younger*'s scope.'"  *Id.* (quoting *Sprint*, 571 U.S. at 78).

*Second*, "[i]f and only if the state court proceeding falls within one of the enumerated 'exceptional' types of cases, *may* courts analyze the propriety of abstention under the so-called *Middlesex* conditions.  Those conditions ask whether there exists '(1) an ongoing state judicial …

---

[3] While *Winn* applied *Younger*, the appellant in *Winn* sought a certificate of appealability of denial for habeas relief under 28 U.S.C. § 2241, 945 F.3d at 1256-57, which is more properly considered by applying *Ex parte Royall*, 117 U.S. 241 (1886).  As the Tenth Circuit held in *Kirk v. Oklahoma*, No. 21-6050, 2021 WL 5111985 (10th Cir. Nov. 3, 2021), while "*Younger* and *Ex parte Royall* are related doctrines," *Younger* "addressed a federal court's equitable power to issue an injunction enjoining state proceedings, *see* 401 U.S. at 43-45, while *Ex parte Royall* … involved a request for habeas relief, *see* 117 U.S. at 245," and *Royall* provides "the more specific authority for the dismissal" of a § 2241 application.  *Kirk*, 2021 WL 5111985, at *2.

[4] Defendant relies on *Sprint*, Br. at 12, but omits any reference to its clarifications of *Younger*.

[5] Defendant's reliance on *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999), Br. at 13, is flawed for the same reason.

proceeding, (2) the presence of an important state interest, and (3) an adequate opportunity to raise federal claims in the state proceedings.'" *Id.* (quoting *Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1256 (10th Cir. 2022)) (alteration in original).

*Third*, "[i]n *Sprint*, the Supreme Court made clear that the *Middlesex* conditions are '*additional* factors appropriately considered by the federal court before invoking *Younger*,' but that those factors do not control the application of *Younger*. This is so because when applied to a case that does not present one of the three 'exceptional' state court proceedings, 'the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings.'" *Id.* (quoting *Sprint*, 571 U.S. at 81) (citation omitted). Accordingly, Defendant's assertion that "federal courts are required to abstain" when the three factors she quotes from *Winn* are satisfied (which in substance recite the *Middlesex* conditions, *see* 457 U.S. at 433) is mistaken. *See* Br. at 12.[6] These factors are applicable only if it is first determined that the case falls within one of the three "exceptional" state court proceedings to which *Younger* may apply, which this case does not do.

---

[6] Defendant's reliance on *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002), Br. at 13, fails for the same reason, as that court considered abstention to be mandatory when the three *Middlesex* conditions are met without first considering whether the case fell within one of the three "exceptional" state court proceedings to which *Younger* may apply. *See Ingram*, 275 F.3d at 1267. It very likely did not, as *Ingram* applied *Younger* to bar enforcement of a consent decree entered by the federal court in a civil rights class action, *id.* at 1257. And both *Ingram*'s holding and the quote on which Defendant relies, Br. at 13, are directly contrary to the *Travelers* court's directive that applying the *Middlesex* conditions without first determining whether a case falls within "one of the three 'exceptional' state court proceedings" "would extend *Younger* to virtually all parallel state and federal proceedings," contrary to *Sprint*'s instruction. *Travelers*, 98 F.3d 1317 (quoting *Sprint*, 571 U.S. at 81). As the Supreme Court held in *Sprint*, "[t]hat result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" 571 U.S. at 593 (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)).

**A.** *Younger* **is inapplicable because the United States is not a party to, nor will the future relief it seeks from Defendant interfere with, any state proceedings.**

*Younger* is inapplicable here because the United States is not a party to *any state criminal prosecutions*, and *Younger* does not apply to claims by plaintiffs against whom "[n]o state proceedings [a]re pending" where "[the plaintiffs] satisf[y] the requirements for federal jurisdiction," *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975).[7] "*Doran* illustrates that it is proper for a federal court to exercise jurisdiction over the claim of a genuine stranger to an ongoing state proceeding even though a federal decision clearly could influence the state proceeding by resolving legal issues identical to those raised in state court," and "[s]o long as the stranger has its own distinct claim to pursue, it may even be aligned with the state-court litigant in a common enterprise of vindicating the policy that gives rise to their individual claims." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230 (10th Cir. 2004) (citations omitted). That fits Plaintiff to a T.

As Defendant admits, "the prosecutions are against individual criminal defendants, not the United States." Br. at 7. "The State prosecutes individuals." *Id.* at 8; *see Oklahoma v. Castro-Huerta*, 597 U.S. 629, 650 (2022) ("The only parties to the criminal case are the State and the non-Indian defendant."). Nevertheless, Defendant urges that "[t]he fact that the United States is not an actual party to the [state criminal proceedings] … is immaterial … as the United States claims it is acting as a trustee on behalf of the tribes." Br. at 13 (citing U.S. Compl. ¶ 19, ECF No. 2 and *D.L.*, 392 F.3d at 1230-31). While Plaintiff makes that claim in this case, it is not a party to the state criminal proceeding. And while Plaintiff has moved for leave to participate as amicus curiae in support of the individual defendant's motion to dismiss prosecution by a different district

---

[7] Defendant asserts *Younger* applies here because granting relief in this case would interfere with state criminal prosecutions. Br. at 13 ("[T]here are ongoing state criminal proceedings.").

attorney in *Oklahoma v. Williams*, CF-2023-00311 (Okla. Dist. Ct. Sept. 15, 2023), *see* Br. at 15, it cannot in that capacity present its own claims to the state court nor can it seek relief from that court. *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996); *see Kane County v. United States*, 928 F.3d 877, 896 (10th Cir. 2019). And "*Younger* abstention is inappropriate when a federal plaintiff cannot pursue its federal contentions in the ongoing state proceeding." *D.L.*, 392 F.3d at 1229 (citing *Middlesex*, 457 U.S. at 435-37); *see Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994) ("[W]e can find [no cases] in which any court has ever granted *Younger* abstention because a state proceeding was ongoing in which the federal party was, not a party, but an amicus."). *Doran*'s other requirement is also met here, as there is federal jurisdiction over this action. *Ute Indian Tribe v. Lawrence* (*Lawrence I*), 875 F.3d 539, 544 (10th Cir. 2017) ("[A] suit to enjoin a State from exercising jurisdiction contrary to federal law" "'aris[es]' under' federal law.").

That Plaintiff "has its own distinct claim to pursue" in this case is equally clear. Plaintiff sues "on its own behalf in its sovereign governmental capacity," in which it "has statutory authority to address certain crimes committed by Indians in Indian country," U.S. Compl. ¶ 5, and its own interests in prosecuting defendants within its jurisdiction "both in Oklahoma and nationwide," *id.* ¶ 40. In addition, Plaintiff sues "as trustee" for Indian tribes in which capacity it "has an interest in protecting tribes' inherent sovereign power to exercise criminal jurisdiction over Indians for conduct occurring on their reservations exclusive of the states," *id.* ¶ 19. By contrast, an individual Indian defendant's primary interest is in avoiding conviction and punishment by the State, and such a defendant has neither right nor reason to seek to enjoin future state prosecutions of Indians

in Indian country, as Plaintiff and the Nations seek to do by bringing their claims in this case.[8]  In

sum, the satisfaction of the two *Doran* factors, *see* 422 U.S. at 930, makes *Younger* inapplicable

here.[9]

For like reasons, *Younger* is also inapplicable to Plaintiff's request for relief to prevent

Defendant from claiming jurisdiction to arrest and prosecute Indians in Indian country in the

future.  U.S. Compl. ¶¶ 1, 42-43, 44.a-.b.  "*Younger* is only appropriate when failing to abstain

would disturb an ongoing state proceeding." *Graff*, 65 F.4th at 524-25 (citing *Steffel v. Thompson*,

415 U.S. 452, 460-62 (1974)) ("[I]f state proceedings are not ongoing, abstention is improper

because 'the relevant principles of equity, comity, and federalism have little force.'").[10]

---

[8] Defendant urges that state courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of challenge from any party."  Br. at 8 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).  That assertion doesn't help Defendant here because the Oklahoma Court of Criminal Appeals ("OCCA") has held that state criminal jurisdiction over Indians in Indian country is not a question of subject matter jurisdiction.  *Deo v. Parish*, 2023 OK CR 20, ¶ 15, 541 P.3d 833, 838.  That holding does not alter the federal law that controls that issue.  *See infra* at 8-9 n.11.  Furthermore, this Court is not bound by a state court's interpretation of federal law, *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016), nor should it defer to state courts' rulings on those questions, *see Payne v. WS Servs., LLC*, No. civ-15-1061, 2016 WL 3926486, at *1 (W.D. Okla. July 18, 2016) (citing *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007)).

[9] Defendant nevertheless argues that the United States may be treated the same as the individual state court defendants, asserting that the United States has "a substantial stake in the state proceedings" and that its interests are "intertwined" with the individual state court defendants'.  Br. at 19-20 (quoting *Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); citing *Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019)).  But in both *Ellis* and *Herrera* the court relied on familial relationships to apply *Younger* to non-parties to the state court action whose federal court claims relied on the same facts as did the claims that the state court defendant brought in federal court, *Ellis*, 2022 WL 3645850, at *7 (spouse and minor child of state court Defendant held bound); *Herrera*, 918 F.3d at 1047 ("The Herreras are all related to the same corporation, Palmdale Lodging.").  No such circumstances are present here.

[10] Defendant relies on *Ellis* and *Herrera* to argue otherwise, Br. at 19-20, but neither case applies here for the reasons shown supra at 7 n.8.  Defendant also appears to suggest that *Younger* applies to the Plaintiff because it applies to the Nations, which is incorrect.  *See* Reply at 1-6.

Thus, Defendant's contention that "there are ongoing state criminal proceeding" that fall within *Younger*'s scope, Br. at 13, fails for the reasons just shown.  That is so whether those proceedings are considered not to fall within the three "exceptional" categories that "define *Younger*'s scope," *Travelers*, 98 F.4th at 1317 (citing *Graff*, 65 F.4th at 522; quoting *Sprint*, 571 U.S. at 78-79), or whether the absence of such proceedings is considered under the first *Middlesex* condition, assuming, only *arguendo*, the need to apply those conditions in this case.

**B.**     ***Younger* is inapplicable because the state proceedings do not implicate an important state interest.**

The second *Middlesex* condition, assuming *arguendo* that it is relevant here, asks "do the proceedings implicate important state interests."  457 U.S. at 432; *Ute Indian Tribe of Uintah & Ouray Rsrv. v. Utah* (*Ute VI*), 790 F.3d 1000, 1008 (10th Cir. 2015) (abstention requires "the presence of an important state interest" (quoting *Seneca-Cayuga Tribe of Okla. v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989))).  There is none here, as the State has no legitimate interest in defying the Supreme Court's ruling in *McGirt*, which "'require[s] a clear expression of the intention of Congress' before the state or federal government may try Indians for conduct on their lands" and holds that "Oklahoma cannot come close to satisfying this standard," 591 U.S. at 929, 932 (quoting *Crow Dog*, 109 U.S. at 572), and which is binding on the State, its courts, and Defendant, *DIRECTV*, 577 U.S. at 53; *supra* at 1.[11]  And it applies equally to the

---

[11] While Defendant points to the OCCA's decision in *City of Tulsa v. O'Brien*, 2024 OK CR 31, Br. at 2-3, that decision is inconsistent with, and cannot control over, *McGirt*.  "[T]he 'Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content *or a refusal to recognize the superior authority of its source*.'"  *DIRECTV*, 577 U.S. at 53 (quoting *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 371 (1990)) (emphasis added); *accord James v. City of Boise*, 577 U.S. 306, 307 (2016) (per curiam). In addition, while *O'Brien* asserted, 2024 OK CR 31, ¶ 26 n.4, that *McGirt* was "undermined" by *Castro-Huerta*, only the Supreme Court has authority to "undermine" its precedents.  *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons

Cherokee Nation Reservation, which continues to exist and has not been disestablished. *Castro-Huerta*, 597 U.S. at 633-34 (citing *State ex rel. Matloff v. Wallace*, 2021 OK CR 21, ¶ 15, 497 P.3d 686, 689); *Hogner v. State*, 2021 OK CR 4, ¶¶ 9-11, 17-18, 500 P.3d 629, 631-35; *Oklahoma v. U.S. Dep't of Interior*, 640 F. Supp. 3d 1110, 1119-20 (W.D. Okla. 2022); *United States v. Billey*, No. 17-cr-0108-CVE, 2021 WL 3519279, at *2 n.1 (N.D. Okla. Aug. 10, 2021). Requiring compliance with *McGirt* would not interfere with state court proceedings because state courts are bound by *McGirt*. Furthermore, "where, as here, states seek to enforce state law against Indians in Indian country '[t]he presumption and the reality … are that federal law, federal policy, and federal authority are paramount' and the state's interests are insufficient 'to warrant *Younger* abstention.'" *Ute VI*, 790 F.3d at 1008-09 (quoting *Seneca-Cayuga*, 874 F.2d at 713-14) (alterations in original).[12]

While Defendant points to cases that, in other contexts, recognize the importance of the enforcement of state criminal law, Br. at 17, none of these cases concerned the exercise of state criminal jurisdiction over Indians in Indian country, much less in defiance of a binding ruling of the Supreme Court, and therefore none establishes that the Defendant has an important state interest in this case. And while Defendant also relies on *Castro-Huerta* for this purpose, that effort fails as *Castro-Huerta* expressly does *not* address state jurisdiction over Indians in Indian country, 597 U.S. at 639 n.2, 650 n.6, 655 n.9. And as *Castro-Huerta* excluded state jurisdiction over

---

rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.") (cleaned up). For the same reasons, any effort to rely on the OCCA's recent decision in *Stitt v. City of Tulsa*, 2025 OK CR 5, *as corrected* 2025 OK CR 6, *pet. for reh'g filed* (Mar. 25, 2025), would also fail.

[12] "Nor would resolution of these issues in state court prevent conflict between the interests of the Tribes, protected by federal law, and the interests of the State. That conflict is inevitable. Because abstention would not mitigate this conflict, the proper forum to resolve it is federal court." *Seneca-Cayuga*, 874 F.2d at 714.

*Indians* from the decision, Defendant's assertion that "[t]he Court in *Castro-Huerta* made no distinction between Indian and nonmember Indian offenders," Br. at 17-18, is irrelevant.

C.    ***Younger* is inapplicable because the state proceedings do not provide an adequate opportunity for Plaintiff to raise its claims.**

The third *Middlesex* condition, again assuming *arguendo* that it is relevant here, asks whether the state proceedings provide an adequate opportunity for the plaintiff to raise its claims. 457 U.S. at 432; *Ute VI*, 790 F.3d at 1008 ("[F]or *Younger* abstention to apply, there must be … 'an adequate opportunity to raise federal claims in the state proceedings.'" (quoting *Seneca-Cayuga*, 874 F.2d at 711)); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979). There is no such opportunity in the state proceedings because the United States is not a party to those proceedings, and therefore could not pursue its claims for declaratory and injunctive relief in those proceedings, even assuming, *arguendo*, that such relief were available in a state court criminal case. That makes the cases on which Defendant relies, *see* Br. at 14, inapposite here. For *Younger* to apply "the federal plaintiff must have an opportunity to press his claims in the state courts," *Moore*, 442 U.S. at 432, and as there is none here *Younger* is inapplicable.

In an effort to show otherwise, Defendant reviews state court proceedings that have addressed state criminal jurisdiction over nonmember Indians, Br. at 15-17, but nothing she says there shows, or even suggests, that the United States could have pursued in those proceedings either the claims it has made or the relief it seeks in its complaint in this case. Participating as an *amicus curiae* affords no such opportunity because *amici curiae* are not parties to the proceedings and cannot seek relief from the court. *See supra* at 5-6.

**D.** *Younger* **is inapplicable because the state proceedings present extraordinary circumstances that threaten irreparable harm.**

Settled law provides that even if *Younger*'s requirements are met, abstention is barred where "extraordinary circumstance[s] creating a threat of 'irreparable injury' both great and immediate" are shown. *Phelps v. Hamilton*, 59 F.3d 1058, 1063-64 (10th Cir. 1995); *see Moore*, 442 U.S. at 433 ("'extraordinary circumstances' that … constitute great, immediate, and irreparable harm" render *Younger* inapplicable (citing *Kugler v. Helfant*, 421 U.S. 117 (1975); *Younger*, 401 U.S. at 46). And Defendant admits injunctive relief is permissible where "irreparable harm [i]s 'both great and immediate.'" Br. at 18 (quoting *Mitchum*, 407 U.S. at 230-31).

Defendant's prosecution of Indians in state court for crimes allegedly committed in Indian country in defiance of *McGirt* is an extraordinary circumstance. It invades tribal sovereignty and constitutes irreparable harm to the Nations, *Ute VI*, 790 F.3d at 1005, and therefore to the United States as the Nations' trustee, U.S. Compl. ¶¶ 5, 19, 40, and "[t]he *Younger* abstention doctrine is inapplicable … where irreparable injury can be shown." *Walck v. Edmondson*, 472 F.3d 1227, 1233 (10th Cir. 2007) (quoting *Weitzel v. Div. of Occupational & Pro. Licensing*, 240 F.3d 871, 876 (10th Cir. 2001)). *Younger* said that a "threat to the plaintiff's federally protected rights" is "'irreparable' in the special legal sense of that term" when it "cannot be eliminated by his defense against a single criminal prosecution," 401 U.S. at 46. That is precisely the case here. Plaintiff cannot protect the Cherokee Nation's federal right to be free from state interference with its exercise of criminal jurisdiction over all Indians on its Reservation in the state court proceedings because the State and the defendant are the only parties to state court criminal cases, *see Castro-Huerta*, 597 U.S. at 650, and the Nations plainly could not pursue injunctive relief against the

Defendant in a case to which they were not parties even assuming, *arguendo*, that such relief were available in a state court criminal case.

## II.    Plaintiff Has Standing To Pursue Its Claims In This Case.

Defendant contends that Plaintiff lacks standing in this case because it "cannot establish either an injury-in-fact or redressability." Br. at 7. Neither contention is sustainable.

### A.    Plaintiff has suffered an injury-in-fact.

Defendant claims that Plaintiff's allegations of injury in fact are inadequate because they are "abstract" and offer only "generalized statements that may be intended to describe harm," Br. at 7-8 (citing U.S. Compl. ¶ 40). This argument fails because "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citation omitted), and because "[a]t the pleading stage, general factual allegations of injury resulting from defendant's conduct may" establish standing, *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The standing allegations of Plaintiff's complaint show that Plaintiff has suffered an injury in fact and reject Defendant's suggestion that they have not shown "real harm to a legally protected interest." Br. at 7 (citing *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021)).

Plaintiff's complaint alleges legally protected interests in the exercise of tribal and federal criminal jurisdiction over Indians on Indian reservations, exclusive of the States. Plaintiff sues "on its own behalf in its sovereign governmental capacity," in which it "has statutory authority to address certain crimes committed by Indians in Indian country," U.S. Compl. ¶ 5, "both in Oklahoma and nationwide," *id.* ¶ 40, and "as trustee" for Indian tribes in which capacity it "has an

12

interest in protecting tribes' inherent sovereign power to exercise criminal jurisdiction over Indians for conduct occurring on their reservations exclusive of the states," *id.* ¶ 19. Plaintiff's complaint also alleges harm "that is 'concrete and particularized,'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiff alleges that "[a]bsent congressional authorization, the states lack criminal jurisdiction over *all* Indians in Indian country," U.S. Compl. ¶ 10, and that this rule applies to "a state and its subdivisions," *id.* ¶ 11 (citing *Ute VI*, 790 F.3d at 1006). Plaintiff also alleges that "[g]iving the states concurrent jurisdiction to apply state criminal laws to Indians in Indian country would undermine tribal self-government," "effectively supplant tribes' right to make their own criminal laws and be governed by them," *id.* ¶ 18 (citations omitted), and "subject Indians 'to a forum other than the one they have established for themselves,' which would 'plainly … interfere with the powers of [tribal] self-government.'" *Id.* (quoting *Fisher v. Dist. Ct.*, 424 U.S. 382, 387-88 (1976) (per curiam); citing *County of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation*, 502 U.S. 251, 265 (1992)). Defendant's violation of federal law causes this harm: "Defendant continues to assert criminal jurisdiction over and prosecute Indians in Indian country, creating intolerable jurisdictional chaos in Indian country," *id.* at ¶ 31, as shown by four cases[13] in which Defendant "brought criminal charges on behalf of the State against Indians for conduct occurring in Indian country," *id.* ¶ 35.

Defendant's conduct is "dangerous if permitted to stand" and unless enjoined "Defendant's actions will continue to seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide." *Id.* ¶ 40. These allegations reject Defendant's assertion that "[o]nly the individual[] [criminal defendants] can claim specific

---

[13] And there are others. *See* Nations' Compl. ¶¶ 51-58, ECF No. 25-2.

injury," Br. at 7. As the Tenth Circuit held in *Ute VI*, "the prosecution of [a tribal member] [is] itself an infringement on tribal sovereignty," 790 F.3d at 1005, and unlawful state prosecution constitutes irreparable harm. Finally, "[w]e assume, during the evaluation of the plaintiff's standing, that the plaintiff will prevail on his merits argument—that is, that the defendant has violated the law." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (quoting *Day v. Bond*, 500 F.3d 1127, 1137 (10th Cir. 2007)).

Defendant also contends that Plaintiff is not injured because the state prosecutions "do not impact Plaintiff's authority to prosecute." Br. at 8. Plaintiff's complaint rejects that contention. U.S. Compl. ¶ 18 ("Giving the states concurrent jurisdiction to apply state criminal laws to Indians in Indian country would undermine self-government" by "effectively supplant[ing] tribes' right to make their own criminal laws and be governed by them."); *id.* ¶ 40 (Defendant's conduct is "dangerous if permitted to stand" and unless enjoined "Defendant's actions will continue to seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide").

Finally, Defendant asserts that enjoining her will result in "jurisdictional chaos" and "[a] hodgepodge, patchwork system." Br. at 9. But her refusal to recognize the holding of *McGirt* that the State lacks criminal jurisdiction over Indians in Indian country, 591 U.S. at 929, 932, is the cause of the injury in fact that this action seeks to remedy.

**B.    Plaintiff's injuries in fact are redressable.**

Defendant also contends that the Plaintiff has not established redressability because the state Attorney General, the State, and the OCCA could initiate or continue state prosecutions and

14

appeals in cases involving Indians in Indian country. Br. at 9-10.[14]  That argument fails because Plaintiff asserts that *McGirt* decided that question, U.S. Compl. ¶ 2, the court must assume the Plaintiff's success on the merits in determining standing, *see supra* 13, and the State's future conduct cannot be predicted in any event.  Redressability is present here because the injunction sought by the United States, U.S. Compl. ¶ 44b., would stop Defendant from "continu[ing] to assert criminal jurisdiction over and prosecute Indians in Indian country," U.S. Compl. ¶ 31,[15] which seriously impact[s] the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide," *id.* ¶ 40.  Furthermore, Plaintiff is not required to address in this case every possible violation of its federal rights by every state actor who might violate those rights.  As Defendant admits, "[t]o establish redressability, one 'must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." Br. at 9 (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005)).[16]

---

[14] Defendant also points to the Governor's power to appoint a special prosecutor, although Defendant does not assert the Governor has appointed such a prosecutor in her district.  And any a special prosecutor working in "active concert or participation" with Defendant would be bound by a federal injunction against her.  *See* Fed. R. Civ. P. 65(d)(2)(C).

[15] Plaintiff seeks to enjoin Defendant from prosecuting *all* Indians in Indian country.  *See* U.S. Compl. ¶ 10.  That would prevent Defendant from prosecuting Indians within their own tribes' Indian country.  *Cf* Br. at 8 n.2.  And Defendant does not disclaim her intention to prosecute member Indians.

[16] *Nova Health* offers Defendant no support on redressability.  There plaintiffs sued state officials, alleging that they were injured by the threat of litigation pursuant to a state law that allowed suits against them by a range of people, including state officials.  *Nova Health*, 416 F.3d at 1152-53.  However, "none [of the defendants] had sued or threatened to sue … nor had any possessed enforcement authority beyond what the statute granted to" any similarly situated private entity.  *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 903 (10th Cir. 2012) (discussing *Nova Health*, 416 F.3d at 1152-54, 1157).  The Tenth Circuit has explained that "*Nova Health* is a fact-bound decision" that "sheds no light on the doctrine of redressability beyond its narrow holding—a party lacks standing to seek an injunction against a nominally public defendant who has not threatened suit and who cannot be distinguished from the countless private litigants with identical enforcement powers."  *Id.* at 904.  This is obviously a very different case.

Furthermore, while Defendant's quotation of *Nova Health* omits that case's citation to *Larson v. Valente*, 456 U.S. 228 (1982), *Larson* rejects the notion that to establish standing a party must demonstrate there is "no other means by which the State can" impose an injury, explaining:

> As this Court has recognized, "the relevant inquiry is whether … the plaintiff has shown *an* injury to himself that is likely to be redressed by a favorable decision." In other words, a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.

*Id.* at 243 n.15 (citations omitted). Even if others were to later could chose to defy federal law (which is simply unknown and is not causing injury now), the United States' claims against Defendant will redress the injuries caused by *her* actions. *See Consumer Data*, 678 F.3d at 905 (redressability existed where "state defendants shared enforcement authority with private litigants" and plaintiffs sued state defendants but not private litigants, and "standing is proper where a favorable decision would relieve 'some extent' of an injury" (quoting *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007))); *id.* at 902-03 (citing *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 757-58 & n.16 (10th Cir. 2010)) (injunction against state Attorney General provided redress when the Attorney General had enforcement powers, even "where the immediate and primary threat" of enforcement came from "public employers, not the Attorney General").

Defendant also argues that "the requested injunction could not affect the trial courts' or OCCA's ability to proceed with adjudications" because "Oklahoma 'District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]' Okla. Const. art. 7, § 7(a). And the OCCA 'shall have exclusive appellate jurisdiction … in all criminal cases appealed from the district … courts[.]' 20 O.S. § 40." Br. at 10 (alterations in original). As that contention relies on state law, it cannot establish jurisdiction on an issue controlled by federal law, as is the case here. *See supra* at 1, 8-9 n.11. And Defendant's contention has no present-day validity, as it was the

basis of the OCCA decision that was reversed in *McGirt*.  In *McGirt v. State*, No. PC-2018-1057 (Okla. Crim. App. Feb. 25, 2019),[17] the OCCA rejected McGirt's claim that the State lacked jurisdiction over his crimes because they were committed in Indian country, ruling that "the prosecution of Petitioner's crimes … was a justiciable matter, and thus he has not established that the [State] District Court lacked jurisdiction.  Okla. Const. Art. VII, § 7 (District Courts shall have unlimited original jurisdiction of all justiciable matters in Oklahoma)."  *Id.* at 2-3.  The Supreme Court reversed that ruling.  591 U.S. at 938.  Defendant's challenge to redressability therefore fails.

### C.    Plaintiff has standing to bring this action as the trustee for Indian tribes.

Defendant denies that the United States has standing to sue as trustee for Indian tribes in this case contending that the authority of the United States to do so "is generally limited to advocating [for] tribes' property rights established by the United States" and that "advanc[ing] defenses belonging to specific nonmember Indian criminal defendants" falls outside those limits. Br. at 10-11 (relying on *Oglala Sioux Tribe v. Schwarting*, 894 F. Supp. 2d 1195, 1203-04 (D. Neb. 2012)).   But the Supreme Court has long recognized the standing of the United States to bring suit as trustee for Indian tribes, which defeats Defendant's reliance on *Schwarting*.  As the Court explained in *Heckman v. United States*, 224 U.S. 413 (1912),

> [o]ut of its peculiar relation to these dependent peoples sprang obligations to the fulfilment of which the national honor has been committed.  "From their very weakness and helplessness, so largely due to the course of dealing of the Federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power.  This has always been recognized by the Executive and by Congress and by th[e Supreme C]ourt, whenever the question has arisen."

---

[17]    https://www.oscn.net/dockets/GetDocument.aspx?ct=appellate&bc=1043004603&cn=PC-2018-1057&fmt=pdf

*Id.* at 437 (quoting *United States v. Kagama*, 118 U.S. 375, 384 (1886)). Furthermore, "[t]his national interest is not to be expressed in terms of property, or to be limited to the assertion of rights incident to the ownership of a reversion or to the holding of a technical title in trust." *Id.* And as a general matter, "[t]he United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies. It may maintain such suits, although it has no pecuniary interest in the subject matter thereof, for the purpose of protecting and enforcing its governmental rights and to aid in the execution of its governmental policies." *Cramer v. United States*, 261 U.S. 219, 233 (1923) (quoting *United States v. Fitzgerald*, 201 F. 295, 296 (8th Cir. 1912)).

Defendant then contends that the United States lacks standing to "advocate [for] the Tribes' prosecutorial jurisdiction" over nonmembers Indians because that authority "has at times been considered an 'inherent prosecutorial power[,] not extending from a Congressional grant." Br. at 11 (quoting *United States v. Lara*, 541 U.S. 193, 199-200 (2004)) (alteration by Defendant). That contention fails because the United States is "committed to a policy of supporting tribal self-government and self-determination," U.S. Compl. ¶ 5 (citation omitted), and Congress has made clear that "'powers of self-government'" means and includes all governmental powers possessed by an Indian tribe … and means the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians." 25 U.S.C. § 1301(2). Accordingly, the United States may sue to protect the rights § 1301(2) secures and "to aid in the execution of its governmental policies," *Cramer*, 261 U.S. at 233.

Plaintiff's complaint in this case establishes its standing in accordance with these settled principles. It states that "[t]he United States … has a special relationship with Indian tribes and has long been 'committed to a policy of supporting tribal self-government and self-

determination,'" and "thus has an interest in the exercise of tribal criminal authority in Indian country." U.S. Compl. ¶ 5 (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 856 & n.20 (1985)). And "the United States as trustee has an interest in protecting tribes' inherent sovereign power to exercise criminal jurisdiction over Indians for conduct occurring on their reservations exclusive of the states." *Id.* ¶ 19. That power is also held under the United States' treaties with the Cherokee Nation, as the complaint specifically alleges. U.S. Compl. ¶¶ 24-26. These allegations reject Defendant's contention that Plaintiff "has not alleged any interference with any tribe's property rights or any other authority that the United States promised tribes." Br. at 11.

## III. The *Colorado River* Abstention Doctrine Does Not Apply Here.

The *Colorado River* abstention doctrine has no application to this case because there is "no jurisdiction in the concurrent state actions to adjudicate the claims at issue in the federal suits." *Arizona v. San Carlos Apache Tribe of Ariz*., 463 U.S. 545, 560 (1983) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 800 (1976)); *accord. Ute Indian Tribe of Uintah & Ouray Rsrv. v. Lawrence* (*Lawrence II*), 22 F.4th 892, 908 n.17 (2022). The Supreme Court's decision in *McGirt* squarely holds that federal law "'require[s] a clear expression of the intention of Congress' before the state or federal government may try Indians for conduct on their lands,"[18] and that "Oklahoma cannot come close to satisfying this standard" because "Oklahoma doesn't

---

[18] The Tenth Circuit rule is the same: "unless Congress provides an exception to the rule … states possess 'no authority' to prosecute Indians for offenses in Indian country." *Ute VI*, 790 F.3d at 1004 (quoting *Cheyenne-Arapaho Tribes v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980); citing 18 U.S.C. § 1162). "These limits reflect a longstanding federal policy—enforceable against the states under the federal government's plenary and exclusive constitutional authority 'to legislate in respect to Indian tribes'—of 'leaving Indians free from state jurisdiction and control.'" *Lawrence II*, 22 F.4th at 899-900 (quoting *Lawrence I*, 875 F.3d at 541-42). "[W]hen a case brought against a tribe or its members 'aris[es] from conduct in Indian country,' state courts lack jurisdiction 'absent clear congressional authorization.'" *Id.* at 900 (second alteration in original) (quoting *Navajo Nation v. Dalley*, 896 F.3d 1196, 1204 (10th Cir. 2018)).

claim to have complied with the requirements to assume jurisdiction voluntarily over [Indian country]. Nor has Congress ever passed a law conferring jurisdiction on Oklahoma." 591 U.S. at 929, 932 (quoting *Crow Dog*, 109 U.S. at 572). That defeats Defendant's *Colorado River* abstention argument, *see* Br. at 20-22. As the Tenth Circuit explained in *Lawrence II*, the "exceptional circumstances" justifying *Colorado River* abstention "do not exist 'if the state court ha[s] no jurisdiction to decide th[e] claims.'" *Id.* at 908 n.17 (alterations in original) (quoting *Colo. River*, 424 U.S. at 809).

Even assuming, only *arguendo*, that *McGirt* did not decide the jurisdictional issue posed here, that issue would have to be decided *before* this Court considered *Colorado River* abstention. The Court in *Colorado River* only made the "extraordinary" decision to abstain in a water rights adjudication, 424 U.S. at 813, after it determined that Congress had expressly "consent[ed] to jurisdiction in the state courts concurrent with jurisdiction in the federal courts over controversies involving federal rights to the use of water," *id.* at 809 (discussing McCarran Amendment, 43 U.S.C. § 666); *see also San Carlos Apache*, 463 U.S. at 561-65 (McCarran Amendment removed limitations on state court jurisdiction over Indian water rights). Indeed, Congress's express consent to state court jurisdiction in the McCarran Amendment was "[t]he most important" factor that "counsel[ed] against concurrent federal proceedings." *Id.* 424 U.S. at 819. In contrast, while the Act of Aug. 15, 1953, ch. 505, Pub. L. No. 83-280, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-1326, 28 U.S.C. § 1360) ("P.L. 280"), expressly permits States to exercise jurisdiction over Indians in Indian country, Oklahoma has "never acquired jurisdiction over Indian country through [P.L. 280]." *Murphy v. Royal*, 875 F.3d 896, 937 (10th Cir. 2017), *aff'd sub nom. Sharp v. Murphy*, 591 U.S. 977 (2020) (per curiam). In short, *Colorado River* does

not permit the bootstrapping of a claim of state jurisdiction.  If the State lacks such jurisdiction, *Colorado River* abstention is unavailable.

Even assuming further, *arguendo*, that *Colorado River* abstention was not categorically inapplicable here, abstention is not warranted because there are no parallel state proceedings and there are no exceptional circumstances present in this case.  *See D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colo. River*, 424 U.S. at 818); *see also Fox v. Maulding*, 16 F.3d 1079, 1081-82 (10th Cir. 1994).  "Suits are parallel if *substantially the same parties* litigate *substantially the same issues* in different forums."  *Fox*, 16 F.3d at 1081 (emphasis added).  If suits are parallel, the court weighs "eight pertinent factors" to determine whether there are exceptional circumstances.  *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1121-22 (10th Cir. 2018) (citing *Fox*, 16 F.3d at 1082).[19]  Weighing of those factors must show "the 'clearest of justifications,'" to "justify the surrender of [federal court] jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).  Such a strong showing is necessary to overcome the "virtually unflagging obligation" of federal courts "to exercise the jurisdiction given them."  *Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681, 2017 WL 6397492, at *3 (N.D. Okla. Dec. 14, 2017) (Eagan, J.) (quoting *Fox*, 16 F.3d 1081).  Defendant fails to satisfy this burden.

Defendant's pending state prosecutions are not parallel proceedings to this lawsuit.  The crucial question in making the parallel proceedings determination is whether the state proceeding

---

[19] These are: "1. the possibility that one of the two courts has exercised jurisdiction over property[;] 2. the inconvenience from litigating in the federal forum[;] 3. the avoidance of piecemeal litigation[;] 4. the sequence in which the courts obtained jurisdiction[;] 5. the "vexatious or reactive nature" of either case[;] 6. the applicability of federal law[;] 7. the potential for the state-court action to provide an effective remedy for the federal plaintiff[; and] 8. the possibility of forum shopping."  *Id.* at 1122 (indentations removed).

would adequately resolve the claims between the parties. *See Fox*, 16 F.3d at 1081-82 (quoting *Moses H. Cone*, 460 U.S. at 28); *Wakaya*, 910 F.3d at 1122 (a court should weigh "the potential for the state-court action to provide an effective remedy for the federal plaintiff") (citing *Fox*, 16 F.3d at 1082). That is plainly not the case here as the United States and the Nations are not parties to the state court prosecution and are not and will not be bound by the state court's ruling in those action. *Lujan*, 504 U.S. at 569 (plurality opinion); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *see Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-cv-0681, 2017 WL 2347188, at *9 (N.D. Okla. May 30, 2017) (finding against abstention where "resolution of the state case might not dispose of" the parties' dispute because defendant was "not a party to the [state] suit.")). And the state court criminal defendants are absent from this suit.[20] For these reasons, the parties in this case and state court prosecutions are not "substantially similar."

To try to show substantial similarity of issues, Defendant states only that a criminal defendant is seeking mandamus relief from the OCCA, "arguing Plaintiff's general theme that the framework in *Castro-Huerta* is inapplicable in the nonmember context." Br. at 20. That is not enough, as a court applying *Colorado River* must ask both whether state court litigation is "an 'adequate vehicle for the complete and prompt resolution of the issue *between the parties*'" *and* whether "there would be nothing further for the federal court to do following conclusion of the [s]tate [c]ase." *Int'l Asset Mgmt., Inc. v. Holt*, 487 F. Supp. 2d 1274, 1283, 1284 (N.D. Okla. 2007) (quoting *Fox*, 16 F.3d at 1081-82) (emphasis added). That is not so here. If Joey Wiedel

---

[20] That defeats Defendant's assertion that "the parties in the Ongoing Prosecutions are necessarily the same here and in the State matters." Br. at 21.

successfully obtains a writ against the state criminal prosecution initiated by Defendant—in which Plaintiff cannot participate as a party—that would result only in the termination of the state case against Wiedel. However, Plaintiff seeks injunctive relief in federal court to prevent Defendant from asserting criminal jurisdiction over Indians in Indian country, in any cases now or in the future. *See* U.S. Compl. ¶¶ 1, 42-43, 44.a.-.b.; *cf. Holt*, 487 F. Supp. 2d at 1283 (finding similarity of issues in two cases, each seeking to compel the same party to arbitrate the same dispute).

As there are no parallel proceedings, the Court's inquiry should end. But even if the Court continued to analyze whether exceptional circumstances exist, none do. Defendant asserts exceptional circumstances based on the claimed presence of three factors: "the inconvenience of the federal forum," risk of "piecemeal litigation," and the state prosecutions having obtained jurisdiction before the federal suit. Br. at 21 (citing *Fox*, 16 F.3d at 1082).[21] None are satisfied.

There is no inconvenience in litigating this case where this Court sits in Tulsa, as the Defendant is prosecuting in McIntosh County. Defendant instead claims inconvenience because the Tenth Circuit is "in Colorado." *Id.* That presents little problem. Filings in that court are handled by electronic means. The only courtroom proceeding that the Tenth Circuit might conceivably hold in this case is oral argument. Defendant points to no case law providing that the location of appellate oral arguments is part of the *Colorado River* analysis. Defendant's argument that this suit will require "substantial briefing and expenditure of additional taxpayer dollars," Br. at 21-22, is neither here nor there, as this factor only concerns relative "physical or logistical inconvenience," *D.A. Osguthorpe*, 705 F.3d at 1234, not litigation costs. Ironically, Defendant is the major source of inconvenience in litigating the questions raised in this case, as she has chosen

---

[21] As Defendant acknowledges, Br. at 21, there is no property at issue here, *cf. D.A. Osguthorpe*, 705 F.3d at 1234.

to litigate jurisdictional questions in multiple concurrent state prosecutions, *see, e.g.*, Nations' Compl. ¶¶ 51-58.

Defendant offers an unsupported assertion that this case is "quintessential piecemeal litigation," Br. at 22, which should be rejected as inadequately briefed, *United States v. McBride*, 94 F.4th 1036, 1045 (10th Cir. 2024). And in fact, just the opposite is true. Defendant is engaging in piecemeal litigation in state court cases in which neither the United States nor the Nations may participate as parties and to which neither will be bound. This suit presents an opportunity to resolve the question of Oklahoma's jurisdiction in a single action that will bind the parties present here, which Defendant's state prosecutions of individuals cannot. A federal court ruling can bring order where Defendant is sowing chaos.

Third, Defendant's claim that the state courts obtained jurisdiction first is more bootstrapping. *See* Br. at 22. The state courts have no criminal jurisdiction over Indians in Indian country, *see supra* at 1, 19-20, and they cannot "obtain" what federal law denies to them simply by filing a case.

The Defendant omits other factors, *see supra* at 21 n.19; *cf.* Br. at 22, which weigh heavily against abstention. For starters, "the presence of federal-law issues *must always be a major consideration weighing against surrender.*" *Moses H. Cone*, 460 U.S. at 26 (emphasis added). There is no doubt that this lawsuit presents a question "of federal law in an area in which federal interests predominate." *Seneca-Cayuga*, 874 F.2d 709, 714 (10th Cir. 1989). State jurisdiction in Indian country is a distinctly federal issue. *See, e.g.*, *McGirt*, 591 U.S. at 928-29. And federal law provides the "rule of decision on the merits." *Moses H. Cone*, 460 U.S. at 23.

Additionally, no state prosecution can provide an adequate vehicle for resolution of the dispute here, as neither the United States nor the Nations will be bound by state court judgments,

*see supra* at 22, and the United States and the Nations cannot obtain *any* relief in the state court criminal prosecutions, *see supra* at 5-6.  Furthermore, the United States' and the Nations' reliance on the federal court to adjudicate this matter does not constitute improper forum shopping, as the federal court is the *only* forum capable of adjudicating these claims.  U.S. Compl. ¶¶ 7-19; Nations' Compl. ¶¶ 29-48; *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995) ("In federal question cases with exclusive jurisdiction in federal court … the risk of forum shopping [in the choice of law context] has no application, because the case can only be litigated in federal court.").  Were the United States or the Nations to bring such an action in state court, they would be acting in derogation of *McGirt* and the law of the Tenth Circuit.  *See supra* at 1.[22]

In sum, this court is bound by the Tenth Circuit's ruling that *Colorado River* abstention is inappropriate where a contemporaneous state court case lacks proper jurisdiction.  Even if this were not the case, Defendant has not satisfied the high burden *Colorado River* abstention demands.  In fact, the Tenth Circuit's additional considerations for whether abstention is warranted make clear that since federal law issues dominate and the state prosecutions cannot adequately resolve the parties' dispute, this court must not abstain.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

//

//

//

---

[22] Finally, there are strong indications that Defendant is bringing state prosecutions of a "vexatious or reactive nature" to evade the decision in *McGirt*.  Memo. In Supp. Of Mot. to Intervene at 8-9, ECF No. 25-1.

Dated: March 28, 2025                    Respectfully submitted,

                                  By:    */s/ Frank S. Holleman*
                                         Frank S. Holleman
                                         Douglas B. L. Endreson
                                         SONOSKY, CHAMBERS, SACHSE,
                                            ENDRESON & PERRY, LLP
                                         1425 K St. NW, Suite 600
                                         Washington, DC 20005
                                         Tel: 202-682-0240
                                         E-mail:  fholleman@sonosky.com
                                                  dendreso@sonosky.com

                                         *Counsel for the Cherokee Nation and Choctaw
                                            Nation of Oklahoma*

                                         Chad Harsha
                                         *Attorney General*
                                         CHEROKEE NATION
                                         OFFICE OF ATTORNEY GENERAL
                                         P.O. Box 1533
                                         Tahlequah, OK 74465
                                         Tel: 918-453-5369
                                         E-mail: chad-harsha@cherokee.org

                                         R. Trent Shores
                                         GABLEGOTWALS
                                         110 N. Elgin Avenue, Suite 200
                                         Tulsa, OK 74120
                                         Tel: 918-595-4800
                                         E-mail: tshores@gablelaw.com

                                         Stephen Greetham
                                         GREETHAM LAW, PLLC
                                         621 Greenwood Road
                                         Chapel Hill, NC 27514
                                         Tel: 580-399-6989
                                         E-mail: sgreetham@greethamlaw.net

                                         *Counsel for the Cherokee Nation*

Michael Burrage
WHITTEN BURRAGE
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Tel: 405-516-7800
E-mail: mburrage@whittenburragelaw.com

Brian Danker
*Senior Executive Officer*
DIVISION OF LEGAL & COMPLIANCE
CHOCTAW NATION OF OKLAHOMA
1802 Chukka Hina Drive
Durant, OK 74701
Tel: 580-642-7423
E-mail: bdanker@choctawnation.com

*Counsel for the Choctaw Nation of Oklahoma*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I electronically filed the above and foregoing document with the Clerk of Court via the ECF System for filing.

*/s/ Frank S. Holleman*
Frank S. Holleman