**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 24-CV-0493-CVE** |
| | ) | **(<u>BASE</u> <u>FILE</u>)** |
| **and** | ) | |
| | ) | **Consolidated with:** |
| **CHEROKEE NATION, and** | ) | **Case No. 25-CV-0028-CVE** |
| **CHOCTAW NATION OF OKLAHOMA,** | ) | |
| | ) | |
| **Intervenor Plaintiffs,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MUSCOGEE (CREEK) NATION,** | ) | |
| | ) | |
| **Consolidated Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CAROL ISKI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT</u>**

## <u>TABLE OF CONTENTS</u>

I. *Younger* mandates dismissal ........................................................................................ 2

    A.  The state courts provide an adequate forum to hear the claims raised in the
    Complaint ....................................................................................................................... 3

    B.  The state court prosecutions implicate important state interests. .................................. 7

    C.  No exception to *Younger* applies ............................................................................. 10

II.  The Court should abstain under *Colorado River* ..............................................................11

III.  Plaintiffs lack standing............................................................................................... 15

    A.  Plaintiffs have not shown an injury.......................................................................... 15

    B.  The United States cannot show an injury as trustee for federally recognized Tribes. 16

    C.  A favorable ruling would not provide redress ........................................................... 18

    CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. San Carlos Apache Tribe of Arizona*,
    463 U.S. 545 (1983) ................................................................ 6, 7, 12

*Arizona v. U.S.*,
    567 U.S. 387 (2012) .................................................................. 9

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993) .................................................................. 8

*Bronson v. Swensen*,
    500 F.3d 1099 (10th Cir. 2007) ..................................................... 18

*California v. Cabazon Band of Mission Indians*,
    480 U.S. 202 (1987) .................................................................. 9

*Citizens for a Strong Ohio v. Marsh*,
    123 F. App'x 630 (6th Cir. 2005) .................................................... 3

*City of Tulsa v. O'Brien*,
    2024 OK CR 31, 2024 WL 5001684 ................................................. 6, 13

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ............................................................... 12, 14

*Creek v. Kunzweiler, et al.*,
    No. 25-cv-75-GKF-JFJ (N.D. Okla. Feb. 14, 2025) ........................... 6, 8, 9, 11

*D.L. v. Unified Sch. Dist. No. 497*,
    392 F.3d 1223 (10th Cir. 2004) ..................................................... 3, 5

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) .................................................................. 3

*Fox v. Maulding*,
    16 F.3d 1079 (10th Cir. 1994) ....................................................... 12

*Glob. Impact Ministries v. Mecklenburg Cnty.*,
    2021 WL 982333 (W.D.N.C. Mar. 16, 2021) ......................................... 4, 5

*Hicks v. Miranda*,
    422 U.S. 332 (1975) .................................................................. 1, 3

*Mashantucket Pequot Tribe v. Town of Ledyard*,
    722 F.3d 457 (2d Cir. 2013) .......................................................... 8

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020) ................................................................................................ passim

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ............................................................................................... 2, 6, 8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ....................................................................................................... 14

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) ................................................................................................ passim

*Prairie Band of Potawatomi Indians v. Pierce*,
  253 F.3d 1234 (10th Cir. 2021) .................................................................................. 17

*Pueblo of Pojoaque v. Biedscheid*,
  689 F. Supp. 3d 1033 (D.N.M. 2023), *appeal dismissed*, *Pueblo of Pojoaque v. Biedscheid*, 23-2149, 2024 WL 4256791 (10th Cir. May 13, 2024) ................................. 12

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008) .................................................................................................... 16

*Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*,
  874 F.2d 709 (10th Cir. 1989) ........................................................................... 9, 10, 17

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ...................................................................................................... 3

*Spargo v. N.Y. State Comm'n on Judicial Conduct*,
  351 F.3d 65 (2d Cir. 2003) ........................................................................................... 3

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..................................................................................................... 15

*State v. Bull*,
  No. CF-2023-226 (Rogers Co. Dist. Ct., filed June 29, 2023) ................................. 16

*Steel Co. v. Citizens For A Better Environment*,
  523 U.S. 833 (1998) ...................................................................................................... 3

*Stitt v. City of Tulsa*,
  2025 OK CR 5 ........................................................................................................... 6, 7

*Tony Alamo Christian Ministries v. Selig*,
  664 F.3d 1245 (8th Cir. 2012) .............................................................................. 4, 5, 6, 7

*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*,
  98 F.4th 1307 (10th Cir. 2024) ..................................................................................... 2

*U.S. v. Bull*,
    No. 4:23-cr-00283 (N.D. Okla., filed Aug. 11, 2023) ............................................. 16

*United States, et al. v. Ballard*,
    24-cv-0206-CVE-SH, N.D. of Okll. ...................................................................... 15

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
    790 F.3d 1000 (10th Cir. 2015) ................................................................. 9, 16, 17

*White Mountain Apache Tribe v. Bracker*,
    448 U.S. 136 (1980) ..................................................................................... 9

*Williams v. Lee*,
    358 U.S. 217 (1959) .................................................................................... 17

*Winn v. Cook*,
    945 F.3d 1253 (10th Cir. 2019) ................................................................. 2, 11

*Wolfe v. Ingram*,
    275 F.3d 1253 (10th Cir. 2002) ..................................................................... 6

*Younger v. Harris*,
    401 U.S. 37 (1971) .......................................................................... passim

"The rule in *Younger v. Harris* is designed 'to permit state courts to try state cases free from interference by federal courts[.]' . . . Plainly, the same comity considerations apply where the interference is sought by some . . . not parties to the state case." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). Aware of their Achilles' heel, the United States of America ("United States") (ECF No. 60) and intervenors Cherokee Nation and Choctaw Nation of Oklahoma ("Nations") (ECF No. 59) (collectively, "Plaintiffs") deployed their response briefs as a distraction from the devastating fact that the injunction they seek would improperly disrupt numerous ongoing State criminal proceedings at the trial and appellate levels. Indeed, a review of the responses in a vacuum would leave one with the mistaken impression that either there are no ongoing criminal proceedings – or, even if there are, it doesn't matter. Neither is true. To be sure, Defendant's Motion to Dismiss is hardly a "thinly veiled attempt to avoid federal review of, and the application of federal law to, her plainly unlawful prosecutions in Indian country." ECF No. 60 at 1. Quite the opposite. Defendant has invited complete review of her arguments, as well as those of Plaintiffs. Indeed, the Oklahoma Court of Criminal Appeals ("OCCA") and State trial courts, applying the correct legal framework set out in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), have affirmed the prosecutions as lawful. It is worth restating that this lawsuit was initiated only *after* Plaintiffs' same arguments failed before State courts. Had those State courts ruled in Plaintiffs' favor, Plaintiffs undoubtedly would have defended not only the courts' decisions but also their ability to resolve the issues Plaintiffs improperly raise here. Further, Plaintiffs, each of whom have raised the exact issues and arguments as they and criminal defendants have lodged with State courts, are far too intertwined with the Indian defendants to avoid abstention on the basis that they are not parties to the underlying criminal proceedings that serve as the foundation of this litigation.

I.    *Younger* **mandates dismissal.**

That abstention is generally the exception that proves the rule is insignificant here because abstention *is mandatory* (*i.e.*, non-discretionary) when: "(1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (cleaned up); *see also Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("When *Younger*'s three requirements are met, abstention is mandatory.").

Plaintiffs reluctantly acknowledge that there are ongoing state criminal proceedings, thereby conceding the first element of mandatory abstention. ECF No. 60 at 3.[1] Plaintiffs baldly assert that the second element is not met simply because Plaintiffs are not parties to those proceedings. But that's not the law. The second abstention element does not require that a particular person or entity be a party but, rather, that the ongoing state judicial proceeding affords an adequate opportunity to hear the claims raised in the federal complaint. Plaintiffs conclude their arguments in opposition to abstention by proclaiming that violations of Oklahoma law do not implicate important state interests. Respectfully, that's absurd. If state prosecution of individuals accused of violating state law within a state's borders do not implicate important state interests, nothing does. Simply put, neither the law nor logic supports Plaintiffs' position.

---

[1] The Nations strangely argue that Defendant failed to properly apply the *Middlesex* factors, but all Plaintiffs agree that the proceedings at issue – the ones that the United States and the Nation argue Defendant should be enjoined from prosecuting – are state criminal proceedings that clearly fit within the "exceptional" categories of actions subject to *Younger*. *See* ECF No. 59 at 2-4.

Importantly, a federal court need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). *Younger* abstention is "jurisdictional." *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 100 n.3 (1998).

### A. The state courts provide an adequate forum to hear the claims raised in the Complaint.

In their effort to persuade the Court to retain jurisdiction over their claims and block the pending state criminal prosecutions, Plaintiffs raise a singular point: they are not parties themselves to those ongoing state proceedings (ECF No. 60 at 13-15; ECF No. 59 at 5-8). But – as the very basis of this lawsuit makes clear – nor are they "genuine strangers" as they would have this Court believe. The application of *Younger* abstention does not require that Plaintiffs themselves be actual parties to the prosecutions but, rather, that the ongoing state judicial proceedings afford an adequate opportunity to hear the claims raised in the federal complaint. That is most certainly the case here.

Federal courts routinely apply *Younger* abstention to non-parties when their interests are closely tied to those of individuals involved in ongoing state proceedings. As the Supreme Court stated in *Doran v. Salem Inn, Inc.*, *Younger* considerations may extend to "legally distinct parties" where their interests are "so closely related" that interference with one would disrupt the others. 422 U.S. 922, 928 (1975). Likewise, in *Hicks v. Miranda*, the Court confirmed that abstention is proper where interests are "intertwined" and where the federal action seeks to disrupt a state prosecution. 422 U.S. at 348-49. These comity principles apply even when the federal plaintiff is not a party to the state proceeding but asserts rights derived from those who are. *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1231 (10th Cir. 2004); *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 83-84 (2d Cir. 2003); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 635-36 (6th Cir. 2005).

The analysis and decision in *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012), are enlightening. There, the Arkansas Department of Human Services took custody of numerous children living on the property of a religious organization ("TACM") following findings of abuse. Although TACM itself was not a party to the state dependency and parental rights proceedings, it filed a federal lawsuit alleging violations of its and its members' constitutional rights. TACM argued that it had no way to participate in state court and no access to federal court if *Younger* applied—claiming it was in a "no man's land." *Id.* at 1251. The appellate court rejected that argument, emphasizing that *Younger* abstention applied because TACM's injuries were "sufficiently related to, or inextricably intertwined with," those of its members, who were parties to the state cases. *Id.* at 1253 (holding that relief based on the injuries of individual members were "plainly barred by Younger"). As to TACM's claim of independent injury, the court found those injuries were "generally aligned with those of its members" and, therefore, "in one degree or another, derivative of the injuries of its members." *Id.* Accordingly, the court held that *Younger* barred the federal action, even though TACM could not become a party to the state court proceedings and had asserted facial constitutional claims.

Similar to the present case, in *Glob. Impact Ministries v. Mecklenburg Cnty.*, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021), several organizations filed an action against a city and county in North Carolina seeking, among other things, an injunction against the enforcement of a local ordinance banning certain protest gatherings as unconstitutional after several of its members had been cited and arrested pursuant to it. According to the court, these "ongoing state criminal proceedings relating to the arrests or citations of" members of the organization plainly implicated *Younger*. *Id.* at *3. The organizations "share a close relationship and alignment with the" individual members and the state court proceedings. *Id.* at *4. And those "proceedings implicate important

state interests and provide an adequate opportunity for the parties in the state proceeding to raise constitutional challenges." *Id*. at *3.

Here, Plaintiffs' position is analogous to those of the organizations in *TACM* and *Glob. Impact Ministries*. By their own admission, Plaintiffs share a close relationship and alignment with the criminal defendants (as trustee and as sovereign). The United States claims it has suffered its own injuries – framed as an impact on its ability to exercise its own prosecutorial authority in Indian country (ECF No. 60 at 5-6; *cf*. ECF No. 59 at 12-14), but such injury (which is simply manufactured without any basis, as it has cited no instance of the State interfering with the federal government's ability to prosecute non-member Indians for conduct occurring in Indian country), even if it exists, would arise only from the ongoing prosecutions of individual Indian criminal defendants. This claim, in other words, relies entirely on the asserted rights and circumstances of those defendants. Without the ongoing state prosecutions, Plaintiffs would have no basis for this action. Like those organizations, Plaintiffs are not parties in state court, but their claims are so intertwined with those of the defendants that any relief here would directly interfere with the pending state proceedings. And contrary to the suggestion otherwise, the Tenth Circuit, in *D.L.*, 392 F.3d 1223, nowhere said that "[t]he critical inquiry is whether the federal plaintiff can pursue its claim in the state court proceedings, either because it is a party to the state court litigation, or because it is in privity with a party in the state court proceeding." ECF No. 60 at 13–15. The critical inquiry is whether a non-party's identity and claims are closely intertwined with a party to the state proceeding. *D.L.*, 392 F.3d at 1231. Here, the arguments and requested relief are more than closely intertwined; they are indistinguishable.

Plaintiffs further argue that *Younger* cannot apply because this suit implicates multiple, as opposed to just one, ongoing prosecutions and appeals. However, the number of impacted state

proceedings amplifies, rather than minimizes, the concern. As courts have consistently held, *Younger* abstention is not defeated by the scope of potential interference. *See Wolfe v. Ingram*, 275 F.3d 1253, 1271-72 (10th Cir. 2002) (explaining that *Younger* applies when the relief would interfere with state court functions, even indirectly). To be sure, "[m]inimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 431 (emphasis in original).

Plaintiffs also contend that the possibility (or even reality) of inconsistent state court decisions warrant federal intervention. But such concerns are present in any judicial system. Indeed, multiple federal judges are currently tasked with resolving the issue in this case. *See Creek v. Kunzweiler, et al.*, No. 25-cv-75-GKF-JFJ (N.D. Okla. Feb. 14, 2025). On April 23, 2025, the court in *Kunzweiler* entered an order denying the Muskogee (Creek) Nation's request for a temporary restraining order. The court found that "the Nation[, which has advanced the same arguments as those presented here,] has not yet identified certain, great, actual, and non-theoretical harm[,]" and the State's interest in protecting its residents, enforcing its laws, and upholding justice within its territorial boundaries, including "with respect to non-member Indians." *Id*. Opinion and Order (N.D. Okla. April 23, 2025). Of course, considering Plaintiffs' purported desire for uniformity, it stands to reason they would request consistent rulings in this litigation.

In any event, as with the federal appellate process, Oklahoma's appellate process exists precisely to resolve such inconsistencies—and, as in *TACM*, criminal defendants here may seek review all the way to the U.S. Supreme Court. Some already have sought review by the OCCA, and *O'Brien* and *Stitt* are ripe for appeals to the U.S. Supreme Court. The fact that Plaintiffs disagree with the outcomes in those matters does not justify federal intervention, at least not at this point. *See Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 570 (1983) (concluding,

for a variety of reasons, that the district courts were correct in deferring to the state proceedings but leaving open on remand whether the proper course of action is a stay of the federal suit or dismissal without prejudice). Of course, should there be "a significant change of circumstances," perhaps then Plaintiffs may properly resort to the federal forum. *Id*. at 570 n.21.

Finally, Plaintiffs' own conduct undercuts its position. In extensive amicus briefing before the OCCA, Plaintiffs raised all the arguments presented here without ever suggesting that the state courts were incapable of deciding the issues. *See, e.g., Stitt v. City of Tulsa*, Brief of Amici Cherokee Nation, Chickasaw Nation, and Choctaw Nation of Oklahoma in Support of Appellant, No. M-2022-984 (Okla. Ct. Crim. App. May 31, 2023); *see also Id*., Brief of Amicus Curiae United States of America, M-2022-984 (Okla. Ct. Crim. App. April 2, 2024). Those courts ruled, and Plaintiff now turns to federal court in hopes of a different result. Litigation initiated for the express purpose of undermining—much less interfering with—ongoing state proceedings is the exact type of interference *Younger* forbids. *See Younger*, 401 U.S. at 44.

In sum, the ongoing state proceedings provide an adequate forum to address the claims raised in the Complaint. As in *TACM*, "but for" the ongoing prosecution of individual Indians, Plaintiffs' claims do not exist apart from the rights and circumstances of parties in state court.

**B.  The state court prosecutions implicate important state interests.**

Remarkably, Plaintiffs contend that no important state interests are implicated in the prosecution of criminal conduct that occurs within Oklahoma's territory and against its citizens and laws (ECF No. 60 at 15-17; ECF No. 59 at 8-10). As the Court is no doubt aware, the Supreme Court has rejected this view. *See Castro-Huerta*, 597 U.S. at 651 (affirming that Oklahoma has a "strong sovereign interest in ensuring public safety and criminal justice within its territory," which includes Indian country). But Plaintiffs' contention does more than shrug off controlling Supreme

Court precedent. It also exposes Plaintiffs' low opinion of a State's right to ensure public safety and criminal justice. Taken to its end, Plaintiffs' theory would permit a non-member Indian to commit a crime against an Oklahoma public official in Tulsa, Oklahoma—without somehow implicating the State's interests. That doesn't add up.

The key question under *Younger* is whether "the *proceedings* implicate important state interests." *Middlesex Cnty. Ethics Committee*, 457 U.S. at 432 (emphasis added). Here then we must ask whether the ongoing state prosecutions of non-member Indians accused of violating Oklahoma's criminal laws within its borders—and in some cases, against its citizens—implicate important state interests. Plaintiffs misapply authority to conclude "[t]hat the states have no interest in enforcing state law against [any] Indians in Indian country[.]" ECF No. 60 at 17; *cf* ECF No. 59 at 8-10 (arguing the important state interest affirmed in *Castro-Huerta* somehow defies *McGirt*). Clear law and basic logic belie Plaintiffs' analysis.

There is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Id.* Indeed, in our federal system, "[t]he States possess primary authority for defining and enforcing the criminal law." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). Each state has a "sovereign interest in being in control of, and able to apply, its laws throughout its territory." *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 476 (2d Cir. 2013). Simply put, States have "a strong sovereign interest" in "protecting *all* crime victims," and punishing *all* criminal offenders within their borders. *Castro-Huerta*, 597 U.S. at 651 (emphasis added); *see also Creek v. Kunzweiler, et al.*, Opinion and Order, No. 25-CV-75-GKF-JFJ (N.D. Okla. April 23, 2025) (finding the State has an "interest[] in enforcing laws with respect to non-member

8

Indians[]"). Of course, it would be a logical impossibility to have an interest in protecting crime victims while lacking the power to prosecute offenders.

Second, despite the United States' sweeping interpretation, there is no "*per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 214-15 (1987). In essence, Plaintiffs seek to bypass *Bracker's* required "inquiry into the nature of the state, federal, and tribal interests at stake," by categorically depending on an impermissible (and incorrect) "mechanical or absolute" conception of tribal sovereignty with a string of inapplicable cases. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980). Considering the reaffirmation of the validity of State prosecutions in *Castro-Huerta*, the "general[] lack" of authority rule set forth in *Ute* cannot be deployed as a justification for categorical exclusivity. *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1006 (10th Cir. 2015); *see also Arizona v. U.S.*, 567 U.S. 387, 400 (2012) ("[C]ourts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'"). Especially in cases like this one which, unlike *Ute*, do not involve member Indians on member land. *Ute Indian Tribe*, 790 F.3d at 1006*; see also Creek v. Kunzweiler, et al.*, Opinion and Order, No. 4:25-cv-00075-GKF-JFJ (N.D. Okla. April 23, 2025) (where the court distinguished a case like this from *Ute*, where "a Utah county prosecuted a Ute tribal member for alleged traffic offenses on tribal lands.").

Third, even if the rest of the included "body of case law" provides strong support for federal primacy in matters involving the civil and economic affairs of the tribes, it is at most that—and nothing more. *See* ECF No. 60 at 17 (concluding "the Framers withdrew *interstate commerce*" from the states) (emphasis added). That the United States elected to include a string of cases quoting *Seneca-Cayuga* is rather surprising, especially considering that that opinion made clear

that state interests are of great weight in "a case involving . . . non-reservation Indians[.]" *Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989). Moreover, that court repeatedly acknowledged that its fact pattern—which involved state regulation of Indian gaming operations—was different from "traditional area[s] of state concern" such as "state criminal proceedings" where abstention is mandated. *Id*. A decision to preempt state criminal jurisdiction on the basis of little more than language from several civil, interstate commerce cases, would not only be at odds with the Constitution and precedent, it would also lead to absurd results.[2]

Again, a simple hypothetical applying Plaintiffs' logic illuminates its absurdity. Suppose a member of the Navajo Nation (*i.e.*, a non-Oklahoma tribe) assaults an Oklahoma public official (*e.g.*, the Governor or Attorney General) in Tulsa, Oklahoma. In Plaintiffs' world, such an incident would not implicate any "legitimate" or important state interests, and Oklahoma would be unable to prosecute the Navajo Nation member or protect its own officials. Surely not.

**C. No exception to *Younger* applies.**

Plaintiffs assert that, even if the *Younger* elements are met (they are), the ongoing prosecutions are an extraordinary circumstance that create a threat of irreparable injury both great and immediate to Plaintiff. ECF No. 60 at 18; ECF No. 59 at 11-12. Framed in context, the United States urges the Court to conclude that the ongoing prosecutions of non-member Indians somehow poses a "threat to [Plaintiff's] federally protected rights . . . that cannot be eliminated by [the] defense against a single criminal prosecution." ECF No. 60 at 18 (citing *Winn v. Cook*, 945 F.3d at

---

[2] Notably, arguing in favor of the State in *McGirt*, the United States said, "[McGirt] ignores statues of limitations, stale evidence, impacts on victims, and the increased burden on federal courts and prosecutors." Brief for the United States as Amicus Curiae Supporting [Oklahoma], p. 19, *McGirt v. Oklahoma*, No. 18-9526 (S. Ct. Mar. 20, 2020).

1258-59). That's quite an extrapolation, especially considering that the court in a parallel federal proceeding just determined that the plaintiff there had "not yet identified certain, great, actual, and non-theoretical harm." *Creek v. Kunzweiler, et al.*, Opinion and Order at 4, No. 25-CV-75-GKF-JFJ (N.D. Okla. April 23, 2025).

The United States' position is also internally inconsistent and contradictory. While on the one hand arguing that it is not a party to the state criminal prosecutions for *Younger* to apply, the United States at the same time argues that its "federally protected rights" will be irreparably harmed if those prosecutions continue. But how – when it is not a party "in the first place"? The United States presumably shares the same interest as the State in prosecuting crimes. And the exercise of concurrent jurisdiction by the State does not invade – and arguably enhances – the prosecutorial authority of the United States. The intent of the irreparable injury exception is to protect a criminal defendant's rights when those rights cannot be protected in an ongoing prosecution that *directly* impacts that individual. However, the exception does not apply to a federal plaintiff whose *Younger*-barred claim is intertwined with or derivative, directly or indirectly, of the state defendant. The United States' attempt to expand the exception to avoid *Younger* abstention (to say nothing of the potential alteration of various state criminal proceedings that have been endorsed by the OCCA's application of *Castro-Huerta*) must fail.

Make no mistake: each criminal defendant's rights are capable of being fully protected in the ongoing state proceedings. Such is the case not only in the context of the prosecutions central to the United States' Complaint, but also in cases such as *McGirt* and *Castro-Huerta*.

## II.    The Court should abstain under *Colorado River*.

The heart of *Colorado River* abstention embodies a policy of "wise judicial administration," promoting the "conservation of judicial resources and comprehensive disposition

of litigation." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). And, as emphasized in *Arizona v. San Carlos Apache Tribe of Arizona*, even where permissible, federal adjudication is "neither practical nor wise" if it risks "duplicative litigation," generates "tension and controversy between the federal and state forums," or fosters "confusion" over underlying rights. 463 U.S. at 568.

To avoid abstention under *Colorado River*, Plaintiffs must contort the law and its application. Despite their explicit dependence on ongoing State criminal prosecutions, Plaintiffs contend there are no parallel state proceedings. Toward that end, Plaintiffs incorrectly argue that (1) parties to the state and federal proceedings must be *exactly* the same; (2) the issues in the state and federal proceeding are not substantially the same; (3) this Court would "not be left with 'nothing further to do[,]' ECF No. 60 at. 21, if the State courts were to find they lack jurisdiction over the conduct at issue; and (4) the State's authority to prosecute crimes committed within its borders does not implicate state law issues (ECF No. 60 at 20-24; ECF No. 59 at 19-25).

First, the parties do not have to be the same. By emphasizing the words "same parties," ECF No. 60 at 20, Plaintiffs highlight their confusion. "Suits are parallel if *substantially* the same parties litigate *substantially* the same issues in different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (emphasis added). The word "substantially" immediately preceding "the same parties" has meaning. "[E]xact identity of parties and issues is not required." *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033 (D.N.M. 2023), *appeal dismissed*, *Pueblo of Pojoaque v. Biedscheid*, 23-2149, 2024 WL 4256791 (10th Cir. May 13, 2024) (examining *Fox v. Maulding*). Interestingly, after having suggested that the parties must, in fact, be the same, Plaintiffs concede that privity would suffice. ECF No. 70 at 21. Of course, "substantially the same

12

parties" is nowhere limited to just sameness or privity. As argued above, Plaintiffs' claims are intertwined with and derivative of the criminal defendants and their defenses. *See supra* Part I.A.

Second, although the issues must only be *substantially* the same, the issues in the State prosecutions and this lawsuit are *precisely* the same. Plaintiffs concede as much. While unpersuasively arguing that this lawsuit does not create piecemeal litigation, the United States unequivocally says, "The question of federal law at issue here has been presented in cases brought by Defendant herself in various trial courts." ECF No. 60 at 24. As if that weren't enough, Plaintiffs, though shy about having done so, filed amicus briefs containing the exact same arguments and requested relief as their Complaints. The assertion that this lawsuit stems from Plaintiffs' need to protect its own prosecutorial authority, as well as tribal sovereignty, is a red herring, ECF No. 60 at 21, because the *issue* presented—in both the ongoing State prosecution cases and this proceeding—is this: whether the State's jurisdiction over all of its territory includes jurisdiction to prosecute non-member Indians who commit non-major crimes in Indian country.

Third, contrary to Plaintiffs' argument, the Court would, in fact, be left with nothing to do if the State courts were to determine that Defendant lacks the authority to prosecute non-member Indians for non-major crimes committed in Indian country. While Plaintiffs may have unique reasons for their request that Defendant be enjoined from continuing with the ongoing prosecutions, the requested relief is the same. Indeed, a determination by the State courts that Defendant lacks prosecutorial authority would effectively moot this lawsuit. To be sure, Plaintiffs' purported concern about whether this Court will "be bound by a state court judgment," ECF No. 60 at 21-22, is misplaced. Defendant would be bound.[3]

---

[3] Also, the United States' summary of the OCCA's analysis in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684 is misleading, at best. "OCCA's balancing of federal, tribal, and state

Fourth, Plaintiffs' analysis regarding the existence of federal law is incomplete. ECF No. 60 at 22-23. For instance, the opening line of Section III.B. of the United States' Response strips material language from the sentence quoted, namely: that "the presence of state-law issues may weigh in favor of [the federal court's] surrender[]" under *Colorado River*. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). It is indisputable that the State's ability to enforce its criminal code against non-member Indians who commit crimes in Oklahoma implicates state-law issues, no less than it invokes state-law interests. *See supra* Part I.B.

In the end, the exact issue presented to this Court—whether Defendant has authority to prosecute non-member Indians who commit non-major crimes in Indian country—is before State courts and has even been decided by State trial and appellate courts. Plaintiffs are simply dissatisfied with the outcome. But even if their desired outcome has proven evasive thus far, their interests are still protected. And the United States' closing contention that "Defendant seeks to foreclose the only case that could resolve these criminal jurisdiction issues by binding the United States, Defendant, and the relevant tribes" simply isn't true. Unless, of course, Plaintiffs also submit that they are not bound by *McGirt* or *Castro-Huerta*—cases which took the same path as the state prosecutions at issue.

Even if the Court were to find *Younger* does not apply (it does), *Colorado River* does. Wise judicial economy supports abstention.

---

interests in *O'Brien* was" not limited to "the City of Tulsa's prosecution of non-member Indians for misdemeanor traffic crimes." Resp. n.6. The OCCA explicitly analyzed the State's jurisdiction over non-member Indians accused of crimes under the General Crimes Act. *Id.* at ¶¶ 13–35.

III.    **Plaintiffs lack standing.**[4]

   A. **Plaintiffs have not shown an injury.**

As support for the contention that it can establish an injury, the United States does little more than: (1) claim an interest in prosecuting, ECF No. 70 at 4-5; (2) share unjustified fears, *id.* at 5; (3) assert its newfound belief that "Oklahoma has never validly exercised criminal jurisdiction over Indians in Indian country," *id.* at 5-6; and (4) ironically claim that its "ability to exercise its prosecutorial authority in Indian country" has been impacted, just before citing evidence to defeat that argument, *id.* at 6.

Defendant concedes that the United States is "a prosecuting sovereign in Indian country." *Id.* at 4. Defendant also concedes that the United States likely has an interest in the allocation of criminal jurisdiction in Indian country. *Id*. While authority and interest are relevant to the United States' participation as *amicus curiae* in the ongoing State judicial proceedings, neither demonstrates "an *invasion* of a legally protected interest that is concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up) (emphasis added).

In its companion case filed in the Northern District, the United States' discussion of its "filing of criminal charges against Brayden Bull"—an individual that District Attorney Matt Ballard is prosecuting for the possession, distribution, and manufacturing of child pornography— defeats the United States' claim that "Defendant's actions have impacted the United States' ability to exercise its prosecutorial authority in Indian country." *United States, et al. v. Ballard*, United States' Response in Opposition to Defendant's Motion to Dismiss at 7 (N.D. Okla. March 28, 2025). This, along with the United States' statement that Defendant's prosecutions "may prevent

---

[4] Defendant fully adopts and incorporates her arguments challenging the Nations' standing in Defendant's Response to Motion of the Cherokee Nation and Choctaw Nation of Oklahoma to Intervene as Plaintiffs. ECF No. 47 at 6-10.

the United States from prosecuting criminals over whom it (and not the State) has jurisdiction[,]" are not just irrational, they're untrue. *Id.* at 6. For instance, the United States filed charges by information (rather than by grand jury indictment, as is the norm) against Brayden Bull *because* the State had filed charges. *See U.S. v. Bull*, No. 4:23-cr-00283 (N.D. Okla., filed Aug. 11, 2023); *State v. Bull*, No. CF-2023-226 (Rogers Co. Dist. Ct., filed June 29, 2023). Finally, the United States' assertion that "Oklahoma has never validly exercised criminal jurisdiction over Indians in Indian country" is belied by prior arguments. ECF No. 60 at 5-6; *cf.* Br. for the U.S. as *Amicus Curiae* Supporting [Oklahoma] at 19, *McGirt v. Oklahoma*, No. 18-9526 (U.S. S. Ct., filed March 20, 2020) (where the United States argued, for example, "the Enabling Act ensured that after statehood, as before, members of the Five Tribes were subject to the same laws and court jurisdiction as non-Indians.").

Moreover, the United States' reliance on *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008) to support a concern about other states being "emboldened to assert criminal jurisdiction" is misplaced. ECF No. 70 at 5. *Rowe* involved issues of interstate commerce; hence, discussion about the actions of one state impacting others was relevant. Defendant's prosecution of individuals accused of violating Oklahoma law could hardly impact other states.

**B. The United States cannot show an injury as trustee for federally recognized Tribes.**

While the United States thoroughly articulates how it adequately represents the intervening Nations (*e.g.*, "Here, [Plaintiff's standing] is grounded in the United States' own interest in protecting the sovereign rights of tribes to exercise criminal jurisdiction over Indians on their reservations."), ECF No. 60 at 7-8 n.2, the United States' contention that it can show "an injury as trustee for federally recognized Indian tribes[]" fails. Its arguments are largely dependent on misplaced authority. *See Ute Indian Tribe*, 790 F.3d at 1007; *Seneca-Cayuga Tribe*, 874 F.2d at

16

716; *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2021); and *Williams v. Lee*, 358 U.S. 217, 223 (1959). Far from "controlling case law[,]" ECF No. 60 at 9, *Ute Indian Tribe*, *Pierce*, and *Lee* involved issues about *member* Indians (critically, not at issue here), not non-member Indians (at issue here). And *Seneca-Cayuga*, which concerned state court actions *against the tribes*, contrasted its facts with authority involving "non-reservation Indians[,]" for the point that in the latter case "state interests are . . . of great weight[.]" 874 F.2d at 713.

The United States' concerns about being relegated to participation as *amicus curiae* is yet another red herring. The United States again misplaces reliance on *Ute Indian Tribe* and *Pierce*, albeit in this context for the claim that "the tribes were not limited to participating as amicus in the state criminal proceedings[.]" ECF No. 60 at 9-10. First, nothing in those opinions indicates those tribes had participated as amicus, whereas the United States concedes it has done so; the United States was simply unhappy with the outcomes. And of course, "previous participation as amicus in state criminal proceedings" does not "give[] it standing to bring this case." ECF No. 60 at 10. Defendant will not belabor the obvious point that the elements of standing do not have to be established to qualify as amicus.

Second, participation as amicus would not "leave the United States without a vehicle to seek relief, and allow Defendant to avoid it." ECF No. 60 at 11. The United States seeks the exact relief that certain criminal defendants referenced in the Complaint [ECF No. 2] have sought—a determination that the State lacks jurisdiction to prosecute non-member Indians who commit crimes in Indian country. The United States simply prefers to end run the relief provided. Again, *McGirt* and *Castro-Huerta*—cases in which the United States participated as amicus—are proof that relief does not evade the United States through State court prosecutions.

**C. A favorable ruling would not provide redress.**

The United States opens its argument about redressability with select quotes intended to persuade the Court that an injury really does not have to be redressed. ECF No. 60 at 11. However, the authority doesn't say that. For instance, in *Larson v. Valente*, the Supreme Court emphasized that a discrete injury would "indeed be *completely* redressed by a favorable decision[,]" thus establishing redressability (emphasis added). 456 U.S. 228, 243 (1982). *See also Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007) (where redressability was not established because, in part, "a declaratory judgment [would not] avoid the future possibility (albeit remote) of a criminal prosecution."). The United States' purported injury would not be completely redressed, or really redressed at all, if relief were granted. State court judges (which are likely necessary parties) could continue issuing decisions. Other State officials such as the Governor could continue to prosecute cases, just as the Governor has in *Oklahoma v. Bull*, No. CF-2023-226 (Dist. Ct. Rogers Cnty.).

## CONCLUSION

For all these reasons, Defendant's Motion to Dismiss should be granted.

18

Date: April 25, 2025

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP, PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*s/Phillip G. Whaley*
Phillip G. Whaley

19