IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>and )<br>)<br>CHEROKEE NATION, and )<br>CHOCTAW NATION OF OKLAHOMA, )<br>)<br>Intervenor Plaintiffs, )<br>)<br>and )<br>)<br>MUSCOGEE (CREEK) NATION, )<br>)<br>Consolidated Plaintiff, )<br>)<br>v. )<br>)<br>CAROL ISKI, )<br>)<br>Defendant. ) | Case No. 24-CV-0493-CVE<br>(<u>BASE</u> <u>FILE</u>)<br><br>Consolidated with:<br>Case No. 25-CV-0028-CVE |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS MUSCOGEE
(CREEK) NATION'S COMPLAINT AND BRIEF IN SUPPORT**

"The rule in *Younger v. Harris* is designed 'to permit state courts to try state cases free from interference by federal courts[.]' . . . Plainly, the same comity considerations apply where the interference is sought by some . . . not parties to the state case." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). Aware of its Achilles' heel, the Muscogee (Creek) Nation ("Nation")—like the United States of America and the Cherokee Nation, Chickasaw Nation, and Choctaw Nation of Oklahoma did in related cases—deploys its response brief as a distraction from the devastating fact that the injunction it seeks would improperly disrupt numerous ongoing State criminal proceedings at the trial and appellate levels.

1

It is worth restating that this lawsuit was initiated only *after* the Nation's same arguments failed before State courts. Had those State courts ruled in the Nation's favor, it undoubtedly would have defended not only the courts' decisions but also their ability to resolve the issues the Nation improperly raises here. Further, the Nation, who has raised the exact issues and arguments as it and criminal defendants have lodged with State courts, is far too intertwined with the Indian defendants to avoid abstention on the basis that the Nation is not party to the underlying criminal proceedings that serve as the foundation of this litigation.

I.     *Younger* **mandates dismissal.**

That abstention is generally the exception that proves the rule is insignificant here because abstention *is mandatory* (*i.e.*, non-discretionary) when: "(1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (cleaned up); *see also Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("When *Younger*'s three requirements are met, abstention is mandatory.").

The Nation does not dispute the first element of mandatory abstention. Doc. 66, at 9. The Nation baldly asserts that the second element is not met simply because the Nation is not a party to those proceedings, nor is it in privity. But the standard is whether the state forum provides an adequate opportunity to raise the federal claims—not whether the plaintiff is a named party or even in direct privity. Finally, the Nation contends, with immaterial nuance, that prosecutions for violations of Oklahoma law do not implicate important state interests. Respectfully, that's

untenable. If enforcing state criminal law within state borders isn't an important state interest, nothing is. Neither law nor logic supports the Nation's position.

Importantly, a federal court need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). *Younger* abstention is "jurisdictional." *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 100 n.3 (1998).

**A. The state courts provide an adequate forum to hear the claims raised in the Complaint.**

In urging this Court to retain jurisdiction and block theoretical state criminal prosecutions, the Nation argues it is not—and cannot become—a party to such proceedings. Doc. 66, at 10-11. But—as the very basis of this lawsuit makes clear—nor is it a "genuine stranger" as the Nation would have this Court believe. *Younger* abstention does not require it to be a party, only that the state forum provides an adequate opportunity to raise the federal claims. That is most certainly the case here.

Federal courts routinely apply *Younger* abstention to non-parties when their interests are closely tied to those of individuals involved in ongoing state proceedings. As the Supreme Court stated in *Doran v. Salem Inn, Inc.*, *Younger* considerations may extend to "legally distinct parties" where their interests are "so closely related" that interference with one would disrupt the others. 422 U.S. 922, 928 (1975). Likewise, in *Hicks v. Miranda*, the Court confirmed that abstention is proper where interests are "intertwined" and where the federal action seeks to disrupt a state prosecution. 422 U.S. at 348–49. These comity principles apply even when the federal plaintiff is not a party to the state proceeding but asserts rights derived from those who are. *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1231 (10th Cir. 2004); *Spargo v. N.Y. State Comm'n on Judicial*

3

*Conduct*, 351 F.3d 65, 83–84 (2d Cir. 2003); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 635–36 (6th Cir. 2005).

The analysis and decision in *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012), are enlightening. There, the Arkansas Department of Human Services took custody of numerous children living on the property of a religious organization ("TACM") following findings of abuse. Although TACM itself was not a party to the state dependency and parental rights proceedings, it filed a federal lawsuit alleging violations of its and its members' constitutional rights. TACM argued that it had no way to participate in state court and no access to federal court if *Younger* applied—claiming it was in a "no man's land." *Id.* at 1251. The appellate court rejected that argument, emphasizing that *Younger* abstention applied because TACM's injuries were "sufficiently related to, or inextricably intertwined with," those of its members, who were parties to the state cases. *Id.* at 1253 (holding that relief based on the injuries of individual members were "plainly barred by Younger"). As to TACM's claims of independent injury, the court found those injuries were "generally aligned with those of its members" and, therefore, "in one degree or another, derivative of the injuries of its members." *Id.* Accordingly, the court held that *Younger* barred the federal action, even though TACM could not become a party to the state court proceedings and had asserted facial constitutional claims.

Similar to the present case, in *Glob. Impact Ministries v. Mecklenburg Cnty.*, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021), several organizations filed an action against a city and county in North Carolina seeking, among other things, an injunction against the enforcement of a local ordinance banning certain protest gatherings as unconstitutional after several of its members had been cited and arrested pursuant to it. According to the court, these "ongoing state criminal proceedings relating to the arrests or citations of" members of the organization plainly implicated

4

*Younger*. *Id*. at *3. The organizations "share a close relationship and alignment with the" individual members and the state court proceedings. *Id*. at *4. And those "proceedings implicate important state interests and provide an adequate opportunity for the parties in the state proceeding to raise constitutional challenges." *Id*. at *3

The Nation's position mirrors that of the organizations in *TACM* and *Glob. Impact Ministries*, which were closely aligned with state parties. The Nation shares a close relationship and alignment with the criminal defendants. The Nation claims its own injury—purportedly to its "sovereignty and the authority of its own criminal justice system." Doc. 66 at 12. But this injury is entirely speculative and unsupported; the Nation cites no instance of the State interfering with its ability to prosecute non-member Indian within its Indian country. Even if such an injury existed, it would arise solely from the ongoing prosecutions of individual Indian defendants. In short, the Nation's claims depend entirely on the rights and circumstances of others. Without those prosecutions, it would have no case. This claim, in other words, relies entirely on the asserted rights and circumstances of those defendants.

As in *TACM*, the Nation is not a party to the state proceedings, but its claims are so intertwined with those of the defendants that any federal relief would directly interfere with the ongoing state cases. The key question is whether the Nation's claims are "closely intertwined" with those in state court. *D.L.*, 392 F.3d at 1231. Here, they are not just intertwined—they are indistinguishable.

Finally, the Nation's own conduct undercuts its position. In extensive amicus briefing before the OCCA, the Nation raised all the arguments presented here without ever suggesting that the state courts were an improper venue or incapable of deciding the issues. Those courts ruled, and the Nation now turns to federal court in hopes of a different result. Litigation initiated for the

express purpose of undermining—much less interfering with—ongoing state proceedings is the exact type of interference *Younger* forbids. *See Younger*, 401 U.S. at 44.

In sum, the state prosecutions the Nation urges this Court to disrupt provide an adequate forum to address the claims raised in the Complaint. As in *TACM*, "but for" the ongoing prosecution of individual Indians and their purported jurisdictional defenses, the Nation's claims do not exist.

### B.  The state court prosecutions implicate important state interests.

With immaterial nuance, the Nation contends that no important state interests are implicated. After conceding the State has a general interest in enforcing its laws, the Nation posits that the "dispositive question in cases such as this one turns on the state's interest in enforcing its criminal laws against Indians in Indian country[.]" Doc. 66, at 13 (cleaned up).

The actual question under *Younger* is simply whether "the proceedings implicate important state interests." *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here then we must ask whether the state prosecutions of non-member Indians accused of violating Oklahoma's criminal laws within its borders—and in some cases, against its citizens—implicate important state interests. The Nation skips to a merits argument (something it shuns elsewhere in its brief) to conclude that the state cannot have an interest because it has "no legal entitlement . . . in the first place." Doc. 66, at 13 (citation omitted). Clear law and basic logic belie the Nation's analysis.

There is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Id.* Indeed, in our federal system, "[t]he States possess primary authority for defining and enforcing the criminal law." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). Each state has a

"sovereign interest in being in control of, and able to apply, its laws throughout its territory." *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 476 (2d Cir. 2013). Simply put, States have "a strong sovereign interest" in "protecting *all* crime victims," and punishing *all* criminal offenders within their borders. *Castro-Huerta*, 597 U.S. at 651 (emphasis added); *see also Creek v. Kunzweiler, et al.*, No. 25-CV-75-GKF-JFJ (Doc. 54, Opinion and Order) (N.D. Okla. April 23, 2025) (finding the State has an "interest[] in enforcing laws with respect to non-member Indians[]"). Of course, it would be a logical impossibility to have an interest in protecting crime victims while lacking the power to prosecute offenders.

Moreover, considering the reaffirmation of the validity of State prosecutions in *Castro-Huerta*, the "general[] lack" of authority rule set forth in *Ute* cannot be deployed as a justification for categorical exclusivity. *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1006 (10th Cir. 2015); *see also Arizona v. U.S.*, 567 U.S. 387, 400 (2012) ("[C]ourts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'"). Especially in cases like this one which, unlike *Ute*, do not involve member Indians on member land. *Ute Indian Tribe*, 790 F.3d at 1006; *see also*, *Creek v. Kunzweiler, et al.*, Opinion and Order, No. 4:25-cv-00075-GKF-JFJ (N.D. Okla. April 23, 2025) (where the court distinguished a case like this from *Ute*, where "a Utah county prosecuted a Ute tribal member for alleged traffic offenses on tribal lands.").

A simple hypothetical applying the Nation's logic illuminates its absurdity. Suppose a member of the Navajo Nation (*i.e.*, a non-Oklahoma tribe) assaults an Oklahoma public official (*e.g.*, the Governor or Attorney General) in Tulsa, Oklahoma. In the Nation's world, such an incident would not implicate any "legitimate" or important state interests, and Oklahoma would be unable to prosecute the Navajo Nation member or protect its own officials. Surely not.

### C. No exception to *Younger* applies.

The Nation argues that even if the *Younger* elements are met, prosecutions of non-member Indians would cause it irreparable injury sufficient to override abstention. Doc. 66, at 15-17. First, "irreparable injury is insufficient unless it is 'both great and immediate.'" *Younger*, 401 U.S. at 46. The Nation does not claim that its purported injury is great or immediate. Second, the Nation relies heavily on *Ute* and *Prairie Band* for this tenuous position. *Id*. But a court in a parallel case already rejected that argument, finding, "in contrast to *Prairie Band, Ute,* and *Fisher*, the Nation has not yet identified certain, great, actual, and non-theoretical harm." *Creek v. Kunzweiler, et al.*, No. 25-CV-75-GKF-JFJ (Doc. 54, Opinion and Order at 4) (N.D. Okla. April 23, 2025).

The irreparable injury exception is meant to protect the rights of criminal defendants when their individual rights cannot be safeguarded during ongoing prosecutions. It does not apply to federal plaintiffs whose *Younger*-barred claims are intertwined with or derivative, directly or indirectly, of the state defendant. The Nation's attempt to stretch the exception beyond its limits fails.

### II.   The Court should abstain under *Colorado River*.

The heart of *Colorado River* abstention embodies a policy of "wise judicial administration," promoting the "conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). And, as emphasized in *Arizona v. San Carlos Apache Tribe of Arizona*, even where permissible, federal adjudication is "neither practical nor wise" if it risks "duplicative litigation," generates "tension and controversy between the federal and state forums," or fosters "confusion" over underlying rights. 463 U.S. at 568.

To avoid abstention under *Colorado River*, the Nation must contort the law and its application. Despite its explicit dependence on ongoing State criminal prosecutions, the Nation contends there are no parallel state proceedings, dramatically calling an argument otherwise "frivolous." Doc. 66, at 20. It isn't.

First, "[s]uits are parallel if *substantially* the same parties litigate *substantially* the same issues in different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (emphasis added). The word "substantially" immediately preceding "the same parties" has meaning. "[E]xact identity of parties and issues is not required." *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033 (D.N.M. 2023), *appeal dismissed*, *Pueblo of Pojoaque v. Biedscheid*, 23-2149, 2024 WL 4256791 (10th Cir. May 13, 2024) (examining *Fox v. Maulding*). To be sure, "substantially the same parties" is nowhere limited to just sameness or privity. As argued above, the Nation's claims are intertwined with and derivative of the criminal defendants and their defenses. *See supra* Part I.A.

Second, although the issues must only be *substantially* the same, the issues in the State prosecutions and this lawsuit are *precisely* the same—whether the State's jurisdiction over all of its territory includes jurisdiction to prosecute non-member Indians who commit non-major crimes in Indian country.

Third, the Nation's analysis regarding the existence of federal law is incomplete. Doc. 66, at 21-22. For instance, the opening line of Section III.D. of the Nation's Response strips material language from the sentence quoted, namely: that "the presence of state-law issues may weigh in favor of [the federal court's] surrender[]" under *Colorado River*. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). It is indisputable that the State's ability to enforce

9

its criminal code against non-member Indians who commit crimes in Oklahoma implicates state-law *issues*, just as it invokes state-law *interests* at play in the *Younger* analysis. *See supra* Part I.B.

Here, the core issue—whether the State's jurisdiction over all its territory includes jurisdiction to prosecute non-member Indians who commit non-major crimes in Indian country—is already being addressed in state courts and has been decided at both trial and appellate levels. The Nation simply disagrees with the results. But dissatisfaction with the state court outcomes does not justify federal intervention. Judicial economy and respect for parallel proceedings strongly favors abstention.

### III. The Nation lacks standing.

**A. The Nation has not shown an injury.**

The Nation's argument that it has shown an injury is replete with citation to inapposite—or at the least, distinguishable—authority. *See, e.g. Ute Indian Tribe of the Uintah & Ouray Rsrv. V. Lawrence*, 22 F.4th 892 (10th Cir. 2022); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234; and *Fisher v. Dist. Ct.*, 424 U.S. 382 (1976). A court in a parallel proceeding including precisely the same allegations dealt with each of these cases. *Muscogee (Creek) Nation v. Kunzweiler, et al.*, No. 25-CV-75-GKF-JFJ (Doc. 54, Opinion and Order at 3-4) (N.D. Okla. April 23, 2025). The court found:

> Here, in contrast to *Prairie Band, Ute,* and *Fisher*, the Nation *has not yet identified* certain, great, actual, and *non-theoretical harm*. It does not contend that defendants have denied the Nation of its jurisdiction to enforce its own criminal and traffic laws against non-member Indians. The defendants are not attempting to prosecute members of the Nation. And the Nation has not yet explained how state-court jurisdiction over non-member Indians plainly interferes with its powers of tribal self-government.

*Id*. at 4. (emphasis added).

The Nation has done no more here—there is no injury. And where there is no injury, there can be no redress. In sum, the Nation lacks standing.

### B. A favorable ruling would not provide redress.

Even if the Nation could show an injury—and it cannot—redressability is lacking. The Nation is hopeful it might persuade the Court that an injury really does not have to be redressed. However, the authority doesn't say that. For instance, in *Larson v. Valente*, the Supreme Court emphasized that a discrete injury would "indeed be *completely* redressed by a favorable decision[,]" thus establishing redressability (emphasis added). 456 U.S. 228, 243 (1982). *See also Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007) (where redressability was not established because, in part, "a declaratory judgment [would not] avoid the future possibility (albeit remote) of a criminal prosecution."). The Nation's purported injury would not be completely redressed, or really redressed at all, if relief were granted. State court judges (which are likely necessary parties) could continue issuing decisions. And other State officials such as the Governor (perhaps another necessary party) could continue to prosecute cases.

The Court should abstain from interfering with ongoing criminal prosecutions or otherwise dismiss this case for lack of standing.

## CONCLUSION

For all these reasons, Defendant's Motion to Dismiss should be granted.

Date: April 29, 2025                                  Respectfully submitted,

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 29, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*s/Phillip G. Whaley*
Phillip G. Whaley
