UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-CV-0493-CVE |
| | ) | (BASE FILE) |
| and | ) | |
| | ) | Consolidated with: |
| CHEROKEE NATION, and | ) | Case No. 25-CV-0028-CVE |
| CHOCTAW NATION OF OKLAHOMA, | ) | |
| | ) | |
| Intervenor Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MUSCOGEE (CREEK) NATION, | ) | |
| | ) | |
| Consolidated Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAROL ISKI, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 50); Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 58); and Defendant's Motion to Dismiss Intervenor Complaint and Brief in Support (Dkt. # 77). Defendant Carol Iski is a district attorney in the state of Oklahoma who has charged Indians for crimes committed on the Muscogee (Creek) Reservation by members of the Cherokee and Choctaw Nations.[1] The United States of America (United States) filed this case to

---

[1]    Iski is the district attorney for the twenty-fifth prosecutorial district in Oklahoma. The twenth-fifth prosecutorial district encompasses parts of Okmulgee and McIntosh Counties and is located within the boundaries of the Cherokee and Muscogee (Creek) Reservations (the latter is hereafter referred to as the Creek Reservation).

enjoin the ongoing prosecutions, and it also asks the Court to declare that any future state prosecutions of Indians for crimes committed in Indian country are unlawful. The Cherokee and Choctaw Nations obtained leave to intervene in this matter, and they contend that the United States and the Indian tribes have exclusive jurisdiction over crimes committed by Indians in Indian country. The Muscogee (Creek) Nation (MCN) filed its own lawsuit seeking declaratory and injunctive relief to prevent Iski from prosecuting Indians for conduct occurring within the boundaries of the Creek Reservation. Iski argues that the Court lacks subject matter jurisdiction over this case, because plaintiffs lack standing to proceed with their claims. Iski also asks the Court to abstain from hearing plaintiffs' claims to avoid unnecessary interference with ongoing state criminal prosecutions. Plaintiffs respond that they have substantial and distinct sovereign interests that will be harmed by the ongoing state criminal prosecutions, and they ask the Court to exercise jurisdiction over this case and consider their requests for preliminary and permanent injunctive relief.

## I.

On December 23, 2024, the United States filed this case against Iski, the district attorney for the twenty-fifth prosecutorial district in Oklahoma, because Iski brought criminal charges on behalf of the state of Oklahoma against Indians who allegedly committed crimes within the boundaries of the Creek Reservation. Dkt. # 2, at 12. The United States' complaint references four criminal cases filed by Iski in McIntosh County District Court:

- Oklahoma v. Joseph Long, CF-2023-086 (Mcintosh County District Court) - Iski brought criminal charges against Joseph Long, a member of the Cherokee Nation, for conduct occurring within the Creek Reservation.

2

- <u>Oklahoma v. Joshua Medlock</u>, CF-2024-050 (McIntosh County District Court) - Iski filed criminal charges against Joshua Medlock, a member of the Choctaw Nation, for conduct occurring on the Creek Reservation.

- <u>Oklahoma v. Joey Wiedel</u>, CF-2024-105 (McIntosh County District Court) - Iski charged Joey Wiedel, a citizen of the Cherokee Nation, with criminal charges for conduct occurring on the Creek Reservation.

- <u>Oklahoma v. Rachel Carson</u>, CF-2024-149 (McIntosh County District Court) - Iski filed criminal charges against Rachel Carson, a citizen of the Cherokee Nation, for conduct occurring on the Creek Reservation.

<u>Id.</u> at 12; Dkt. # 67, at 31-33.  The United States argues that states lack criminal jurisdiction over Indians for crimes committed in Indian country unless Congress has expressly granted states jurisdiction over such offenses.  <u>Id.</u> at 4.

The United States asks the Court to enter a declaratory judgment that the state of Oklahoma lacks criminal jurisdiction over all Indians[2] who allegedly commit crimes in Indian country, and the United States also seeks a preliminary and permanent injunction prohibiting Iski from asserting criminal jurisdiction over Indians for conduct occurring in Indian country without authorization from Congress.  Dkt. # 2, at 14.  The Cherokee and Choctaw Nations sought and obtained leave to

---

[2]    Iski contends that this case involves a narrower jurisdictional issue than the request for relief sought by the plaintiffs.  The state prosecutions identified in the complaint were brought against Indians who were not members of the Indian tribe on whose reservation the alleged criminal conduct occurred.  According to Iski, the jurisdictional issue should be limited to the consideration of whether the state of Oklahoma has concurrent jurisdiction over offenses committed by non-member Indians of the Indian tribe with jurisdiction to prosecute the crime.

3

intervene in the case filed by the United States, and they have also joined in the motion for preliminary injunction filed by the United States.  Dkt. ## 61, 68.

On January 28, 2025, the MCN filed a separate case in the Eastern District of Oklahoma asserting that Iski was interfering with the MCN's tribal sovereignty by seeking to enforce state criminal laws against Indians within the boundaries of the MCN's reservation.  Muscogee (Creek) Nation v. Carol Iski, Case No. 25-CV-028-CVE (E.D. Okla.).  The MCN seeks declaratory and injunctive relief preventing the state of Oklahoma from exercising criminal jurisdiction over all Indians within the boundaries of the Creek Reservation.  The MCN filed a motion for preliminary injunction and a motion to consolidate both pending cases in the Eastern District of Oklahoma.  The Court granted the motion to consolidate cases, and both cases have been consolidated in the earlier filed case.[3]

## II.

Iski has moved to dismiss the case on the grounds of lack of standing, Younger abstention,[4] the Anti-Injunction Act, and Colorado River abstention,[5] and each of these issues concerns the subject matter jurisdiction of the Court to hear these consolidated cases.  Motions to dismiss under Rule 12(b)(1) "generally take one of two forms.  The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject

---

[3]      This Opinion and Order will deal only with the pending motions to dismiss, and the Court will not rule on the motions for preliminary injunction at this time.

[4]      Younger v. Harris, 401 U.S. 37 (1971).

[5]      Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

4

matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted).  Where a motion to dismiss is based on a facial attack, as here, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562.  Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments

5

are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Iski argues that none of the plaintiffs has suffered an injury from the prosecution of non-member Indians in state court, and plaintiffs lack standing to proceed with their claims. Iski contends that granting plaintiffs' request for declaratory or injunctive relief would improperly interfere with ongoing state court proceedings, and the state courts provide an adequate forum to resolve the issues of federal law asserted by plaintiffs in this case. Plaintiffs respond that Iski's attempt to enforce state law against Indian defendants in Indian country significantly harms their sovereign interests, and they argue that the Court can redress the injury caused by Iski's actions. Plaintiffs argue that they are not parties in the state court proceedings, and they will have no ability to protect their own sovereign interests unless they are permitted to proceed with this case.

### A.

Iski argues that plaintiffs have not suffered an injury from his prosecution of individual Indians in state criminal cases, and only the individual defendants have standing to challenge the state court's jurisdiction over them. Dkt. # 50, at 13. Iski also argues that the relief sought by plaintiffs would not actually prevent the prosecution of Indians in state court, as the state has concurrent jurisdiction with the tribes and the United States for the prosecution of crimes allegedly committed by certain Indian defendants and the state could simply appoint another prosecutor if this Court were to enjoin Iski from proceeding with the prosecutions. Id. at 15. The United States responds that it has suffered an injury as a prosecuting sovereign and as a trustee for the affected Indian tribes, and Iski's efforts to prosecute Indians in Indian country constitutes a serious injury to

6

the United States' interests. Dkt. # 60, at 12-15. The Indian tribes contend that they have alleged that tribal and federal jurisdiction over crimes committed by Indians in Indian country is wholly exclusive of state jurisdiction, and Iski's unlawful attempts to assert state criminal jurisdiction in Indian country constitutes an injury for the purpose of establishing Article III standing. Dkt. # 59, at 19-21; Dkt. # 66, at 10-13.

Article III of the United States Constitution limits federal courts to the adjudication of cases or controversies. U.S. CONST. art. III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004). "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." Kane Cnty. v. United States (Kane III), 928 F.3d 877, 888 (10th Cir. 2019). The standing requirement ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). The primary focus for any analysis of standing under Article III "is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury." Morgan v. McCotter, 365 F.3d 882, 888 (10th Cir. 2004). Further, while "[t]he plaintiff must show that a favorable judgment will relieve a discrete injury, [] it need not relieve his or her every injury." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1158 (10th Cir. 2005). The party invoking the jurisdiction of a federal court has the

7

burden to establish Article III standing. New England Health Care Emps. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008).

Iski contends that the United States and the Indian tribes have not suffered an injury from her prosecution of Indian defendants in state court, because only the individual defendants who have been prosecuted by the state have suffered an injury. Dkt. # 50, at 14. Iski suggests that the remedy for plaintiffs to raise their jurisdictional dispute is an amicus curiae brief in the state court proceedings, rather than a lawsuit asking a federal court to determine whether the courts of Oklahoma lack jurisdiction over the individual defendants. Id. Iski contends that separate sovereigns have always maintained the right to bring separate prosecutions against individuals within their jurisdiction, and the state's prosecution of these individuals does not prevent the United States or any Indian tribe from asserting their own criminal jurisdiction over a particular defendant. Id. at 15. Iski also argues that enjoining a single prosecutor from bringing criminal charges against Indians will cause "jurisdictional chaos," because other district attorneys in the state of Oklahoma will not be prohibited from bringing criminal charges against Indians even if plaintiffs prevail in this case. Id. at 16.

The Supreme Court has noted that "[c]riminal jurisdiction over offenses committed in "Indian country . . . is governed by a complex patchwork of federal, state, and tribal law." Negonsott v. Samuels, 507 U.S. 99, 102 (1993). States have criminal jurisdiction over all of the territory within their state, including Indian reservations, except to the extent that such jurisdiction is preempted by federal law. Oklahoma v. Castro-Huerta, 597 U.S. 629, 637 (2022) (explaining that states have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country). However, the Supreme Court requires a "clear expression of the intention of Congress"

8

before the state or federal government may prosecute crimes committed by Indians on tribal lands, as the power to punish tribal members and enforce tribal laws is part of a tribe's retained sovereignty. United States v. Hopson, 150 F.4th 1290, 1299 (10th Cir. 2025).

Iski's arguments that the United States and the Indian tribes have not suffered an injury are meritless, as the Tenth Circuit has repeatedly rejected similar arguments. The invasion of tribal sovereignty by the illegal assertion of state jurisdiction over an Indian defendant constitutes an injury that can be redressed by a federal court. Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah, 790 F.3d 1000, 1005 (10th Cir. 2015) (Indian tribe had suffered a serious injury by the state of Utah's decision to disregard a binding Tenth Circuit decision concerning the boundaries of an Indian reservation and the prosecution of a tribal member for traffic offenses committed on reservation land); Wyandotte Nation v. Sebelius, 443 3d 1247, 1255 (10th Cir. 2006) (Tenth Circuit explained that it had "repeatedly" found that a state's unlawful intrusion on tribal sovereignty constitutes an irreparable injury warranting issuance of a preliminary injunction). The state of Oklahoma's attempt to usurp exclusive tribal jurisdiction over Indians who allegedly commit crimes within the boundaries of an Indian reservation would constitute a substantial injury warranting judicial intervention.[6] The Tenth Circuit has noted that circumstances occur in which the interests of state and tribal sovereignty overlap, but this does not diminish the harm caused by a state's

---

[6]    Iski attempts to distinguish Ute Indian Tribe by arguing that the case involved the state prosecution of a member Indian, while this case concerns only the prosecution of non-member Indians by a state prosecutor. Dkt. # 58, at 14. Plaintiffs' complaints clearly state that they are seeking a ruling that the state of Oklahoma has no prosecutorial authority over any Indian in Indian country, and the Court will rely on plaintiffs' formulation of their claims when ruling on the motions to dismiss. The Court may later consider narrower aspects of state, federal, and tribal jurisdiction, but plaintiffs are clearly asserting they have exclusive jurisdiction to prosecute all Indians for criminal offenses occurring in Indian country.

infringement on tribal sovereignty by the potentially unlawful assertion of state interests.  Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1252 (10th Cir. 2001) ("Federal law is replete with examples in which state law has had to accommodate tribal sovereignty, whether because of federal preemption or because of the guardian-ward relationship between the federal government and Indian tribes").

The arguments asserted in Iski's motions to dismiss clearly seek to minimize plaintiffs' alleged injury, but plaintiffs have shown that they have a significant interest in preventing allegedly unlawful state intrusion on their sovereignty.  Iski's argument that plaintiffs could file an amicus brief in state court criminal proceedings to protect their sovereign interests is wholly unsupported by law and ignores the significance of the tribes' interest in protecting their own sovereignty.  Courts are not obligated to give substantial or even any consideration to arguments raised in an amicus brief, and the filing of an amicus brief is not an adequate substitute for the filing a lawsuit.  Iski's other arguments fare no better.  Iski complains that enjoining one state prosecutor would lead to "jurisdictional chaos" and would create a "hodgepodge, patchwork system" where different Oklahoma prosecutors would be following different rules based on the decisions of a particular federal court.  Dkt. # 50, at 15.  This argument would effectively deprive Indian tribes access to federal court to protect their sovereign interests unless a critical mass of state prosecutors chose to test the limits of the Supreme Court's rulings in McGirt[7] and Castro-Huerta.[8]  The tribal interest in protecting their own sovereignty is not diminished or enhanced depending on the number of violations that have occurred, and one prosecutor's alleged infringement on tribal criminal

---

[7]    McGirt v. Oklahoma, 591 U.S. 984 (2020).

[8]    Oklahoma v. Castro-Huerta, 597 U.S. 629 (2022).

10

jurisdiction in even one case is a sufficient infringement on tribal sovereignty to satisfy the injury in fact requirement. Iski's argument concerning the separate sovereigns doctrine also seeks to minimize the sovereign interests asserted by plaintiffs in this case. The United States and the tribal plaintiffs are alleging that they have exclusive jurisdiction over Indian defendants who commit crimes in Indian country. Defendant's argument wholly disregards the effect of McGirt and, if plaintiffs are correct, there is no concurrent jurisdiction giving rise to application of the separate sovereign doctrine.

Iski's arguments concerning redressability are based on a wholesale disregard of federal Indian law and the McGirt decision, and Iski seems to be taking the position that the state of Oklahoma will be able to prosecute Indians in state court even if the Court enjoins the prosecutions listed in plaintiffs' complaints. Plaintiffs seek a ruling that state courts lack jurisdiction over all Indian defendants for crimes committed in Indian country. If this argument is correct, no attorney representing the state of Oklahoma, whether a district attorney or the state attorney general, could bring the criminal cases listed in plaintiffs' complaints, because such crimes would be within the exclusive jurisdiction of the United States and certain Indian tribes. A ruling by this court that state courts lack jurisdiction over these offenses would prevent future prosecutions in violation of federal law, and this would clearly redress the injury caused by the state's allegedly unlawful exercise of criminal jurisdiction over Indian defendants. As the Supreme Court has noted, causation and redressability are often "flip sides of the same coin," and resolving the issue of redressability will typically lead to the same result on the issue of causation. Food and Drug Administration v. Alliance for Hippocratic Medicine, 602 U.S. 367, 380-81 (2024). The Court's finding that plaintiffs have satisfied the redressability requirement for standing is effectively a finding that Iski's allegedly

unlawful attempts to exercise criminal jurisdiction over Indian defendants caused an injury to the United States and the Indian tribes. All three elements for standing have been satisfied by the United States and the Indian tribes, and Iski's motions to dismiss are denied to the extent that they allege that plaintiffs lack standing under Article III.

**B.**

Iski argues that the state court criminal prosecutions are the appropriate forum for resolution of the jurisdictional issues raised by plaintiffs concerning the limits of state criminal jurisdiction, and he asks the Court to dismiss the case pursuant to <u>Younger</u> abstention to avoid unwarranted interference with the ongoing state court proceedings. Dkt. # 50, at 18-26. Plaintiffs respond that they are not parties to the state court prosecutions of individual Indians, that there are no important state interests warranting abstention, and that there is no reason for this Court to decline to exercise jurisdiction over this case. Dkt. # 59, at 12-18; Dkt. # 60, at 21-25.

"Under the Younger abstention doctrine, federal courts should not 'interfere with state court proceedings by granting equitable relief–such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings-' when a state forum provides an adequate avenue for relief." <u>Weitzel v. Division of Occupational and Professional Licensing of Dep't of Commerce of the State of Utah</u>, 240 F.3d 871, 875 (10th Cir. 2001). The Supreme Court had made clear that the circumstances giving rise to <u>Younger</u> abstention must be "exceptional," and <u>Younger</u> abstention is triggered only by state proceedings falling into one of the following categories: "(1) state criminal prosecutions, (2) civil enforcement proceedings [that take on a quasi-criminal shape], and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial function." <u>Travelers Casualty Ins. Co.</u>

of America v. A-Quality Auto Sales, Inc., 98 F.4th 1307, 1317 (10th Cir. 2024) (quoting Graff v. Aberdeen Enterprizes, II, Inc., 65 F.4th 500, 522 (10th Cir. 2023)).  If the state proceedings fall within one of the enumerated categories, the district court must consider three factors to determine whether Younger abstention is appropriate:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

Chapman v. Oklahoma, 472 F.3d 747, 749 (10th Cir. 2006).  These three factors are known as the Middlesex[9] factors, and the Supreme Court has clarified that these factors are not dispositive for the application of Younger abstention.  Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 80-82 (2013) (clarifying that the Middlesex factors are treated as additional factors once the party invoking Younger abstention has shown that the proceeding to be enjoined falls within the category of criminal or quasi-criminal proceedings appropriate for the consideration of Younger abstention).

The parties do not dispute that the state court proceedings are criminal prosecutions that could qualify as an exceptional circumstance warranting Younger abstention.  However, plaintiffs argue that the United States and the Indian tribes are not parties in the state court proceedings, and they will have no opportunity to litigate their federal constitutional claims in state court.  Iski contends that Oklahoma courts provide an adequate forum to resolve issues of federal law, as shown by a recent decision of the Oklahoma Court of Criminal Appeals in which it considered whether state

---

[9]     Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982).

courts have jurisdiction over non-member Indians who commit crimes in Indian country.[10] Dkt. #
77, at 19 (citing City of Tulsa v. O'Brien, ___ P.3d ___, 2024 WL 5001684 (Okla. Crim. App. Dec.
5, 2024)). Iski argues that the United States and the Indian tribes have conceded that the state courts
of Oklahoma are an appropriate forum, because they have filed amicus briefs in state court with the
"expectation" that issues raised in the case will be considered in the state court proceedings. Dkt.
# 50, at 20-21; Dkt. # 77, at 20. Finally, Iski claims that state courts have proven to be an adequate
forum for consideration of disputes concerning state and tribal jurisdiction, because both McGirt and
Castro-Huerta originated in state court and arose out of decisions by the Oklahoma Court of Criminal
Appeals.

       None of the arguments asserted by Iski shows that the state courts provide an adequate forum
for the issues raised in plaintiffs' complaints. Neither the United States nor the tribal plaintiffs are
parties in the state court criminal prosecutions, and state courts do not provide any forum for them
to challenge the state's allegedly unlawful exercise of criminal jurisdiction. Iski argues that plaintiffs
have filed amicus briefs in various state court proceedings, but Iski has cited no authority even
suggesting that filing an amicus brief gives them any stake in the litigation or even that the state
courts have any obligation to consider arguments raised in an amicus brief. Iski appears to be

---

[10]     Iski goes so far as to call this case a collateral attack on a state court ruling, and Iski implies
that a ruling by the Oklahoma Court of Criminal Appeals on a matter of federal law is
binding on the parties in these proceedings. Dkt. # 50, at 7; Dkt. # 77, at 7. Iski is free to
rely on the reasoning employed by state courts when reviewing issues of federal law, but
state court decisions on matters of federal law are not binding on this Court. Dutcher v.
Matheson, 840 F.3d 1183, 1195 (10th Cir. 2016); TMJ Implants, Inc. v. Aetna, Inc., 498 F.3d
1175, 1181 (10th Cir. 2007). The Court does not find that plaintiffs' decision to litigate
matters of federal statutory and constitutional law in federal court constitutes an
impermissible collateral attack on a state court decision, and state court decisions on issues
of federal law relevant to this case will be treated as persuasive authority only.

arguing that the interests of the individual defendants being prosecuted are sufficiently aligned with plaintiffs' interests in this case that the parties are in privity for the purpose of Younger abstention. However, "Younger abstention is inappropriate when a federal plaintiff cannot pursue its federal contentions in the ongoing state proceedings." D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223, 1229 (10th Cir. 2004). The interests of criminal defendants seeking to avoid punishment from a criminal charge and the interests of sovereign entities seeking to prevent unwarranted intrusion on their authority over their citizens have no obvious similarity. The United States notes that it has separate sovereign interests as a trustee for Indian tribes and as a prosecuting authority in its own right, and Iski has made no attempt to show that an individual criminal defendant is likely to assert claims protecting either of these interests. There is also a further layer of separation from the individual criminal defendants and the Indian tribes, as none of the criminal defendants is a member of the tribe seeking to assert criminal jurisdiction over them.

Iski also argues that state courts have a proven history of considering the types of federal claims that the plaintiffs seek to litigate in this case, and they cite McGirt and Castro-Huerta in support of this proposition. In Murphy v. Royal, 875 F.3d 896 (10th Cir. 2017),[11] the Tenth Circuit found that the significant procedural hurdles to even considering whether federal habeas relief was warranted were satisfied due to Oklahoma's practice of ignoring binding Supreme Court precedent concerning the alleged disestablishment of the Muscogee Creek Nation's reservation. Id. at 928 ("Mr. Murphy put the issue of whether the Creek Reservation had been disestablished squarely before the OCCA, but the court decided the claim by ignoring and contradicting [Solem v. Bartlett,

---

[11]    Murphy was the Tenth Circuit decision in which the issue of the continued existence of the Creek Reservation was litigated, although the Supreme Court later issued its substantive decision on this issue in McGirt.

15

465 U.S. 463 (1984)"]).  As in this case, Oklahoma argued that it has a long standing history of prosecuting criminal cases in Indian country, and its exercise of concurrent state jurisdiction will not harm the United States or the Indian tribes.  Dkt. # 50, at 14-15; McGirt, 581 U.S. at 918.  The Supreme Court noted "[b]y Oklahoma's own admission, then, for decades its historical practice in the area in question didn't even try to conform to the [Major Crimes Act], all of which makes the State's past prosecutions a meaningless guide for determining what counted as Indian country."  Id. at 918-19.  The Supreme Court explained that Oklahoma was not the only state to overstep its authority to prosecute crimes in Indian country, and Oklahoma's long-standing practice of ignoring jurisdictional limitations created by the MCA "only underscores the danger of relying on state practices to determine the meaning of the federal MCA."  Id. at 919.  The proceedings leading up to the McGirt decision wholly fail to support Iski's argument that courts of Oklahoma are vigorously adjudicating federal claims concerning limitations of state authority in Indian country.

The parties also dispute whether the state court proceedings involve an important state interest.  Iski argues that states have a strong interest in administering their systems of criminal justice, and federal courts have refrained from  interfering with ongoing criminal prosecutions to avoid infringing on this significant state interest.  Dkt. # 50, at 23.  The United States argues that the state of Oklahoma has no little or no interest in the issue raised by this case, because the exercise of tribal jurisdiction and the application of federal statutes governing this matter purely arises under federal law.  Dkt. # 60, at 25.  The parties' arguments on this issue simply illustrate that all of the sovereign entities involved in this case have important and equally significant interests in determining the scope of state, federal, and tribal jurisdiction within Indian country.  Although the state has an important interest in prosecuting crimes within its jurisdiction, this does not minimize

the significant federal and tribal interests in correctly determining relevant jurisdictional limitations applicable to each sovereign, and the state interest in this case does not independently show that Younger abstention is appropriate.

Iski has shown that there are ongoing state court criminal prosecutions that could support the application of Younger abstention.  However, she has failed to show that the state criminal prosecutions provide an adequate forum for the plaintiffs in this case to litigate their federal claims.  Iski's interest in bringing criminal prosecutions on behalf of the state of Oklahoma is not in itself a sufficient basis to invoke Younger abstention, and the Court does not find that abstention is required to avoid interfering with an ongoing state court case.

## C.

Iski argues that the Anti-Injunction Act (AIA), 28 U.S.C. § 2283, prevents the Court from entering an injunction to stay the pending state criminal prosecutions.  Dkt. # 50, at 18; Dkt. # 58, at 16; Dkt. # 77, at 14.  The AIA provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The purpose of the statute is to promote comity between state and federal courts and prevent unnecessary interference with the operation of state courts.  Smith v. Bayer Corp., 564 U.S. 299, 306 (2011).  "By generally barring such intervention, the [AIA] forestalls 'the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court.'" Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988) (quoting Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630-31 (1977)). The AIA is not jurisdictional statute limiting the power of a federal court to hear a case, but "[i]t merely limits [the district court's] general equity powers

17

in respect to the granting of a particular form of equitable relief." Sac and Fox Nation v. Hanson,

47 F.3d 1061, 1063 (10th Cir. 1995). The Supreme Court has noted the policy of preventing

conflicts between state and federal courts is "much more compelling when it is the litigation of

private parties which threatens to draw the two judicial systems into conflict than when it is the

United States which seeks a stay to prevent threatened irreparable injury to a national interest."

NLRB v. Nash-Finch Co., 404 U.S. 138, 145 (1971) (quoting Leiter Minerals, Inc. v. United States,

352 U.S. 220 (1957)); see also Arkansas v. Farm Credit Servs. of Cent. Arkansas, 520 U.S. 821, 829

(1997) ("Just as the Tax Injunction Act is inapplicable where the United States is a party, a parallel

rule prevails under § 2283").

        Plaintiffs argue that the AIA is inapplicable to actions brought by the United States to protect

its own jurisdiction and the jurisdiction of tribal courts. Defendant has done little more than cite the

AIA and quote the text of the statute, and he has made no attempt to offer an analysis that the AIA

actually bars the Court from hearing any aspect of any plaintiffs' claims. The Supreme Court has

noted that the AIA is a somewhat ambiguous statute with "meager" language for statutory

construction, "but the interpretation excluding the United States from the coverage of the statute

seems to us preferable in the context of healthy federal-state relations." Leiter Minerals, 352 U.S.

at 226. In this case, it would make little sense to find that the AIA bars the claims of the tribal

plaintiffs, because the United States is bringing the same claims on behalf of the tribes in its capacity

as a trustee. The Tenth Circuit has left open the question of whether there is an exemption to the

AIA that would generally allow Indian tribes to sue to enjoin state court proceedings without the

presence of the United States in the same lawsuit. See Ute Indian Tribe of Uintah and Ouray

Reservation v. Lawrence, 22 F.4th 892, 910 n.22 (10th Cir. 2022) (noting the possibility of an

18

exception to the AIA to allow suits by Indian tribes to enjoin ongoing state court proceedings, but finding it unnecessary to reach issue due to inadequate briefing by defendants to even consider invoking the AIA). The Court does not need to reach the issue of whether there is a general exception under the AIA allowing Indian tribes to sue to enjoin, because this case presents a circumstance in which the interests of the United States and the Indian tribes are aligned and the United States chose to bring its own lawsuit that is exempt from the AIA. The Court does not find that the AIA bars the Court from considering the claims of the United States or the Indian tribes to the extent that these parties seek injunctive relief.

### D.

Iski asks the Court to dismiss the case under the Colorado River doctrine, because there are parallel suits involving the same issues in state and federal courts and the state proceeding will completely resolve the parties' dispute. Dkt. # 50, at 26-28; Dkt. # 58, at 23-25; Dkt. # 77, at 25-27. Plaintiffs respond that Colorado River abstention is inapplicable in the absence of parallel proceedings in state and federal courts and, even if there were parallel proceedings, there are no exceptional circumstances caused by the separate proceedings that would warrant abstention. Dkt. # 59, at 26-32; Dkt. # 60, at 27-30; Dkt. # 66, at 27-31.

"As a general rule, 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" D.A. Osguthorpe Family P'ship v. ASC Utah, Inc., 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting Colorado River, 424 U.S. at 817). However, under Colorado River, a district court may dismiss a federal suit in favor of a pending state proceeding for "reasons of wise judicial administration" such as "conservation of judicial resources and comprehensive disposition of litigation." Id. at 817-18. Because the federal

19

courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," dismissing a case under Colorado River is appropriate only in "exceptional" circumstances. Fox v. Maulding, 16 F.3d 1079, 1081 (10th Cir. 1994) (quoting Colorado River, 424 U.S. at 817-18); see also Rienhardt v. Kelly, 164 F.3d 1296, 1303 (10th Cir. 1999) ("[B]ecause the Colorado River Doctrine is an exception to our jurisdictional mandate from Congress, the Doctrine may only be used when 'the clearest of justifications . . . warrant[s] dismissal'").

Determining whether a federal court may decline to exercise jurisdiction under Colorado River is a two step process. First, the court must determine whether the state and federal proceedings are parallel. Fox, 16 F.3d at 1081. If the proceedings are parallel, the court then considers a number of factors the Supreme Court has set out to determine whether "exceptional circumstances" exist. Id. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." Id. (quoting New Beckley Mining Corp. v. Int'l Union, UMWA, 946 F.2d 1072, 1073 (4th Cir. 1991)). In determining whether proceedings are parallel, courts should not "consider how the state proceedings could have been brought, i.e., what claims and parties could have been included had the federal plaintiff made a timely application to do so." Id. Instead, courts should "examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings." Id. It is "a serious abuse of discretion" to stay or dismiss a case under Colorado River if the state court proceedings will not completely and promptly resolve the issue between the parties. Id.

Iski has not shown that the state court prosecutions can be considered parallel cases for the purpose of Colorado River abstention, and it is unnecessary for the Court to consider any additional factors to determine whether abstention is warranted. Neither the United States nor any Indian tribes

20

is a party in the state court proceedings, and plaintiffs have no ability to litigate the issues raised in this case before the state court. Iski contends that <u>Colorado River</u> abstention can apply without exactly the same parties in state and federal court, but there is no similarity between the identity of the parties, let alone substantial similarity, that would be sufficient to consider the state court criminal prosecutions as parallel to this case.[12]  Dkt. # 72, at 17-18.  There is also no substantial similarity in the issues being litigated in the state and federal proceedings. The state court criminal proceedings arise under state criminal law, and it is possible that the criminal defendants may seek to avoid prosecution by arguing that the state court lacks jurisdiction. However, the defendants in the state court proceedings are not obligated to raise a jurisdictional challenge, and the focus of the state court proceedings will be the application of state criminal law to the circumstances of the individual cases. The criminal defendants have no interest in seeking to protect the sovereignty of the United States or the Indian tribes, even if their interests could possibly overlap to the extent it would help the criminal defendants avoid prosecution in state court. This case certainly does not present an exceptional circumstance warranting abstention under the <u>Colorado River</u> doctrine in light of the lack of parallel cases in state and federal court, as the plaintiffs in this case will have no ability to litigate their jurisdictional arguments in the state court proceeding.

---

[12]  Iski again argues that some of the plaintiffs have filed amicus briefs in certain state court proceedings and, therefore, they can be considered as parties in the state court proceedings. Dkt. # 50, at 28; Dkt. # 58, at 25. The Court has rejected Iski's argument that the filing of an amicus brief gives the plaintiffs in this case any interest in the state court proceedings that is sufficient to consider them as parties or something equivalent to protect their interests against the state of Oklahoma's allegedly unlawful intrusion on the sovereignty of the United States and the Indian tribes.

**IV.**

The Court finds no basis to dismiss plaintiffs' claims or abstain from hearing this case in light of the state court criminal prosecutions, and Iski's motions to dismiss (Dkt. ## 50, 58, 77) are denied. The parties shall submit a joint status report concerning the entry of a scheduling order and any stipulations the parties have reached to streamline the resolution of this matter. The Court notes that plaintiffs' claims concern primarily legal disputes, as opposed to factual disputes, and it is unclear whether the parties need to conduct a substantial amount of discovery to fully brief the jurisdictional issues at the heart of the case. The Court also notes that plaintiffs have filed motions for preliminary injunction but, due to the apparent lack of factual disputes, it may be more expeditious for the parties to stipulate that the Court can treat the pending motions as motions for permanent injunction to fully resolve this case.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 50), Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 58), Defendant's Motion to Dismiss Intervenor Complaint and Brief in Support (Dkt. # 77) are **denied**.

**IT IS FURTHER ORDERED** that the motions for preliminary injunction (Dkt. ## 8, 57, 68) remain pending.

**IT IS FURTHER ORDERED** that the parties shall submit a joint status report concerning the entry of a scheduling order, and any stipulations the parties have reached to expedite resolution of this matter, no later than **February 17, 2026**.

**DATED** this 16th day of January, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE