# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>and<br><br>CHEROKEE NATION, and<br>CHOCTAW NATION OF OKLAHOMA,<br><br>Intervenor Plaintiffs,<br><br>and<br><br>MUSCOGEE (CREEK) NATION,<br><br>Consolidated Plaintiff,<br><br>vs.<br><br>CAROL ISKI, District Attorney for the<br>Twenty-Fifth Prosecutorial District<br>of Oklahoma in her official capacity,<br><br>Defendant. | Case No: 6:24-cv-0493-CVE<br>(BASE FILE)<br><br>Consolidated with:<br>Case No. 25-CV-0028-CVE |

**INTERVENOR PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY**

Plaintiffs Cherokee Nation and Choctaw Nation of Oklahoma ("Nations") show here that Defendant Carol Iski's Motion to Stay ("Mot."), Dkt. No. 115, should be denied because it fails to satisfy the high standard that applies to a motion that seeks to stay the case in which the motion is brought to permit legal issues it raises to be decided in another case by other litigants. Defendant seeks to stay this case during the pendency of the appeal in *Muscogee (Creek) Nation v. Kunzweiler*, No. 25-cv-75-GKF-JFJ, 2025 WL 3124450 (N.D. Okla. Nov. 7, 2025), *appeal filed* No. 26-5013 (10th Cir. docketed Jan. 29, 2026), asserting that it "presents the precise same issue that must be addressed in this matter," Mot. at 3, and that the defendant in *Kunzweiler* is likely to

1

prevail before the Tenth Circuit. Neither of these assertions are correct. Furthermore, even if the *Kunzweiler* decision were affirmed, it would not resolve this case, in which the Nations present issues that the *Kunzweiler* case does not.

## STANDARD OF REVIEW

"[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Kimery v. Broken Arrow Pub. Schs.*, No. 11-cv-0249-CVE-PJC, 2011 WL 2912696, at *4 (N.D. Okla. July 18, 2011) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). At the same time,

> "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Indiana State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009). "It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Id.* "The propriety of a stay is dependent upon the circumstances of the particular case, and the traditional stay factors contemplate individualized judgments in each case." *Id.* (internal quotations omitted). *Landis* dictates that courts making such judgments take into account hardship to the parties, as well as the "orderly course of justice." 299 U.S. at 244-45. And the Tenth Circuit has instructed courts to consider the following factors before granting a stay: "whether the [moving party is] likely to prevail in the related proceeding; whether, absent a stay, the [moving party] will suffer irreparable harm; whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and the public interests at stake." *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir.2003).

*Id.*; *see also Dayan-Varnum v. Dayan*, No. 23-cv-00052-SEH-MTS, 2025 WL 863390, at *13 (N.D. Okla. Mar. 19, 2025) (recognizing that "[d]istrict courts have inherent power to manage their dockets, and 'the power to stay proceedings is incidental to' that power" (quoting *Landis*, 299 U.S. at 254)), that "[t]he party requesting a stay carries the burden of establishing it is needed,"

4904-2300-4578, v. 2

(citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)), and that "[t]he decision to stay a case falls with the court's discretion, but factors to consider include" those listed in *United Steelworkers*).[1]

Furthermore, "where a movant seeks relief that would delay court proceedings by other litigants he must make *a strong showing of necessity* because the relief would severely affect the rights of others." *Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 468 (10th Cir. 1985) (quoting *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1993)) (emphasis added by *Span-Eng* court).  "[E]ven when the relief sought is only a stay of the case in which the motion is made:

> '[T]he suppliant for a stay must make out a *clear case of hardship or inequity* in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.  Only in *rare* circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.'"

*Id.* (quoting *Landis*, 299 U.S. at 255 (emphasis added)).  In sum, "[t]he right to proceed in court should not be denied except under the most extreme circumstances."  *Id.* (quoting *Chilcott*, 713 F.2d at 1484 (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971)); *accord Smith v. Whaleco*, No. CIV-23-559-D, 2024 WL 1862327, at *1 (W.D. Okla. Apr. 29, 2024).

---

[1] Defendant Iski argues that the "harm to the parties and the public interest" are evaluated under a three-factor test she derives from *Alzheimer's Institute of America v. Comentis, Inc.*, No. CIV-09-1366-F, 2010 WL 11508734, at *2 (W.D. Okla. Dec. 17, 2010).  Mot. at 4-5.  But *Alzheimer's Institute* was only describing "[f]actors relevant to the court's decision" to stay, not how any particular element of the evaluation described in *Landis* and *United Steelworkers* should be weighed.  *See* 2010 WL 11508734, at *2.  Indeed, "[w]hile the factors courts consider in deciding whether to grant a stay may be named or packaged differently across jurisdiction, the substance of the factors is largely the same." *Freeman v. Cmty. Strategies, Inc.*, No. CIV-25-170-SLP, 2025 WL 2345090, at *1 (W.D. Okla. July 7, 2025) (comparing *Alzheimer's Inst.* with *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).

## ARGUMENT

I. **DEFENDANT ISKI'S MOTION FAILS TO SATISFY THE STANDARDS SET FORTH BY THIS COURT IN *KIMERY* AND BY THE TENTH CIRCUIT IN *SPAN-ENG*.**

A. **Defendant Iski's Motion To Stay Is Based On A False Premise.**

Defendant Iski's motion is premised on the assertion that the issue in *Kunzweiler* is the "precise same issue that must be addressed in this matter: '[T]he issue presented in this case is whether the Tulsa County District Attorney may assert concurrent criminal jurisdiction over Indians who are not members of the Muscogee (Creek) Nation (hereinafter referred to as "nonmember Indians") and who are alleged to have committed crimes not covered by the Major Crimes Act (MCA) within the Nation's Reservation.'" Mot. at 2-3 (quoting *Kunzweiler*, 2025 WL 3124450, at *1). That assertion is false and therefore her motion should be denied.

In this case, the Nations seek declaratory and injunctive relief to protect their inherent sovereign power to exercise criminal jurisdiction *over all Indians* on their reservations, which are Indian country, 18 U.S.C. § 1151(a), free from interference by Defendant Iski's assertion of state criminal jurisdiction over Indians in Indian country. Compl. ¶¶ 1, 64, 65, Dkt. No. 67 ("Nations' Compl."); *id.* Prayer for Relief ¶¶ 1, 2; Br. Cherokee Nation & Choctaw Nation Okla. Supp. U.S.'s Mot. Prelim. Inj. at 1, Dkt. No. 68-1 ("Nations' PI Br.") ("the Supreme Court 'has long require[d] a clear expression of the intention of Congress before the state or federal government may try Indians for conduct on their lands'" (quoting *McGirt v. Oklahoma*, 591 U.S. 894, 929 (2020) (quoting *Ex parte Crow Dog*, 109 U.S. 556, 572 (1883)) (alteration in original) (some internal quotation marks omitted)); Nations' PI Br. at 2-4 (showing that in *McGirt*, the State claimed it had criminal jurisdiction over Indians in Indian country and that the Supreme Court rejected that claim); *id.* at 10 ("*McGirt*'s rule is controlling here because nothing in [*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022),] purports to unsettle that rule, or the Court's application of that rule

4

to reject the State's jurisdictional claim over Indians in Indian country."); *id.* at 17 ("[T]he principle *McGirt* applied, that the state cannot try Indians for conduct on their lands absent "clear expression of the intention of Congress," 591 U.S. at 929, is a well settled rule of federal law that implements Congress's exclusive constitutional authority over Indian tribes, has been adopted by Congress, and is unaffected by *Castro-Huerta*."); *see* U.S.'s Mot. Prelim. Inj. & Opening Br. Supp. at 1, Dkt. No. 8 (United States seeks preliminary injunction "prohibiting Defendant Iski … from asserting criminal jurisdiction over Indians in Indian country.").

As this Court has recognized, Defendant Iski "contends that this case involves a narrower jurisdictional issue than the request for relief sought by the plaintiffs" and asserts that "the jurisdictional issue should be limited to the consideration of whether the state of Oklahoma has concurrent jurisdiction over offenses committed by non-member Indians of the Indian tribe with jurisdiction to prosecute the crime." Opinion & Order at 3 n.2, Dkt. No. 106 ("Jan. 16 Order"). Defendant Iski's contention does not change the issue that the Nations' complaint or the United States' and Nations' motion for preliminary injunction presents; nor does it change the federal law on which the Nations rely. Congress expressly recognized tribal inherent sovereign authority to exercise criminal jurisdiction over *all* Indians in 25 U.S.C. § 1301(2), and "[s]ection 1301(2)'s reaffirmation of tribal inherent power over Indians in Indian country, without any express authorization for states to also exercise such power, makes tribal authority exclusive of state authority." Nations' PI Br. at 18-19.[2] Thus, this case does not present the "precise same issue" as in *Kunzweiler*.

---

[2] Nor is Defendant Iski correct that the relief sought in this case is limited to Indians "who are alleged to have committed crimes not covered by the Major Crimes Act (MCA) within the Nation's Reservation," Mot. at 3 (quoting *Kunzweiler*, 2025 WL 3124450, at *1). The Nations seek relief from state interference with tribal inherent sovereign authority to exercise jurisdiction over all

Finally, the issue addressed in *Kunzweiler* is not the same as those in this case, as the Nations allege that Defendant Iski is barred from exercising state criminal jurisdiction over Indians in Indian country on grounds not addressed in *Kunzweiler*, *see* Nations' PI Br. at 19-22 (principles of *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164 (1973), preempt state criminal jurisdiction over Indians in Indian country); *id.* at 22-24 (Cherokee Nation's Treaties protect the right to exercise criminal jurisdiction over all Indians within the boundaries of the Cherokee Nation Reservation, exclusive of state authority); *id.* at 16-17, 25 (State is barred from exercising criminal jurisdiction over Indians in Indian country because the State has never acquired jurisdiction over Indian country under Public Law 280); *id.* at 24-25 ("Section one [of the Oklahoma Enabling Act] is a general reservation of federal and tribal jurisdiction over 'Indians, their lands, [and] property,' except as extinguished by the tribes or the federal—not state—government." (quoting *Indian Country, U.S.A., Inc. v. Oklahoma ex rel. Okla. Tax Comm'n*, 829 F.2d 967, 979 (10th Cir. 1987))).

In short, Defendant Iski's motion should be denied because it is based on a false premise. Furthermore, as we show next, even if the Court were to apply the stay factors that Defendant urges, her motion should be denied because it fails to satisfy those factors.

**B.      Defendant Iski Has Not Shown That The Defendant In *Kunzweiler* Is Likely To Prevail On Appeal In The Tenth Circuit.**

Defendant Iski offers nothing to support her view that the defendant in *Kunzweiler* is likely to prevail on appeal other than her own summary of the district court's decision. *See* Mot. at 5-6. Simply describing that decision does not establish that the defendant in *Kunzweiler* is likely to prevail on appeal.[3] At the same time, Defendant Iski ignores the controlling decisions in *McGirt*

---

Indians in Indian country, not just to those who are not covered by the MCA. *See* Nations' Compl. ¶¶ 1, 64, 65; *id.* Prayer for Relief ¶¶ 1, 2.

[3] Nor is that decision binding here. *See Meuers Law Firm, P.L. v. Reasor's, LLC*, No. 16-CV-208-GKF-JFJ, 2020 WL 8717106, at *5 n.4 (N.D. Okla. Sept. 17, 2020) ("A decision of a federal

and *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah* (*Ute VI*), 790 F.3d 1000 (10th Cir. 2015), on which Magistrate Judge Robertson relied in *Muscogee (Creek) Nation v. City of Henryetta*, 809 F. Supp. 3d 1317 (E.D. Okla. 2025) to reject the City's contention that "state or municipal authority can extend into Indian Country without congressional consent." *Id.* at 1324. Defendant Iski further ignores the *Henryetta* court's ruling denying the City of Henryetta's request to stay proceedings in that case pending the appeal in *Kunzweiler*. Order, *Muscogee (Creek) Nation v. City of Henryetta*, slip op. at 1, 6:25-cv-00227-JAR (E.D. Okla. Feb. 10, 2026), Dkt. No. 84.

Instead, Defendant Iski argues that in *Kunzweiler* the district court "found that the U.S. Supreme Court's opinion in *Oklahoma v. Castro-Huerta*, … 'sets forth the preemption analysis by which issues of a State's criminal jurisdiction in Indian country must be evaluated and decided,'" Mot. at 5 (quoting *Kunzweiler*, 2025 WL 3124450, at *2), that "'the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country,'" *id.* (quoting *Castro-Huerta*, 597 U.S. at 637-38), that "State jurisdiction may be preempted '(i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government,'" *id*. (quoting *Castro-Huerta*, 597 U.S. at 638, 652-53), and that "defendant is not preempted by federal law under ordinary principles of federal preemption from asserting concurrent criminal jurisdiction over nonmember Indians charged with committing crimes not covered by the MCA within the Nation's Reservation," *id.*

---

district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011))); *United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020).

The *Henryetta* decision explains why this is wrong.  As the *Henryetta* court held, *Castro-Huerta* "did not disturb the existing framework" set forth in the *McGirt* and *Ute VI* decisions, *Henryetta*, 809 F. Supp. 3d at 1320.  Rather, *Castro-Huerta* held that "Oklahoma could prosecute a non-Indian who committed a crime against an Indian within the Cherokee Nation," *id.* (citing *Castro-Huerta*, 597 U.S. at 632-633), by reasoning "in that limited circumstance … that 'Indian country is part of the State' unless Congress provides otherwise," *id.* (quoting *Castro-Huerta*, 597 U.S. at 637-638).  At the same time,

> [T]he opinion was deliberate in its boundaries.  The majority made clear that the case involved "a crime committed in what is now recognized as Indian country (Tulsa) by a non-Indian (Castro-Huerta) against an Indian (his stepdaughter)." *Id*. at 634.  And the Court expressly disclaimed any ruling on the opposite scenario, stating: "Furthermore, this case does not involve the converse situation of a State's prosecution of crimes committed by an Indian against a non-Indian in Indian country.  We express no view on state jurisdiction over a criminal case of that kind." *Id*. at 650 n. 6.  Nothing in the opinion alters *McGirt*, which the Court acknowledged and which continues to hold that state courts lack jurisdiction to prosecute Indians for conduct occurring in Indian country absent congressional authorization.

*Id.* at 1320-21.

Addressing specifically the sentence in *Castro-Huerta* stating that "the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country," 597 U.S. at 638, the *Henryetta* court held that:

> Viewed in isolation, the sentence reads broadly.  Viewed in context, its limits are unmistakable.  Jurisdiction over territory is not jurisdiction over persons, and the majority guarded that distinction with deliberate care.  The territorial observation merely restates an uncontested premise: a State's borders do not evaporate where Indian country begins.  The power to prosecute Indians within those borders has never flowed from geography.  It flows from Congress alone.  On that question, *McGirt* remains untouched.  The Supreme Court recognized it, cited it, and did not alter a single syllable of its command that States lack criminal jurisdiction over Indians absent congressional authorization.

8

809 F. Supp. 3d at 1321. The *Henryetta* court further held that "[t]he City's theory of 'implicit overruling' contradicts settled law: only the Supreme Court may overrule its own precedents." *Id.* (citing *Agostini v. Felton*, 521 U.S. 203, 237 (1997), and *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016)). "*Castro-Huerta* left *McGirt* untouched; the line remains where Congress drew it." *Id.* These holdings reject Defendant Iski's contention that the defendant in *Kunzweiler* is likely to prevail in the Tenth Circuit. Defendant Iski never even considers them; she simply asks this Court to conclude the district court will be affirmed in *Kunzweiler* because she says so.

Defendant Iski also ignores the arguments the Nations made in their brief in support of the United States' motion for a preliminary injunction, which confirm the correctness of the *Henryetta* court's decision.

The Nations show in their brief in support of the United States' motion, first, that *McGirt* "'require[s] a clear expression of the intention of Congress' before the state or federal government may try Indians for conduct on their lands," 591 U.S. at 929 (quoting *Crow Dog*, 109 U.S. at 572) (alteration in original), and as "Oklahoma doesn't claim to have complied with the requirements to assume jurisdiction voluntarily over Creek lands[,] [n]or has Congress ever passed a law conferring jurisdiction on Oklahoma," *id.* at 932, Oklahoma has no such jurisdiction. *See* Nations' PI Br. at 2-5.

The Nations show, second, that *Castro-Huerta*, has no application here, as it concerned jurisdiction over a non-Indian, said nothing to unsettle, much less overrule, the standard *McGirt* set forth or the conclusions it reached, expressly and repeatedly disclaimed consideration of state criminal jurisdiction over Indians in Indian country, and expressly limited its holding to the question before it, Nations' PI Br. at 5-13; *see Castro-Huerta*, 597 U.S. at 639 n.2 (state prosecutorial authority over Indians who commit crimes in Indian country is "not before us"), *id.*

9

at 650 n.6 (Court "express[ing] no view" on state authority over Indian criminal defendant); *see also id.* at 648 (contrasting the "narrow jurisdictional issue in this case" with state jurisdiction over Indians), *see id.* at 652 (limiting the Court's holding to the question before it). *Kunzweiler* was therefore wrong to hold that *Castro-Huerta* "sets forth the preemption analysis by which issues of a State's criminal jurisdiction in Indian country must be evaluated and decided" with respect to Indians. 2025 WL 3124450, at *2. *McGirt* and *Ute VI* are controlling here and reject Defendant Iski's argument that the defendant in *Kunzweiler* is likely to prevail before the Tenth Circuit.

Third, the Nations show that the result would be the same even assuming *arguendo* that *Castro-Huerta* were applicable here, as the *Castro-Huerta* Court cited *McClanahan* approvingly for the "principle of federal law that … precludes state interference with tribal self-government," *id.* at 639 n.2, and application of the principles of *McClanahan* confirms that State criminal jurisdiction over crimes by Indians in Indian country is preempted by federal law. *See* Nations' PI Br. at 19-25. And that makes consideration of the balancing test set forth in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144-45 (1980), unnecessary, as nothing in *Castro-Huerta*, *Bracker*, or *McClanahan* suggests state jurisdiction must be preempted twice to be effective. *See* Nations' PI Br. at 2. Thus, Defendant Iski is wrong to urge that the legal issue in *Kunzweiler* "is the controlling legal issue here." Mot. at 6. Assuming, only *arguendo*, that the defendant in *Kunzweiler* prevailed before the Tenth Circuit on the issues on which Defendant Iski relies, the Nations' reliance on the principles of *McClanahan* would provide an alternative basis for the Nations to prevail in this case.

For all of these reasons, Defendant Iski's argument that the defendant in *Kunzweiler* is likely to prevail in the Tenth Circuit appeal fails, as does her reliance on the *Kunzweiler* decision to seek a stay in this case.

4904-2300-4578, v. 2

#### C.    Defendant Iski Has Not Shown That She Will Suffer Irreparable Harm Absent A Stay.

Defendant Iski argues that "the State and Defendant Iski will suffer harm resulting from continuing to defend this related action over the exact same legal issue *after already prevailing once in Kunzweiler.*" Mot. at 6 (emphasis added). But neither the State nor Defendant Iski is a party in *Kunzweiler.* Defendant Iski cannot claim harm simply from having to defend in a case brought against her. Accordingly, her argument that "permitting two different cases relating to the same parties and issues to proceed simultaneously in multiple courts 'leads to the wastefulness of time, energy and money,'" Mot. at 6 (quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965)), falls flat.[4]

Defendant Iski also contends that "a stay would promote judicial economy" alleging that "it would save the State and Defendant Iski from *additional time and expense* associated with discovery, motion practice, and/or the conduct of an evidentiary hearing in the instant proceeding." Mot. at 6 (emphasis added). That is wrong for the same reason: neither the State nor Defendant Iski are parties in *Kunzweiler.* And even if Defendant Iski had shown that *additional time and expense* would be incurred if this case goes forward, "considerations [of judicial economy] should rarely if ever lead to such broad curtailment of the access to the courts." *Span-Eng*, 771 F.2d. at 469 (quoting *Chilcott*, 713 F.2d at 1485); *see Dayan-Varnum*, 2025 WL 863390, at *13 (defendant's reliance on the "perceived 'enormous expenditure of time and resources by the Court

---

[4] Defendant Iski's reliance on *Cessna* is misplaced, as the portion of the opinion from which she quotes addressed "[t]he rule [] that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." 348 F.2d at 692 (footnote omitted).

11

and the parties that would essentially be wasted" if a stay was not granted "does not squarely fit in any of the … factors [listed in *United Steelworkers*]").

Defendant Iski further contends that "a stay here would avoid the potential for confusion and inconsistent results." Mot. at 6. That argument fails for three reasons. First, this case concerns Defendant Iski's illegal exercise of state criminal jurisdiction over Indians in Indian country in McIntosh County, *see* Nations' Compl. ¶ 7, Def. Carol Iski Ans. To Pl. Intervenors' Compl. & Aff. Defs. ¶ 7, Dkt. No. 107 ("Iski Ans."), while *Kunzweiler* concerns defendant Steve Kunzweiler's illegal exercise of state criminal jurisdiction over Indians in Indian country in Tulsa County. 2025 WL 3124450 at *1. There is no impermissible inconsistency between each court reaching different results as to different defendants. *See Span-Eng*, 771 F.2d at 468 ("There is nothing impermissibly inconsistent between a finding in Utah that a Utah defendant was guilty of securities fraud and an Arizona finding that an Arizona defendant was not guilty of the same charge."). Second, while the Tenth Circuit will decide the *Kunzweiler* case, its decision may or may not set forth a rule that resolves this case,[5] so any asserted inconsistency is speculative, not real. And third, even if *Kunzweiler* would settle the rule of law in this case, "[o]nly in *rare* circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," *Span-Eng*, 771 F.2nd at 468 (quoting *Landis*, 299 U.S. at 255). There are no such circumstances present here.

**D.    The Nations Will Suffer Irreparable Harm If A Stay Is Granted.**

In considering whether to grant a stay, the Tenth Circuit has also directed courts to consider "whether the issuance of a stay will cause substantial harm to the other parties to the proceeding."

---

[5] A ruling in *Kunzweiler* that states do not have criminal jurisdiction over Indians in Indian country absent express congressional authorization and that Oklahoma lacks such authorization from Congress would resolve this case in the Nations' favor.

12

*Kimery*, 2011 WL 2912696, at \*4 (quoting *United Steelworkers*, 322 F.3d at 1227).  Here it would.

The stay Defendant Iski seeks would have the practical effect of denying the Nations' and the

United States' motion for a preliminary injunction for the duration of *Kunzweiler*'s pendency

before the Tenth Circuit, as it would allow Defendant Iski, for that same period, to illegally

exercise state criminal jurisdiction over Indians in Indian country in the Twelfth Prosecutorial

District of Oklahoma, which includes McIntosh County, which is wholly or partly within the

Cherokee Nation's Reservation, *see* Nations' Compl. ¶ 7, Iski Ans., ¶ 7, without threat of being

enjoined.[6]  As this Court has previously held, "the invasion of tribal sovereignty by the illegal

assertion of state jurisdiction over an Indian defendant constitutes an injury that can be redressed

by a federal court."  Jan. 16 Order at 9 (citing *Ute VI*, 790 F.3d at 1005, and *Wyandotte Nation v.

Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006) (parentheticals omitted)).  In addition, "[t]he state

of Oklahoma's attempt to usurp exclusive tribal jurisdiction over Indians who allegedly commit

crimes within the boundaries of an Indian reservation would constitute a substantial injury

warranting judicial intervention."  *Id.* (footnote omitted).  Defendant Iski ignores this ruling, which

is binding on her.

---

[6] When a stay is granted pending other litigation in an action in which the plaintiff seeks injunctive relief, including a preliminary injunction, the stay acts as a denial of an injunction.  *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-88 (1988) ("[O]verturn[ing] the … *Enelow–Ettelson* rule and hold[ing] that orders granting or denying stays of "legal" proceedings on "equitable" grounds are not automatically appealable under [28 U.S.C.] § 1292(a)(1)," while making clear that "[s]ection 1292(a)(1) will, of course, continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" (quoting *Carson v. American Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955) (some internal quotation marks omitted)).  That would be the case here, where a stay pending the appeal in *Kunzweiler* would deny the Nations injunctive relief until the Court of Appeals resolved a part of the merits question, during which time Defendant Iski would be able to continue to impose the irreparable harms that the Nations' and United States' motion for preliminary injunction seeks to avoid, *see infra* at p. 13.

Furthermore, the grant of a stay here would "infringe[] on the right of reservation Indians to make their own laws and be ruled by them." *McClanahan*, 411 U.S. at 172. A sovereign has no greater power over individuals than the power to establish rules that are punished by imprisonment if violated. Were Defendant Iski permitted to exercise such power over Indians in Indian country within the Twelfth Prosecutorial District, it would subordinate the tribal courts' role in dispensing justice to Indians in Indian country to that of the state courts. That state jurisdiction would be concurrent would make no difference, as state law would control the conduct of Indians in Indian country regardless of what the Nation's laws might provide, and Indians violating state law would risk arrest and imprisonment by the State. "There can be no doubt that to allow the exercise of state jurisdiction [over Indians] would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Williams v. Lee*, 358 U.S. 217, 223 (1959).

### E.    The Public Interest Would Be Served By The Denial Of A Stay.

Denial of the stay Defendant Iski seeks is in the public interest for several reasons. First, supporting tribal self-government is in the public interest. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1253 (10th Cir. 2001); *see Sac & Fox Nation v. LaFaver*, 905 F. Supp. 904, 907-08 (D. Kan. 1995). Second, if a stay were granted, it would have the practical effect of denying the Nations' and United States' motion for a preliminary injunction and would enable Defendant Iski to continue to prosecute Indians for crimes allegedly committed in Indian country in the Twelfth Prosecutorial District in violation of federal law. And the public interest is served by enjoining ultra vires actions of a state officer. *See Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010). Third, "[a]lthough the state has an important interest in prosecuting crimes within its jurisdiction, this does not minimize the significant federal and tribal interests in

14

correctly determining relevant jurisdictional limitations applicable to each sovereign." Jan. 16 Order at 17.

## CONCLUSION

For the foregoing reasons, the Nations submit that Defendant Iski's motion for a stay should be denied.

Dated: April 15, 2026

Respectfully submitted,

By: */s/ Frank S. Holleman*

Frank S. Holleman
Douglas B. L. Endreson
SONOSKY, CHAMBERS, SACHSE,
  ENDRESON & PERRY, LLP
1425 K St. NW, Suite 600
Washington, DC 20005
Tel: 202-682-0240
E-mail:  fholleman@sonosky.com
       dendreso@sonosky.com

*Counsel for the Cherokee Nation and Choctaw
  Nation of Oklahoma*

Chad Harsha
*Attorney General*
CHEROKEE NATION
OFFICE OF ATTORNEY GENERAL
P.O. Box 1533
Tahlequah, OK 74465
Tel: 918-453-5369
E-mail: chad-harsha@cherokee.org

R. Trent Shores
GABLEGOTWALS
110 N. Elgin Avenue, Suite 200
Tulsa, OK 74120
Tel: 918-595-4800
E-mail: tshores@gablelaw.com

Stephen Greetham
GREETHAM LAW, PLLC
621 Greenwood Road
Chapel Hill, NC 27514
Tel: 580-399-6989
E-mail: sgreetham@greethamlaw.net

*Counsel for the Cherokee Nation*

15

4904-2300-4578, v. 2

Michael Burrage
WHITTEN BURRAGE
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Tel: 405-516-7800
E-mail: mburrage@whittenburragelaw.com

Brian Danker
*Senior Executive Officer*
DIVISION OF LEGAL & COMPLIANCE
CHOCTAW NATION OF OKLAHOMA
1802 Chukka Hina Drive
Durant, OK 74701
Tel: 580-642-7423
E-mail: bdanker@choctawnation.com

*Counsel for the Choctaw Nation of Oklahoma*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2026, I electronically filed the above and foregoing document with the Clerk of Court via the ECF System for filing.

/s/ Frank S. Holleman
Frank S. Holleman

4904-2300-4578, v. 2