IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>CHEROKEE NATION, and<br>CHOCTAW NATION OF OKLAHOMA,<br><br>*Intervenor Plaintiffs*,<br><br>and<br><br>MUSCOGEE (CREEK) NATION,<br><br>*Consolidated Plaintiff*,<br><br>v.<br><br>CAROL ISKI, District Attorney for the<br>Twenty-Fifth Prosecutorial District of<br>Oklahoma, in her official capacity,<br><br>*Defendant*. | Case No. 24-CV-0493-CVE<br>(<u>BASE FILE</u>)<br><br>Consolidated with:<br>Case No. 25-CV-0028-CVE |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY**

Defendant District Attorney for the Twenty-Fifth Prosecutorial District of Oklahoma Carol Iski (hereinafter, "Defendant") filed a motion to stay this proceeding during the pendency of an appeal in *Muscogee (Creek) Nation v. Kunzweiler*, No. 26-5013 (10th Cir.) (appeal filed Jan. 29, 2026). ECF No. 115. That motion should be denied. Defendant has not met her burden of showing that her position on the merits is likely to prevail in *Kunzweiler* in the Tenth Circuit, nor has Defendant shown that she will suffer irreparable harm absent a stay. In contrast, a stay in this case would cause further harm to the United States and the public interest. For these reasons and the reasons stated below, Defendant's motion should be denied.

1

**PROCEDURAL HISTORY**

On December 23, 2024, the United States filed this action against Defendant, alleging that Defendant's assertion that the State of Oklahoma has criminal jurisdiction over Indians in Indian country violates longstanding federal law. ECF No. 2 at 1 ¶ 2. The United States asked this Court to declare that the State of Oklahoma—and thus Defendant—lacks criminal jurisdiction over Indians for conduct occurring in Indian country, and to preliminarily and permanently enjoin Defendant from asserting such jurisdiction absent express authorization from Congress. *Id*. at 15 ¶ 44a-b. The Court consolidated the Muscogee (Creek) Nation's lawsuit against Defendant, Case No. 25-cv-0028-CVE (E.D. Okla.), with this case, ECF No. 56, and granted the Cherokee Nation and Choctaw Nation of Oklahoma's ("Intervening Tribes") Motion to Intervene as Plaintiffs. ECF No. 61.

On February 13, 2025, the Muscogee (Creek) Nation sued District Attorney for the Fourteenth Prosecutorial District of Oklahoma Steve Kunzweiler and Tulsa County Sherriff Vic Regalado, among others, alleging that the defendants were asserting criminal jurisdiction over Indians within the Creek Reservation in violation of federal law. *Muscogee (Creek) Nation v. Kunzweiler*, No. 4:25-cv-00075 (N.D. Okla.). On November 7, 2025, after an evidentiary hearing, the district court in *Kunzweiler* issued an opinion and order denying the Muscogee (Creek) Nation's motion for preliminary injunction. The court held that the State of Oklahoma is not preempted from exercising criminal jurisdiction over nonmember Indians (*i.e.*, Indians who commit crimes on reservations that are not their own) charged with committing crimes not covered by the Major Crimes Act, 18 U.S.C. § 1153, within Indian country. *Muscogee (Creek) Nation v. Kunzweiler*, No. 4:25-cv-00075, 2025 WL 3124450, at *4-5 (N.D. Okla. Nov. 7, 2025) (hereinafter, "*Kunzweiler Order*"). And the court agreed with the defendants that *Oklahoma v.*

*Castro-Huerta*, 597 U.S. 629, 654-58 (2022), and not *McGirt v. Oklahoma*, 591 U.S. 894, 897 (2020) or other prior Supreme Court or Tenth Circuit precedent, provided the correct framework "by which issues of a State's criminal jurisdiction in Indian country must be evaluated and decided." *Kunzweiler Order* at *2. Accordingly, the court started from the presumption of state jurisdiction over Indians in Indian country—contrary to decades of Supreme Court and Tenth Circuit precedent—which it said may be rebutted by a showing of preemption by "federal law under ordinary principles of federal preemption," or "when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id.* (quoting *Castro-Huerta*, 597 U.S. at 638, 652-53). The court then held that the defendants were not preempted from exercising criminal jurisdiction over nonmember Indians for non-major crimes within Indian country because the Muscogee (Creek) Nation did not show preemption under any federal law, and because the Nation "ha[d] not met its burden of showing the exercise of concurrent criminal jurisdiction over nonmember Indians unlawfully infringes on tribal self-government." *Id*. at *4.

The *Kunzweiler* parties filed a joint status report on December 29, 2025, stating that the *Kunzweiler Order* decided the controlling issues in the case and requesting that the Court enter final judgment. The court entered final judgment on December 30, 2025, and the Muscogee (Creek) Nation appealed to the Tenth Circuit. *Muscogee (Creek) Nation v. Kunzweiler*, No. 26-5013 (10th Cir.) (filed Jan. 29, 2026). The Nation's opening brief is due April 29, 2026. Neither the United States, Intervening Tribes, nor Defendant are parties to *Kunzweiler*.

## LEGAL STANDARD

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). A stay is "not a matter of right" but is instead "an exercise of judicial discretion," where "the propriety of its issue is dependent upon the circumstances of the

3

particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672-73 (1926)). The Court must consider the four traditional stay factors to resolve Defendant's motion: (1) whether Defendant has "made a strong showing that [her position] is likely to succeed on the merits" in the related proceeding; (2) "whether [Defendant] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434; *see also United Steelworkers of America v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). "The first two factors of the traditional standard are the most critical" in determining whether a stay is appropriate. *D.B.U. v. Trump*, No 25-1164, 2025 WL 1233583, at *1 (10th Cir. April 29, 2025). The third and fourth factors "merge" when the Government is the party opposing the stay. *Nken*, 556 U.S. at 418, 435. Defendant's burden is stringent: "[o]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

## ARGUMENT

### I.    DEFENDANT HAS NOT SHOWN THAT HER POSITION IS LIKELY TO PREVAIL IN THE RELATED PROCEEDING

For the first factor, the Court must consider whether Defendant has made a "strong showing" that her position is likely to prevail in the Tenth Circuit in *Kunzweiler*. *Nken*, 556 U.S. at 434. Defendant has failed to make such a showing. In fact, as the United States has addressed in prior briefing, *see* ECF No. 8 (United States' Mot. for Prelim. Inj. and Opening Br. in Supp.), both Supreme Court and Tenth Circuit case law forecloses Defendant's position that the State of Oklahoma has criminal jurisdiction over Indians in Indian country, including nonmember Indians, absent congressional authorization.

4

The Supreme Court has long recognized the rule that, except as authorized by Congress, states lack criminal jurisdiction over crimes committed by Indians in Indian country. *McGirt*, 591 U.S. at 929 ("this Court has long 'require[d] a clear expression of the intention of Congress before the state or federal government may try Indians for conduct on their lands" (citing *Ex parte Crow Dog*, 109 U.S. 556, 572 (1883)); *Hagen v. Utah*, 510 U.S. 399, 408 (1994) (assuming State of Utah lacked jurisdiction to prosecute a nonmember Indian for a crime committed within Indian country "[b]ecause Congress has not granted criminal jurisdiction to the State of Utah to try crimes committed by Indians in Indian Country").[1] Likewise, the Tenth Circuit has made clear for decades that "a state and its subdivisions generally lack authority to prosecute Indians for criminal offenses arising in Indian country." *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1006 (10th Cir. 2015); *see also United States v. Sands*, 968 F.2d 1058, 1061-63 (10th Cir. 1992) (Oklahoma has "not taken the affirmative steps necessary" to assume criminal jurisdiction over Indians in Indian country, and thus the State does not have such jurisdiction).[2] The longstanding rule—in Oklahoma and nationwide—is that states lack criminal jurisdiction over Indians in Indian country unless Congress says otherwise.

---

[1] *See also United States v. Antelope*, 430 U.S. 641, 643 n.2 (1977) ("Except for the offenses enumerated in the Major Crimes Act," which are subject to exclusive federal jurisdiction, "all crimes committed by enrolled Indians against other Indians within Indian country are subject to the jurisdiction of tribal courts."); *Keeble v. United States*, 412 U.S. 205, 209-12 (1973) (discussing understanding that states lacked jurisdiction over crimes by Indians in Indian country).

[2] *See also United States v. Little*, 119 F.4th 750, 763, 766 (10th Cir. 2024) (recognizing that state police lacked jurisdiction to investigate Indian suspect for offence committed within Indian country); *Ross v. Neff*, 905 F.2d 1349, 1352-53 (10th Cir. 1990) (state authorities do not have criminal jurisdiction over Indians in Indian country, even where the state alleges such assertion of jurisdiction "would not undermine tribal or other federal interests"); *United States v. Hopson*, 150 F.4th 1290, 1299 (10th Cir. 2025) (the Supreme Court requires "a clear expression of the intention of Congress" before the state or federal government may prosecute crimes committed by Indians on tribal lands ).

*Castro-Huerta* did not directly deal with any of the binding precedent listed above, much less change any of it, and neither federal district courts nor federal courts of appeal may assume that the Supreme Court overruled its prior case law *sub silencio*. *E.g.*, *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016). Instead, courts should harmonize *Castro-Huerta* with this substantial body of prior case law, which supports limiting *Castro-Huerta* to its facts: that states have concurrent jurisdiction over *non-Indians* unless preempted by federal law. That proposition has no bearing on this case or on state jurisdiction over *Indians*. Indeed, the arguments Defendant makes here have been rejected elsewhere, including in a recent decision in another district court in Oklahoma. *Muscogee (Creek) Nation v. City of Henryetta*, 809 F. Supp. 3d 1317, 1320 (E.D. Okla. 2025) ("criminal jurisdiction over Indians is exclusive by constitutional design, not balance"). There, the court correctly held that *Castro-Huerta* "did not disturb the existing framework" that states lack criminal jurisdiction over Indians in Indian country, including nonmember Indians, absent congressional approval. *Id.*; *see also* ECF No. 8 at 13-20 (United States' Mot. for Prelim. Inj. and Opening Br. in Supp, explaining that *Castro-Huerta* is inapposite to cases dealing with state jurisdiction over Indians in Indian country, including nonmember Indians). Rather, *Castro-Huerta* considered only the "narrow jurisdictional issue" of "the State's exercise of jurisdiction over crimes committed by *non-Indians* against Indians in Indian country." 597 U.S. at 648, 653 (emphasis added). The Supreme Court specifically and repeatedly disclaimed any intent to address state jurisdiction over Indians in Indian country. *Id.* at 639 n.2, 650 n.6. Again, because *Castro-Huerta* did not expressly overrule longstanding Supreme Court precedent holding that states lack criminal jurisdiction over Indians in Indian country, but in fact expressly stated that it was not doing so, this Court must reject Defendant's argument that *Castro-Huerta* did so implicitly. *See, e.g.*, *Bosse*, 580 U.S. at 3; *Agostini v. Felton*,

521 U.S. 203, 237 (1997); *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023). And Defendant entirely ignores the other cases holding that *Castro-Huerta* does not apply beyond the context of non-Indians.

Simply put, the principle that "States lack criminal jurisdiction over Indians in Indian country absent congressional authorization" is binding federal law in Oklahoma and nationwide. *City of Henryetta*, 809 F. Supp. 3d at 1320 (holding at 12(b)(6) stage that the City of Henryetta, Oklahoma, does not have criminal jurisdiction over Indians in Indian country, explaining that "th[e] Court will not pretend settled precedent is an open question"). Defendant simply cannot make a "strong showing" of likely success on the merits when faced with this wall of binding case law foreclosing her position. *See Banks v. Gonzales*, No. 05-CV-278-TCK(PJC), 2006 WL 8458204, at *1 (N.D. Okla. March 29, 2006) (the movant could not make a "showing of likelihood of success on appeal based on the lack of existing case law in support of [movants'] position").[3]

---

[3] Consistent with this case law, the United States' position is that, as a rule, states do not have criminal jurisdiction over Indians in Indian country absent express authorization from Congress. And because Defendant lacks such authorization from Congress, her exercise of such jurisdiction violates federal law. This is true without reference to the "two independent but related barriers" to state authority set out in W*hite Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980). In the civil/regulatory context, and in cases involving *non-Indians*, where state authority is already established, state authority may nevertheless be barred where it interferes with tribal self-government, or where the federal and tribal interests in the activity outweigh the state or local interests in regulating the activity. But even if the Court were to rule against Plaintiffs on this threshold legal question (*i.e.*, that Defendant has presumptive concurrent criminal jurisdiction) and that the *Bracker* balancing and infringement frameworks apply, then the United States would be prepared to demonstrate why state jurisdiction is nevertheless preempted in this case. Thus, Defendant is not likely to prevail, even under her own proffered framework.

## II.   DEFENDANT FAILED TO SHOW THAT SHE WILL SUFFER IRREPARABLE INJURY ABSENT A STAY

Defendant must show that she will be "irreparably injured absent a stay." *Nken*, 556 U.S. at 426; *see also id*. at 434-35 (simply showing some "*possibility* of irreparable injury" fails to satisfy second factor (emphasis added)).[4] Defendant's arguments on this factor fall well short.

Defendant asserts "harm" in the form of having to continue to defend herself in this case, through discovery, motions practice, and potentially evidentiary hearings, "after already prevailing once in *Kunzweiler*." ECF No. 115 at 6. First, Defendant was not a party in *Kunzweiler*. Second, as the Supreme Court has explained, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *Renegotiations Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) (same); *see also Stifel, Nicolaus & Co. v. Woolsey & Co.*, 43 F.3d 1483, at *2 (10th Cir. 1994) (same); *In re Boiler Chicken Grower Antitrust Litig. (No. II),* MDL No. 6:20-md-2977-RJS-CMR, 2024 WL 3223665, at *2 (E.D. Okla. June 7, 2024) (holding that expense of litigation did not constitute irreparable injury); *Hatten-Gonzales v. Scrase*, No. 88-0385 KG/GBW, 2023 WL 3204577, at *2 (D.N.M. May 2, 2023) (incurring the time and expense of briefing is an insufficient basis for a stay).[5]

Defendant's only other attempts to show irreparable injury are nonspecific references to "potential for confusion and inconsistent results." ECF No. 115 at 6. But a ruling by this Court

---

[4] Defendant gets the standard wrong; the question is not whether Defendant will "suffer harm," but whether she will be "*irreparably*" harmed or injured absent a stay. *See* ECF No. 115 at 6.

[5] Even if this Court does find that litigation expenses of the type Defendant would incur here are injurious to Defendant, the monetary expense may not be an "irreparably injury" because Defendant may be able to recover some costs under governing sources of law. *See* Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 2412.

on the merits while the Tenth Circuit considers *Kunzweiler* would not irreparably injure Defendant. If this Court rules in favor of Plaintiffs, then Defendant must abide by federal law and the Court's orders, which she is required to do in any event. That cannot be said to be irreparable harm. Moreover, in that scenario, a later ruling by the Tenth Circuit in *Kunzweiler* in favor of Defendant's position would "undo any [purported] harm done by the enforcement of this Court's judgement." *Brent Electric Co., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 584*, No. 4:21-cv-00246-CRK-CDL, 2024 WL 66039, at *5 (N.D. Okla. Jan. 5, 2024). If this Court rules that the State does have presumptive criminal jurisdiction over Indians in Indian country and that presumptive jurisdiction is not preempted, Defendant can continue with her prosecutions, which, as far as the United States is aware, she has continued to do during the pendency of this litigation anyway.[6]

Defendant pleads that a stay would benefit this Court's determination of the issues, since a decision by the Tenth Circuit in *Kunzweiler* will "address the precise issue here." ECF No. 115 at 6. But if Defendant's desire is for this Court to have the benefit of a "binding appellate decision" that "speaks directly" to the State's criminal jurisdiction over Indians in Indian country, *id*. at 6, then no stay is required, as the Tenth Circuit has already provided such clarity.

---

[6] Contrary to Defendant's portrayal of jurisdictional confusion and inconsistent rulings, the law has been, both nationwide and within Oklahoma, that states do not have criminal jurisdiction over Indians in Indian country. *City of Henryetta*, 809 F. Supp. 3d at 1320 (rules regarding criminal jurisdiction in Indian country did not "originate with" *McGirt*). To be sure: even pre-*McGirt*, Oklahoma disclaimed and did not exercise criminal jurisdiction over Indians in Indian country, including on parcels of land that were undisputedly Indian country under 18 U.S.C. § 1151 prior to *McGirt*. This purported confusion over state jurisdiction comes only after various district attorneys and municipalities in Oklahoma, including Defendant and District Attorney Kunzweiler, began asserting jurisdiction over Indians in Indian country, contrary to what other state and local officials were doing and contrary to longstanding federal law. Defendant should thus not be allowed to create jurisdictional confusion and then cite to that manufactured confusion to argue for a stay here.

*E.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation*, 790 F.3d at 1006; *Little*, 119 F.4th at 763, 766; *Sands*, 968 F.2d at 1061-63; *Ross*, 905 F.2d at 1352-53. There is simply no reason to wait for "clarification" where the Tenth Circuit has already answered the questions presented here, and this Court should not "pretend settled precedent is an open question." *City of Henryetta*, 809 F. Supp. 3d at 1324. Although Defendant may hope an en banc Tenth Circuit overrules its prior precedent, *see United States v. Doe*, 865 F.3d 1295, 1298 (10th Cir. 2017) ("[I]n the absence of en banc consideration, one panel of this court generally can't overturn the decision of another panel." (internal quotations omitted)), the United States should not have its case put on hold to see if the law changes at some future date.

Finally, Defendant's argument that a stay would promote "judicial economy" cannot carry the day. *See* ECF No. 115 at 6. While a stay would suspend the expenditure of judicial resources, that alone cannot be enough for issuance of a stay considering the countervailing interest in allowing the nonmovant access to the judicial system. *United States v. Carey*, 664 Fed. App'x 716, 719 (10th Cir. 2016) ("[C]onsiderations of judicial economy should rarely if ever lead to such broad curtailment of the access to the courts." (quoting *Span–Eng Assocs. v. Weidner*, 771 F.2d 464, 469 (10th Cir. 1985) (collecting cases)). This is particularly true where the United States is substantially harmed with each day that this case does not find resolution. *See infra* Part III.

Because Defendant has failed to prove the first two of the stay factors, which are the "most critical," *Nken,* 556 U.S. at 434, this Court can deny Defendant's motion without addressing the other factors, *id.* at 435. In the event the Court does consider the final two factors, however, those too demonstrate that a stay is not justified.

10

### III.   THE UNITED STATES WILL BE SUBSTANTIALLY INJURED BY A STAY, AND THUS A STAY IS NOT IN THE PUBLIC INTEREST

Defendant bears the burden of establishing the absence of harm to the United States should her motion to stay be granted. Because the government is the nonmoving party, the fourth factor—the public interest—"merges" with this third factor. *Nken*, 556 U.S. at 434. Defendant merely states that "Plaintiffs would not suffer any undue prejudice or hardship as a result of a stay" because "Plaintiffs also seek to reduce cost and expense by postponing discovery, motion practice, and or the need for an evidentiary hearing by focusing on a single legal issue," citing to the parties' Joint Status Report (ECF No. 113). ECF No. 115 at 7. This argument is confused and fails to carry Defendant's burden.

To begin, as the United States argued in its *Motion for Preliminary Injunction and Opening Brief in Support*, each day that Defendant unlawfully asserts criminal jurisdiction over Indians in Indian country, the United States will suffer and is suffering substantial harm both as trustee for federally recognized tribes and as a prosecuting authority itself within Indian country. ECF No. 8 at 27. The Tenth Circuit has "repeatedly stated that  . . . an invasion of tribal sovereignty can constitute irreparable injury." *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1251-52, 1255 (10th Cir. 2006). That injury is implicated here because the United States has a special relationship with Indian tribes and has long been "committed to a policy of supporting tribal self-government and self-determination." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 856 & n.20 (1985). Defendant has admitted to prosecuting Indians in Indian country and has given no indication that she intends to stop. ECF No. 107 at 3-4 ¶ 6 (Defendant's Answer to United States' Compl.). In short, Defendant continues to prosecute Indians for conduct occurring in Indian country in violation of federal law, and "there's just no room to debate whether [Defendant's] conduct 'create[s] the prospect of significant interference

11

with [tribal] self-government' that [the Tenth Circuit] has found sufficient to constitute 'irreparable injury.'" *Ute Indian Tribe*, 790 F.3d at 1006 (quoting *Prairie Band of Potawatomi v. Pierce*, 253 F.3d 1234, 1250-51 (10th Cir. 2001)). Just as the United States is harmed each day that Defendant's unlawful assertions of jurisdiction are not enjoined, the United States would be substantially harmed by pausing the case through a stay, thus prolonging that harm.

Further, issuance of a stay will also cause substantial injury to the United States itself as a prosecuting sovereign in Indian country. *See* ECF No. 8 at 29. Congress has "plenary and exclusive" responsibility over Indian affairs, which includes the regulation of relationships with Indian tribes and people. *See Haaland v. Brackeen*, 599 U.S. 255, 272-73 (2023). The states, on the other hand, do not and cannot enjoy that responsibility under the structure of the U.S. Constitution. And contrary to Defendant's position, *Castro-Huerta* did not disrupt that constitutional structure. *See City of Henryetta*, 809 F.Supp.3d at 1320-21 (*Castro-Huerta* "did not disturb the existing framework"). Defendant's assertion of criminal jurisdiction over Indians in Indian country thus usurps that exclusive federal responsibility, as well as the United States' prosecutorial authority in Indian country, which Congress has carefully crafted over decades through numerous federal statutes, including the Major Crimes Act and Public Law 280.[7]

Defendant cites to the parties' Joint Status Report, ECF No. 113, arguing that the United States' purported desire to "reduce cost and expense by postponing discovery, motion practice, and of the need for an evidentiary hearing by focusing on a single legal issue" weighs in favor of

---

[7] Nor does the *Kunzweiler* appeal adequately protect the United States' interests because the United States is not a party to that case. As this Court recognized in denying Defendant's motion to dismiss, the United States has shown that it has a "significant interest in preventing allegedly unlawful state intrusion on their sovereignty," and "the filing of an amicus brief is not an adequate substitute for the filing a lawsuit." ECF No. 106 at 10. The United States can only adequately protect its interests if this case where it is a party is allowed to proceed.

her motion for stay. ECF No. 115 at 7. But the opposite is true. As set forth in the Joint Status Report, the United States' position is that "the issue presented in this case—whether Defendant violates federal law by prosecuting Indians for crimes committed in Indian country—is a legal issue that can be resolved without an evidentiary hearing or fulsome factual record." ECF No. 113 at 2. That is, the United States wishes to *expedite* the case because each day that Defendant's conduct is not enjoined harms the United States, and the legal question at issue is squarely resolved by existing Tenth Circuit precedent. Later briefing would only be required if the Court concludes that the State has presumptive concurrent criminal jurisdiction over Indians in Indian country and the "two independent but related barriers" to state authority set out in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980), must be applied and analyzed, *see* ECF No. 133 at 3-4. And contrary to the United States' desire for expedited resolution of this case, a stay would postpone final resolution, causing further and substantial injury to the United States as trustee for tribes and as a prosecuting sovereign in Indian country.[8]

Finally, Defendant argues that "the public interest is best served by permitting the State to focus on public safety and criminal justice within its territory and to avoid the additional time and expense of defending yet another [legal] action[.]" ECF No. 115 at 7. But just as the "enforcement of an unconstitutional law is always contrary to the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013), Defendant's assertion of criminal jurisdiction over

---

[8] Moreover, the Tenth Circuit's decision in *Kunzweiler* may not resolve all the issues in this case. The *Kunzweiler Order* deals only with state criminal jurisdiction over nonmember Indians for non-major crimes in Indian country, and thus the Tenth Circuit's ruling in *Kunzweiler* is likely to be so limited as well. Conversely, the United States' complaint is not so limited, instead seeking declaratory judgment that Defendant lacks criminal jurisdiction over all Indians for any alleged crimes in Indian country. If the Tenth Circuit's decision in *Kunzweiler* does not speak to all facets of the issue presented in this case, further briefing may be needed even after the *Kunzweiler* appeal concludes.

Indians in Indian country in violation of federal law is also contrary to the public interest. The public is not served by Defendant usurping federal authority. Moreover, the Tenth Circuit has already held that the public's interest in the federal policy of ensuring tribes do not suffer interference with their maintenance and development of strong self-government outweighs any concern by the State in "ensuring safety." *Ute Indian Tribe*, 790 F.3d at 1007 (the state's concern about public safety "is not as portentous as [they] would have it" (quoting *Prairie Band of Potawatomi*, 253 F.3d at 1253)).

## CONCLUSION

For all these reasons, Defendant's Motion to Stay (ECF No. 115) should be denied. The only way to stay final resolution of this case without causing injustice and substantial harm to the United States and public is if the Court enjoins Defendant from prosecuting Indians, member and nonmember alike, for any crime alleged to have occurred in Indian country during the pendency of the *Kunzweiler* appeal.

DATED: April 15, 2026                    Respectfully submitted,


                                         ADAM R.F. GUSTAFSON
                                         Acting Assistant Attorney General


                                         */s/ Hillary Hoffman*
                                         HILLARY HOFFMAN
                                         CODY MCBRIDE
                                         United States Department of Justice
                                         Environment & Natural Resources Division
                                         Tribal Resources Section
                                         P.O. Box 7611, Ben Franklin Station
                                         Washington, D.C. 20044
                                         Tel.: (202) 598-3147 (Hoffman)
                                         Tel.: (202) 514-6755 (McBride)
                                         Fax: (202) 353-1156
                                         hillary.hoffman@usdoj.gov
                                         cody.mcbride@usdoj.gov


OF COUNSEL:
CONOR CLEARY, Field Solicitor, Tulsa Field Solicitor's Office
United States Department of the Interior
Office of the Solicitor


                                         *Attorneys for United States of America*


15

**CERTIFICATE OF SERVICE**

I certify that on April 15, 2026, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, which will serve and send a notice of electronic filing to all parties or their counsel of record.

/s/ Hillary Hoffman
HILLARY HOFFMAN

16