**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,

       *Plaintiff*,

and

CHEROKEE NATION and
CHOCTAW NATION OF OKLAHOMA,

       *Intervenor Plaintiffs*,

and

MUSCOGEE (CREEK) NATION,

       *Consolidated Plaintiff*,

v.

CAROL ISKI,

       *Defendant*.

Case No. 24-CV-0493-CVE
(<u>BASE FILE</u>)

Consolidated with:
Case No. 25-CV-0028-CVE

**PLAINTIFF MUSCOGEE (CREEK) NATION'S**
**RESPONSE TO DEFENDANT'S MOTION TO STAY**

District Attorney Iski (the "District Attorney") moves to stay this case "during the pendency of an appeal in a related matter before the Tenth Circuit Court of Appeals in *Muscogee (Creek) Nation v. Kunzweiler*, Case No. 26-5013[.]" Def.'s Mot. To Stay (Dkt. 115) ("Mot.") at 1. For the reasons set forth below, the District Attorney's Motion should be denied.

## I.       Legal Standard

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also D.B.U. v. Trump*, No. 25-1164, 2025 WL 1233583, at *1 (10th Cir. Apr. 29, 2025) (similar). A familiar four-factor test governs whether a movant has established such need where it argues that a matter should be stayed in deference to another proceeding: (1) whether the movant's position is "likely to prevail in the related proceeding;" (2) whether the movant "will suffer irreparable harm" absent the stay; (3) "harm to the other parties to the [instant] proceeding" if the stay issues; and (4) "the public interests at stake." *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). "The first two factors … are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). If a movant fails to meet them, the Court need not address the others. *See id*. at 435 ("*Once an applicant satisfies the first two factors*, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." (emphasis added)).

## II.      The District Attorney Has Not Shown that Her Position Is Likely To Prevail in the *Kunzweiler* Appeal.

Under the first factor, the Court considers whether the movant "has made a *strong showing*," *id.* at 434 (emphasis added) (quotation marks omitted), that its position is "likely to prevail in the related proceeding," *United Steelworkers*, 322 F.3d at 1227. Although the District Attorney's position regarding concurrent state criminal jurisdiction over non-member Indians prevailed before the district court in *Kunzweiler*, the District Attorney has not made and cannot

1

make a strong showing that her position is likely to prevail before the Tenth Circuit. As an initial

matter, while the District Attorney acknowledges that the decision in *Kunzweiler* pertains only to

the prosecution of non-member Indians, Mot. 2–3, she ignores that the Nation's requested relief

"clearly state[s] that [the Nation is] seeking a ruling that the state of Oklahoma has no

prosecutorial authority over any Indian in Indian country," Op. and Order (Dkt. 106) at 9 n.6.

Moreover, the District Attorney—who, again, bears the burden here—simply recounts

the reasoning of the district court in *Kunzweiler* regarding the implications of *Oklahoma v.

Castro-Huerta*, 597 U.S. 629 (2022), for state jurisdiction over non-member Indians and makes

no attempt whatsoever to defend that reasoning, *see* Mot. 5–6. With respect, neither the district

court in *Kunzweiler* nor the District Attorney here has grappled with the long-settled principles

and numerous controlling Supreme Court and Tenth Circuit precedents that the Nation has

presented as to why *Castro-Huerta*—which emphatically and repeatedly disclaims any intent to

reach the issue of state criminal jurisdiction over Indians—does not and cannot control the

outcome of this case. *See* Nation's Prelim. Inj. Mot. (Dkt. 57) at 5–18; Motion of the Muscogee

(Creek) Nation for Preliminary Injunction and Opening Brief in Support, *Muscogee (Creek)

Nation v. Ballard*, Case No. 24-cv-0626-CVE-SH (N.D. Okla. Jan. 29, 2025), at 5–19.[1]

Indeed, in her motion the District Attorney nowhere accounts for this Court's clear

recognition, in denying her recent motion to dismiss, that *Castro-Huerta* does not upend the

settled rule that states lack criminal jurisdiction over Indians in Indian country absent

congressional assent:

> States have criminal jurisdiction over all of the territory within their state,
> including Indian reservations, except to the extent that such jurisdiction is
> preempted by federal law. *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 637 (2022)

---

[1] Because the District Attorney has not addressed any of the arguments set forth in those filings, the Nation incorporates them here to avoid burdening the Court with duplicative briefing.

> (explaining that states have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country). ***However***, the Supreme Court requires a "clear expression of the intention of Congress" before the state or federal government may prosecute crimes committed by Indians on tribal lands, as the power to punish tribal members and enforce tribal laws is part of a tribe's retained sovereignty.

Dkt 106 at 8–9 (emphasis added) (quoting *United States v. Hopson*, 150 F.4th 1290, 1299 (10th Cir. 2025) (quoting *McGirt v. Oklahoma*, 591 U.S. 894, 929 (2020))); *see also* Opinion and Order Denying the Motion To Dismiss, *Muscogee (Creek) Nation v. City of Henryetta*, 25-CV-227 (E.D. Okla. Nov. 18, 2025), at 4–5 ("Nothing in the opinion alters McGirt …. What Castro-Huerta decided for non-Indian offenders is the only question it answered…. A court that 'expresses no view' leaves no room for creative expansion. What the Supreme Court declined to decide is just as binding as what it did. Silence is not sanction.").

To accept the District Attorney's argument that *Castro-Huerta* dictates an outcome in her favor in the Tenth Circuit, the Circuit would need to disregard the principle that lower courts may not hold that a later Supreme Court decision (such as *Castro-Huerta*) overruled a prior decision (such as *McGirt*) by implication, and the parallel rule that the Tenth Circuit applies to its own precedents. *See* 57 at 7–9.

In sum, the District Attorney's bare recitation of the district court's decision in *Kunzweiler* hardly amounts to the "strong showing" of success on the appeal from that decision, *Nken*, 556 U.S. at 434, given that the *Kunzweiler* court departed so sharply from long-accepted principles of law that this Court has recognized as relevant to the proper disposition of this case. *See also id*. ("It is not enough that the chance of success on the merits be better than negligible." (quotation marks omitted)).

**III.    The District Attorney Has Not Shown that She Will Suffer Irreparable Harm Absent a Stay.**

To satisfy the irreparable harm prong, the District Attorney baldly asserts that "[a]bsent a stay, the State and Defendant Iski will suffer harm resulting from continuing to defend this related action over the exact same legal issue" on appeal in *Kunzweiler*, and that, "[b]y contrast, a stay would promote judicial economy." Mot 6. Setting aside the member-Indian aspect of this case that was not addressed in *Kunzweiler*, this argument is patently insufficient to show irreparable harm. Courts applying the four-factor stay test "often do not consider litigation-related burdens … from the continued District Court proceedings … to constitute irreparable harm." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746 (2023). Indeed, it is well-settled that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury" for purposes of that test, *id*. (quoting *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)); *see also, e.g.*, *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 43 F.3d 1483, at *2 (10th Cir. 1994) (same); *In re Broiler Chicken Grower Antitrust Litig. (No II)*, MDL No. 6:20-md-2977-RJS-CMR, 2024 WL 3223665, at *3 (E.D. Okla. June 7, 2024) (same).

Nor has the District Attorney cited any support for the claim that there is a risk of "inconsistent results" if this Court reaches a conclusion contrary to that of the District Court in *Kunzweiler*, Mot. 6. The Tenth Circuit's decision—however it might come out—cannot possibly cause irreparable harm. Should the Circuit issue an opinion that undermines or contradicts an opinion or order of this Court, the Circuit's decision will control. The mere possibility that this Court's orders could potentially be reversed or modified by a controlling ruling of a higher court is an inherent possibility in every lower court proceeding and is self-evidently no basis for a district court to refrain from ruling in the first instance.

*    *    *

4

Because "[t]he first two factors … are the most critical," *Nken*, 556 U.S. at 434, the District Attorney's failure to meet them obviates the need for this Court to address the others, *see id*. at 435. Should the Court nevertheless consider them, they likewise demonstrate that the District Attorney has fallen far short of meeting her burden to show that a stay should issue.

**IV.    The District Attorney Has Failed To Show an Absence of Harm to the Nation Should a Stay Be Granted.**

The District Attorney bears the burden to establish the absence of harm to the Nation should a stay issue. She cannot carry that burden. This Court has already concluded that "Iski's arguments that the United States and the Indian tribes have not suffered an injury are meritless, as the Tenth Circuit has repeatedly rejected similar arguments." Dkt. 106 at 9 (citing *Ute Indian Tribe of the Uintah and Ouray Rsrv*, 790 F.3d 1000, 1005 (10th Cir. 2015), and *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006)).

The District Attorney has given this Court no basis whatsoever to depart from its previous conclusion. She seeks to continue with her prosecutions during the pendency of the stay, thereby perpetuating the harm that her actions are already causing the Nation. She simply posits that the Parties' Joint Status Report (Dkt. 113) demonstrates that the only interests of the Nation and the other parties is a resolution of the common legal issue between this action and *Kunzweiler*. Mot. 7. Not so. The Nation's purpose in filing this action was to halt the District Attorney's unlawful prosecution of Indian defendants within the Nation's Indian Country. *See* Dkt. 57 at 22–24 (noting that a State's unlawful prosecution of Indians in Indian country is "an infringement on tribal sovereignty," quoting *Ute Indian Tribe*, 790 F.3d at 1005).

The Nation has not wavered in its resolve. Accordingly, in their Joint Status Report, the Nation, along with the United States and the other Plaintiff Nations, submitted that the Court could construe their Motions for Preliminary Injunction "as motions for permanent injunction to

5

fully resolve this case," so that (in the event the Court agrees with the Plaintiffs' position on the merits) the District Attorney's prosecution of Indian defendants might be enjoined more expeditiously. Dkt. 113 at 2. The District Attorney's efforts to construe this effort to expedite a final judgment as a concession by the Plaintiffs that there will be no harm to their interests should the Court postpone the resolution of their claims while the District Attorney continues to prosecute Indians does not withstand scrutiny.

## V.    The District Attorney Has Not Shown that the Public Interest Favors a Stay.

The District Attorney's argument that the public interest favors a stay again simply recounts (without defending) the district court's public interest conclusion in *Kunzweiler* regarding generalized state interests in public safety. Mot. 7. But that conclusion is predicated on the assumption that state criminal jurisdiction over Indians in Indian country absent the assent of Congress is lawful in the first place. As noted, the District Attorney has in no way satisfied the burden to show a strong likelihood that the Tenth Circuit will overturn the longstanding rule that States lack such jurisdiction. In *Ute Indian Tribe*, a state sought to exercise such jurisdiction and, because that was something it had "no legal entitlement to do in the first place," the Circuit concluded that its asserted public safety interests "shrink to all but the vanishing point." 790 F.3d at 1007 (quotation marks omitted). The same is true here.

## CONCLUSION

The Nation respectfully requests that the District Attorney's motion be denied.

6

Dated: April 15, 2026                                  Respectfully submitted,


                                                       /s/ Riyaz A. Kanji
Geraldine Wisner, OBA No. 20128                        Riyaz A. Kanji
Deputy Attorney General                                David A. Giampetroni
MUSCOGEE (CREEK) NATION                                 Joshua C. Handelsman
P.O. Box 580                                           KANJI & KATZEN, P.L.L.C.
Okmulgee, OK 74447                                     P.O. Box 3971
(918) 295-9720                                         Ann Arbor, MI 48106
gwisner@mcnag.com                                      (734) 769-5400
                                                       rkanji@kanjikatzen.com
                                                       dgiampetroni@kanjikatzen.com
O. Joseph Williams, OBA No. 19256                      jhandelsman@kanjikatzen.com
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520                         Philip H. Tinker, OBA No. 36498
P.O. Box 1131                                          KANJI & KATZEN, P.L.L.C.
Okmulgee, OK 74447                                     12 N. Cheyenne Ave., Ste. 220
(918) 752-0020                                         Tulsa, OK 74103
jwilliams@williamslaw-pllc.com                         (206) 344-8100
                                                       ptinker@kanjikatzen.com


*Counsel for Muscogee (Creek) Nation*


7

## CERTIFICATE OF SERVICE

I certify that on April 15, 2026, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji